1
Steven A. Marenberg (Pro Hac Vice)
Katharine J. Galston (Pro Hac Vice)
2
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
3
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
4
Facsimile:   (310) 203-7199
Email:       smarenberg@irell.com
5
             kgalston@irell.com

6
Patricia Lee Refo (Bar No. 017032)
Andrew F. Halaby (Bar No. 017251)
7
**SNELL & WILMER L.L.P.**
One Arizona Center
8
Phoenix, Arizona 85004-2202
Telephone:   (602) 382-6000
9
Facsimile:   (602) 382-6070
Email:       prefo@swlaw.com
10
             ahalaby@swlaw.com

11
Attorneys for Defendant
THQ Inc.
12

                    IN THE UNITED STATES DISTRICT COURT
13

                       FOR THE DISTRICT OF ARIZONA
14

15
ULTIMATE CREATIONS, INC., an          )    Case No. CV-05-1134-PHX-SMM
16
Arizona corporation,                  )
                                      )
17
              Plaintiff,              )    **DEFENDANT THQ INC.'S MOTION FOR**
                                      )    **SUMMARY JUDGMENT OR, IN THE**
18
     v.                               )    **ALTERNATIVE, PARTIAL SUMMARY**
                                      )    **JUDGMENT; MEMORANDUM OF**
19
THQ INC., a corporation,              )    **POINTS AND AUTHORITIES IN**
                                      )    **SUPPORT THEREOF**
20
              Defendant.              )
                                      )    **ORAL ARGUMENT REQUESTED**
21

22

23

24

25

26

27

28

1   Defendant THQ Inc. ("THQ") hereby moves for summary judgment or, in the

2   alternative, partial summary judgment on each claim for relief.  This motion is based on

3   the ground that there is no genuine issue as to any material fact, and that THQ is therefore

4   entitled to judgment as a matter of law.

5   THQ is entitled to judgment as a matter of law on Plaintiff's First Claim for Relief,

6   for infringement of a registered mark because THQ makes no use of Plaintiff's registered

7   marks, let alone any trademark use.  THQ is also entitled to judgment as a matter of law

8   on Plaintiff's Second Claim for Relief, for false designation of origin, because Plaintiff

9   can neither establish a valid, protectable right in any of its alleged unregistered marks,

10   nor any infringing use by THQ.  Plaintiff's Third Claim for Relief, for infringement of a

11   common law trademark under Arizona state law, requires the same elements as Plaintiff's

12   Lanham Act claims and therefore fails for these same reasons.

13   **MEMORANDUM OF POINTS AND AUTHORITIES**

14   **I.   INTRODUCTION**

15   Plaintiff Ultimate Creations, Inc. ("Plaintiff") – a company owned by Warrior,[1] an

16   individual who once wrestled professionally under the name "Ultimate Warrior" – filed

17   this action lobbing myriad, amorphous allegations of trademark infringement against

18   Defendant THQ Inc.'s ("THQ") video games without ever actually reviewing the

19   allegedly infringing games.  A review of these video games by Warrior and his counsel

20   against a background of basic trademark law principles would have revealed that there is

21   absolutely no basis for this lawsuit.

22   As discussed more fully below, each of Plaintiff's three claims for relief can be

23   resolved as a matter of law.  First, although Plaintiff claims infringement of all of its

24   registered trademarks, Plaintiff has no evidence that THQ has used these marks, let alone

25   used any of them as a trademark.  Plaintiff can only point to the appearance of the word

26   "warrior" in some of THQ's games.  Yet, including this word as a generic description of

27

28   [1] Warrior was born James Hellwig but legally changed his name to Warrior.

1  any wrestler in the game does not infringe Plaintiff's rights in its "WARRIOR" mark and

2  is, in any event, squarely protected by the First Amendment.

3       Neither can Plaintiff succeed on its false designation of origin claim, by which it

4  claims infringement of alleged unregistered marks – the "likeness" or "character" of the

5  Ultimate Warrior and the Ultimate Warrior's "signature moves."  Plaintiff cannot

6  establish any protectable right in these alleged marks and, like its claim with respect to its

7  registered marks, there is no evidence that THQ has made any infringing use.  Plaintiff's

8  third claim for relief, infringement of a common law trademark under Arizona common

9  law, fails for these same reasons.

10       Thus, THQ's motion for summary judgment should be granted.

11  **II.**    **BACKGROUND**

12      **A.**    **The Ultimate Warrior**

13
14       Warrior performed as a wrestler known as the Ultimate Warrior for the World
15  Wrestling Entertainment, Inc. ("WWE") between 1986 and 1996.[2]  Statement of Facts
   ("SOF") ¶¶ 1-2.

16       In the almost ten years since his retirement from wrestling in 1998, Warrior has
17  "built another career" separate from professional wrestling.  SOF ¶¶ 3-4.  Through
18  Ultimate Creations, Inc., Warrior operates a Web site (www.ultimatewarrior.com) on
19  which he espouses various political philosophies and speaks to college student groups
20  about government.  SOF ¶¶ 5-6.

21      **B.**    **THQ's WWE Video Games**

22       THQ is a leading worldwide developer and publisher of interactive entertainment
23  software ("video games").  SOF ¶ 7.  THQ's video games span a wide range of categories,
24  including action, adventure, fighting, racing, role-playing, simulation, sports, and

25
26
27       [2] WWE has also been previously known by the names Titan Sports and World
   Wrestling Federation, Inc. or "WWF."  *See* Deposition of Warrior ("Warrior Depo."),
28  attached at Exhibit A to Galston Declaration, at 8:9-21.

strategy.  SOF ¶ 8.  The company's portfolio of highly successful video games include games based on Disney/Pixar's *Finding Nemo*, *The Incredibles*, and *Cars*; Nickelodeon's *SpongeBob SquarePants*; and *Power Rangers*, as well as original titles.  SOF ¶ 9.  The video games at issue here are the wrestling-related games that THQ releases pursuant to its license with WWE (the "WWE games").[3]  SOF ¶ 10.  WWE promotes live and televised professional wrestling events featuring its professional wrestlers ("WWE Superstars").

THQ's WWE games showcase the current WWE Superstars, whom the game player can control in the ring in a quest to win the championship belt.[4]  SOF ¶ 11.  THQ markets these games to WWE fans as a virtual opportunity to play in the WWE by participating in the events and stories that WWE fans follow during the wrestling season.  SOF ¶ 12.  To this end, THQ's WWE games are updated and released annually to contain the most up-to-date roster of WWE Superstars, WWE images (such as the most recent designs of WWE arenas and WWE Superstar costumes), and storylines.  SOF ¶ 13.  Consumers buy annual games to ensure they have the most current characteristics of the real-world WWE experience, including the newest and most popular WWE Superstars.  SOF ¶ 14.

### 1.  **WWE Superstars In THQ's Games**

Each of THQ's WWE video games features an extensive roster of WWE Superstars.  SOF ¶¶ 45, 48.  To play the game, the game purchaser selects one of these characters and then controls that character in either a single match or in several matches

---

[3] THQ develops and publishes the WWE games under a license from WWE to a joint venture of which THQ is a member, and, under that joint venture, THQ has sole responsibility for the development and publishing of the WWE games.

[4] Per the Court's direction, THQ is not submitting copies of the video games with this submission but will make available upon request games referenced in the Complaint, as well as any other WWE game at issue (all of which were produced in discovery) along with game consoles required for review.  SOF ¶ 17.  The WWE games are also described in detail in Ms. Vrabeck's expert report.  SOF ¶ 18.

1  against different opponents, working towards the championship belt.  SOF ¶ 46.  The

2  games also contain "unlockable" characters – characters that a purchaser cannot access

3  until the completion of game objectives (such as winning the season).  SOF ¶¶ 47-48.

4  The Ultimate Warrior in not included in any roster, nor as an "unlockable" character, in

5  any WWE game.  SOF ¶ 49.

6  **2.     Create-A-Wrestler Feature**

7  As an extra feature, THQ's WWE games also include technology, similar to a

8  computer animation program, that allows a game player to create his or her own original

9  and unique wrestler and then play the game using that user-created wrestler (the "Create-

10  A-Wrestler Feature").  SOF ¶¶ 54, 58.  To create an original wrestler with this feature,

11  the player starts with a generic human body form and then alters the body in potentially

12  hundreds, even thousands, of ways – *e.g.*, changing the form's length of arms and legs,

13  shoulder breadth, skin color, head shape, jaw width, bicep size, neck width, hair length

14  and color, facial and body hair, etc.  SOF ¶¶ 55, 58.  The player can then choose from

15  thousands of generic clothing pieces, symbols, masks, tattoos, and accessories; customize

16  them (such as by altering these generic items in color, size, and orientation); and then

17  apply them to a created wrestler.  SOF ¶¶ 56, 58.  The possibilities for what a player can

18  create with this feature are literally infinite.[5]

19  Once the game player finalizes the appearance of his created wrestler, he can type

20  in a name for that character, select the wrestler's hometown, assign it the wrestling moves

21  it will use in entering the ring or in fighting opponents, give it strength attributes, and

22  pick music.  SOF ¶ 57.  The player can also give the created wrestler a "call name" – a

23  name that the game's announcing voice will call out when that wrestler walks into the

24  virtual arena – by choosing from a list of generic call names.  SOF ¶¶ 29, 31.  There is no

25

26  [5] To demonstrate the limitless capabilities of this feature, THQ has included at Exhibit 1 to the Declaration of Cory Ledesma a DVD that shows how a player uses the

27  Create-a-Wrestler Feature to build an original wrestler.  SOF ¶ 58.  In this example, the player creates a wrestler who looks like Superman.

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF

call name "Ultimate Warrior" (or any other real-life wrestler), rather the possible call names are generic names for wrestlers or fighters.  SOF ¶¶ 30, 33-35.  In two of THQ's WWE games – *SmackDown! vs. Raw* and *WrestleMania 21* – the game player can choose a call name from a list of almost fifty possibilities, one possibility of which is "The Warrior" or "Warrior."  SOF ¶¶ 32-35.  Other call names include "The Brawler," "The Bruiser," "The Cheater," "The Criminal," "The Immortal," "The Legend," "The Machine," "The Player," "The Professional," "The Samurai," "The Superstar," "The Hero," "The Villain," and many others.  *Id*.  The full list of available call names in *SmackDown! vs. Raw*, for example, is as follows:

| | | |
|---|---|---|
| The Beast | Half Man Half Amazing | The Monster |
| Big Daddy | The Hitman | The People's Champ |
| The Brawler | Hollywood | The Player |
| The Bruiser | Hot Stuff | The Professional |
| The Bull | The Icon | Prototype |
| The Cat | The Immortal | The Queen |
| The Cheater | The Immovable Object | The Saint |
| The Cobra | The Irresistible Force | The Samurai |
| The Corporal | The Kid | The Star |
| The Criminal | The King | The Superstar |
| The Devil | The Ladies Man | Tank |
| Dynamite | The Legend | The Hero |
| The Freak | The Legend Killer | The Vampire |
| The Genius | The Machine | The Villain |
| The Ghost | The Man | The Warrior |
| The Giant | The Miss | |

SOF ¶¶ 33, 35.

THQ takes no action to limit the infinite possibilities for the Create-A-Wrestler Feature.  THQ does not provide purchasers with any instructions, or otherwise prompt, on how to create specific characters in its games.  SOF ¶¶ 59, 62.  There does exist a small group of very experienced video game players who spend hours experimenting with the Create-A-Wrestler Feature to create wrestlers who look like real people – such as a sports stars, pop singers, political figures, or actors.  SOF ¶ 60.  These players will sometimes display on third-party internet sites images or videos of their interpretations of real people or fictional characters as created wrestlers, along with the incredibly elaborate, multi-step

1   specifications required to replicate such created wrestlers.  SOF ¶ 61.  These
2   specifications list the codes that the player must enter into the game and the options the
3   player must choose.  SOF ¶ 40.  Yet, it is the game players, not THQ, who post such
4   information.  SOF ¶¶ 61-62.

5       The objective of the WWE games is to allow purchasers to play with current
6   WWE Superstars in a virtual WWE experience.  SOF ¶ 63.  This is why the roster of
7   available WWE Superstars for the player to choose from is so large, realistic, and current.
8   The Create-A-Wrestler Feature is simply an extra or "add-on component" of these games.
9   A player can play (and, indeed, even win) each game without ever even entering the
10  Create-A-Wrestler section of these games.  SOF ¶ 64.

11      **3.   <u>Wrestling Moves Available For Game Play</u>**

12      In each of THQ's WWE games, there are hundreds of possible moves – indeed
13  upwards of 500 – that a game player can apply to either a WWE Superstar or a character
14  the player creates through the Create-A-Wrestler Feature and use when playing the game.
15  SOF ¶ 70.  These available moves include wrestler ring entrances, fighting moves, moves
16  to finish a match (or "finishing moves"), and various other in-ring behaviors.  SOF ¶ 71.

17  **III.   <u>ARGUMENT</u>**

18      **A.   <u>Legal Standard For Summary Judgment</u>**

19      Summary judgment must be granted when "there is no genuine issue as to any
20  material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R.
21  Civ. P. 56(c).  Where, as here, the non-moving party bears the burden of proof at trial, the
22  moving party meets its initial burden showing that it is entitled to summary judgment by
23  merely "pointing out to the district court . . . that there is an absence of evidence to
24  support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
25  The burden then shifts to the non-moving party to set forth "specific facts showing that
26  there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250
27  (1986).  Evidence presented in opposition must be admissible; the non-moving party may
28  not simply rest on the allegations of its complaint.  Fed. R. Civ. P. 56(e).  "Instead, the

- 6 -

1  plaintiff must present affirmative evidence in order to defeat a properly supported motion

2  for summary judgment." *Anderson*, 477 U.S. at 257.

3   **B.   Plaintiff's Claim For Infringement Of Federally Registered Trademarks Fails As A Matter Of Law**

4

5   Plaintiff cannot prevail on a Lanham Act claim – whether a claim brought under

6  Section 32, 15 U.S.C. § 1114(1) (infringement of a registered mark) or under Section

7  43(a), 15 U.S.C. § 1125(a) (false designation of origin) – unless it proves that it owns a

8  valid mark and that THQ is using the same or a similar mark in commerce in connection

9  with the sale of goods or services in a manner that is likely to cause confusion.  *See*

10  *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 & n.6 (9th

11  Cir. 1999).

12   In typical trademark cases, the court considers whether a likelihood of confusion

13  exists using the eight-factor test originally set forth in *AMF Inc. v. Sleekcraft Boats*, 599

14  F.2d 341, 348-49 (9th Cir. 1979).  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625,

15  631 (9th Cir. 2005).  Yet, where, as here, a defendant has not used the alleged mark in

16  connection with the sale of goods or services, "the Court need not apply the test for

17  likelihood of confusion." [6] *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.

18  Supp. 949, 958 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999); *see also Interactive*

19  *Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 698 (6th Cir. 2003)

20  (where no evidence of trademark use, unnecessary to examine test "traditionally used to

21  determine likelihood of confusion between two source-signifying marks"); 4 J. Thomas

22  McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11.50, p. 23-75

23  (without use as a trademark, any confusion is "highly unlikely").

24

25   [6] In any event, the absence of <u>any</u> actual confusion evidence, despite the fact that

26  THQ has successfully sold the games cited in the Complaint since 2003, SOF ¶¶ 15-16, is a "powerful indication" that confusion is not likely.  *Cohn v. Petsmart, Inc.*, 281 F.3d

27  837, 843 (9th Cir. 2002).  Nor is there any survey, or other, evidence showing any likelihood of confusion.  Plaintiff cannot remedy this fatal absence of evidence at trial.

28

1    Moreover, if a "defendant[ ] [is] only using [plaintiff's] trademark in a 'non-

2  trademark' way – that is, in a way that does not identify the source of a product – then

3  trademark infringement and false designation of origin laws do not apply."  *Interactive*

4  *Prods.*, 326 F.3d at 695; *cf. New Kids on the Block v. News America Publishing, Inc.*, 971

5  F.2d 302, 307 (9th Cir. 1992) (infringement laws "simply do not apply" to "non-

6  trademark use of a mark").

7    Even assuming Plaintiff's registered marks – the word marks "ULTIMATE

8  WARRIOR," "GENERATION WARRIOR," and "WARRIOR" and the design mark –

9  are valid trademarks, Plaintiff's claim of infringement of these marks cannot survive

10  summary judgment because there is no evidence that THQ has made a trademark use of

11  them, if even THQ made any use at all (which it has not).

12    **1.    THQ Does Not Use "ULTIMATE WARRIOR" Or**
         **"GENERATION WARRIOR" Marks**
13

14    It is Plaintiff's burden to come forward with evidence that THQ has used its

15  alleged marks.  Plaintiff has not done so and indeed cannot.  THQ makes no use at all of

16  Plaintiff's alleged "ULTIMATE WARRIOR" and "GENERATION WARRIOR" marks

17  in its WWE games, let alone any use that is likely to cause consumer confusion.  Not one

18  of these games includes a character named the "Ultimate Warrior" or "Generation

19  Warrior," or include the words "Ultimate Warrior" or "Generation Warrior" in any other

20  manner.  SOF ¶¶ 19-20.  Plaintiff has presented no evidence to the contrary.  Indeed,

21  when questioned during his deposition regarding existence of these alleged marks in

22  THQ's games, Warrior could point to no place where they appeared.  SOF ¶¶ 21-22.

23    THQ likewise does not reference the "Ultimate Warrior" or "Generation Warrior"

24  in any of its game packaging materials or in any television or print advertisement for

25  these games.  SOF ¶¶ 23-24.  Indeed, THQ's advertisements rely almost entirely on

26  images and footage of <u>current</u> WWE events and WWE Superstars, consistent with its

27

28

marketing message that promotes playing the real-world experience of the WWE.[7]  SOF ¶ 25.

Thus, without evidence of any use by THQ that could implicate the protections of the Lanham Act, Plaintiff's infringement claim with respect to these registered marks fails as a matter of law.

### 2.  "Warrior" Call-Name Does Not Infringe "WARRIOR" Mark

There is no character in any THQ WWE game called "Warrior," nor is there any evidence that THQ uses "Warrior" in any of its advertising, marketing, or game packaging materials for these games.  SOF ¶¶ 26-27.  Plaintiff nevertheless claims that THQ infringes its alleged "WARRIOR" mark because after a purchaser creates a wrestler, it can give it the call name "The Warrior" or "Warrior."  SOF ¶ 28.  Yet, as explained below, Plaintiff's registration of the word mark "WARRIOR" does not give Plaintiff the right to prevent THQ from using the word "warrior" in its list of generic call name possibilities any more than to prevent the use of "brawler," "bruiser," "cheater," or other fighter-description words.  To grant Plaintiff the exclusive, monopolistic right it claims over the word "warrior" would far exceed the Lanham Act's protections and infringe First Amendment rights.

---

[7]  In its opposition, Plaintiff may point to a preliminary marketing document for *The Day of Reckoning 2* that erroneously listed the Ultimate Warrior among those wrestlers who would appear in the game.  THQ retracted this document as soon as it realized the error.  Yet, there is no need for the Court to even consider this because, as a matter of law, this preliminary document, issued almost five months prior to the distribution of this game cannot constitute a "use in commerce" pursuant to the Lanham Act.  15 U.S.C. § 1127 (defining "use in commerce" as occurring when the subject mark is "placed in any manner on the goods . . . and . . . the goods are sold or transported in commerce"); *see also In re Port Authority of New York*, 3 U.S.P.Q.2d 1453, 1455 (T.T.A.B. 1987) ("use of a mark in connection with advertising, promotion and preparatory activities for services to be available at some time in the future" does not present use in commerce).

1           (a)        Plaintiff Cannot Prevent THQ's Use Of The Word "Warrior"

2           The registration of "warrior" as a trademark does not grant Plaintiff an exclusive

3  right to all future uses of that word but only to the secondary meaning associated with

4  Plaintiff's goods or services.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,

5  543 U.S. 111, 122 (2004); *New Kids*, 971 F.2d at 306 ("A trademark is a <u>limited</u> property

6  right in a particular word, phrase, or symbol." (emphasis added)).  Indeed, a defendant

7  may use a term that is another's trademark to "describe" his own goods or services under

8  the doctrine of fair use.  15 U.S.C. § 1115(b)(4); *see also New Kids*, 971 F.2d at 306.

9  This principle "protects the right of society at large to use words or images in their

10  primary descriptive sense, as against the claims of a trademark owner to exclusivity."

11  *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995).  Yet,

12  although fair use cases are instructive here, THQ's use of the word "warrior" does not

13  even rise close to the level permitted under that doctrine.  THQ does not use "warrior" to

14  describe or identify its goods or services.  Rather, the word "warrior" appears only in its

15  ordinary, English-language meaning deep within THQ's product as one possible variable

16  a player can choose when creating his own character.  Such use does not even implicate

17  the Lanham Act's protections.

18           In any event, no reasonable argument can be made that the existence of "warrior"

19  among the fifty or so other generic call name options could cause confusion as to the

20  source of THQ's games, or any association between Plaintiff and the games.  Nothing in

21  THQ's games suggests that the "warrior" call name option was intended to be used with

22  any particular created character, let alone a character who resembles the Ultimate

23  Warrior.  A game purchaser (unprompted and unaided by THQ) can choose to apply the

24  "warrior" call name to <u>any</u> character he creates – *e.g.*, an Apache Warrior, a soldier in

25  uniform, a player on the Golden State Warriors basketball team, a Roman gladiator, or

26  even the player himself.  The fact that a purchaser who wants to play the game with a

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF

1    wrestler who resembles the Ultimate Warrior must create that wrestler independently and

2    then assign it the call name "warrior" suggests, if anything, no possibility of confusion.

3              (b)      THQ's Use Is Protected By The First Amendment

4          Even if the "warrior" call name possibility in THQ games could be deemed to

5    implicate the Lanham Act's protections, THQ's use of the word "warrior" is certainly

6    protected by the First Amendment.  It is well-established in the courts in this Circuit that

7    video games, such as THQ's WWE games, are expressive works protected by the First

8    Amendment.  *See, e.g.*, *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d

9    1012, 1039 (C.D. Cal. 2006); *Video Software Dealers Ass'n v. Schwarzenegger*, 401 F.

10   Supp. 2d 1034, 1044 (N.D. Cal. 2005); *Video Software Dealers Ass'n v. Maleng*, 325

11   F.Supp.2d 1180, 1184-85 (W.D. Wash. 2004); *see also Interactive Digital Software Ass'n*

12   *v. St. Louis County*, 329 F.3d 954, 957 (8th Cir. 2003) ("pictures, graphic design, concept

13   art, sounds, music, stories, and narrative present in video games" entitle them to First

14   Amendment protection).  Because THQ uses "warrior" in an expressive work only as a

15   "part of a communicative message and not a source identifier, the First Amendment is

16   implicated in opposition to the [Plaintiff's] trademark right."  *E.S.S. Entm't 2000*, 444 F.

17   Supp. 2d at 1039.

18         The First Amendment protects a defendant's use of trademark if that use (1)

19   "'surpasses the minimum threshold of artistic relevance to the [work's] content,'" and (2)

20   does not explicitly mislead as to the source or content of the work.  *Id*. at 1040, 1044

21   (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)); *Mattel, Inc. v. MCA*

22   *Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  This test is easily met here.

23         First, the word "warrior" is decidedly relevant to the work's content as this section

24   of the game assigns an identifying attribute to created wrestlers.  The use of the word

25   "warrior" describes not the Ultimate Warrior but any person "engaged or experienced in

26   warfare . . . [or] a person of demonstrated courage, fortitude, zeal, or pugnacity."

27

28

*Webster's New International Dictionary* 2578 (3d ed. 1986).  Just as the other unbranded terms are fitting to announce a fighter or wrestler, so too is the word "warrior."

<u>Second</u>, THQ's use of the word "warrior" does not mislead consumers as to the source or content of THQ's games where "warrior" does not appear on any of THQ's game packaging or in any of its advertisements.  *See E.S.S. Entertainment 2000, Inc.*, 444 F. Supp. 2d at 1044 (video game element not used in packaging or advertising but only visible after consumers purchase and play game, if at all, does not mislead).  Consumers see the word "warrior" after they have purchased the game, if at all (for it is possible to play, even win, the game without ever entering the Create-A-Wrestler feature), and only then in conjunction with fifty or so other unbranded terms.

Thus, because THQ's use does not implicate the protections of the Lanham Act and, in any event, is protected by the First Amendment, Plaintiff's claim of infringement with respect to the "WARRIOR" mark also fails as a matter of law.

### 3.    THQ Does Not Use The Design Mark Or Any Confusingly Similar Mark

Plaintiff claims that a game player "can create the Ultimate Warrior character including using . . . the Ultimate Warrior logo," its registered design mark.  SOF ¶¶ 36-38.  Yet, the very evidence Plaintiff has produced undermines any claim that THQ has used this design mark, or any confusingly similar symbol, in any way in its games – let alone made any use of the mark as a trademark in connection with the sale of goods or services.

Plaintiff has not identified (and indeed cannot) the appearance of its mark in any of THQ's games or in any materials advertising or marketing such games.  SOF ¶¶ 39, 67.  Rather, Plaintiff's own evidence proves that purchasers who want a symbol that to them resembles Ultimate Warrior's logo to appear in the game create it themselves.  For example, Plaintiff produced instructions posted on an internet site by video game player "Slavetothemedia" who used the Create-A-Wrestler Feature to build a wrestler he believed resembled the Ultimate Warrior in *SmackDown! Here Comes the Pain*.  SOF

¶ 40.  To place a symbol allegedly resembling the logo on a character's knee pads (steps 22 through 25 of the 29 required steps for the Ultimate Warrior-like character), "Slavetothemedia" provides the following codes:

> 22) Simple (Left Leg): 25 Turn: 2x Reduce: 3x Color: -67, 40 Shade: 0 Opac: 100
>
> 23) Simple (Left Leg): 25 Turn: 2x Reduce: 2x Color: -85, 32 Shade: 0 Opac: 100
>
> 24) Simple (Right Leg): 25 Turn: 2x Reduce: 3x Color: -67, 40 Shade: 0 Opac: 100
>
> 25) Simple (Right Leg): 25 Turn: 2x Reduce: 2x Color: -66, 41 Shade: 0 Opac: 100

SOF ¶¶ 40-41.  Placing face paint on the created wrestler – which Plaintiff also claims replicates its design mark – requires similar multi-step instructions.  SOF ¶ 40 (steps 8 though 10).  Thus, the only way a symbol that even arguably resembles Plaintiff's mark can appear in THQ's games is if someone with a keen interest in making it appear creates it.  This cannot support a claim of infringement against THQ.

Neither can the existence of a generic symbol in the game that is manipulated to create something a player believes resembles the logo support this infringement claim.  The manipulated symbol, symbol number 25, appears as one of 150 or more generic symbols available in the game to customize and decorate created characters.  SOF ¶¶ 41, 43-44.  THQ does not use the symbol as a trademark in connection with the sale of goods or services.  Further, the generic symbol that is manipulated:



is not similar to Plaintiff's registered design mark:



SOF ¶¶ 37, 42, 44.  There is nothing about the generic symbol in the game that would suggest that it should be used to create Plaintiff's design mark – rather than any other bat-like symbol.  In any event, any claim of confusing similarity between the generic symbol

and Plaintiff's mark – if indeed they could be considered at all similar (which they are not) – is undermined by Plaintiff's evidence that purchasers know they must manipulate that symbol.  Such actions by the purchaser prove the absence of any possible confusion.

### C.   Plaintiff's False Designation Of Origin Claim Also Fails

Plaintiff also asserts a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), seeking to protect marks not the subject of federal registrations – the Ultimate Warrior "character" or "likeness" and the "signature move sets" associated with that character – from infringing use.  This claim fails for two distinct reasons.  First, Plaintiff cannot pass the threshold validity requirement because Plaintiff cannot articulate any protectable trademark or trade dress interest in the "character," "likeness," or "moves" that would prevent THQ from using them.  Second, like its claim with respect to the registered marks, Plaintiff's claim fails because there is no evidence that THQ has made any infringing use of these alleged marks.

### 1.   Plaintiff's Claim Based On THQ's Alleged Use Of The Ultimate Warrior "Character" Or "Likeness" Fails As A Matter Of Law

#### (a)   Plaintiff Does Not Own A Valid, Protectable Trademark Or Trade Dress Right In The Ultimate Warrior "Character" Or "Likeness"

Plaintiff cannot succeed on a section 43(a) claim with respect to the Ultimate Warrior "character" or "likeness" because Plaintiff cannot show that such "character" or "likeness" is even a valid trademark or trade dress right.

First, Plaintiff has failed even to identify the image of the character in which it claims trademark or trade dress rights, asserting only that "[t]he Ultimate Warrior became a well-known character."  SOF ¶ 50.  Indeed, Warrior himself testified during his deposition that the Ultimate Warrior character "change[d] or evolve[d] over time," "throughout [his] whole career," and that the Ultimate Warrior character "had a bunch of different colors and outfits to choose from."  SOF ¶¶ 51, 52.  Such a "vaguely defined character lacking a specific image . . . is unable as a matter of law to 'achieve that fixture or consistency of representation that would seem necessary to constitute a symbol in the

- 14 -

public mind'" and thus cannot constitute a protectable trademark.  *Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 924 (S.D.N.Y. 1983), *aff'd*, 746 F.2d 112 (2d Cir. 1984).  Plaintiff's failure to define the scope of the Ultimate Warrior character is fatal to its claim of trademark rights.  *See, e.g.*, *Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 156 F. Supp. 2d 1148, 1162-63 (C.D. Cal. 2001), *vacated pursuant to settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) (granting summary judgment on § 43(a) claim where plaintiff could not identify mark for character "Zorro").[8]

Similarly, although Plaintiff peppered its complaint with allegations of a protected "trade dress" associated with the Ultimate Warrior character, Plaintiff has not articulated what elements make up its claimed trade dress and thus cannot establish a valid trade dress right.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001) (judgment as matter of law appropriate where Plaintiff fails to identify specific elements of trade dress); *see also Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1246 (D. Haw. 2003) (without articulation of elements, "it would be impossible for the court to evaluate secondary meaning, genericness, or nonfunctionality, and it would be impossible for the court to shape narrowly tailored relief").  Having had ample opportunity to articulate the elements of its alleged trade dress, it is simply too late for Plaintiff to remedy this failure.  *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 465 F. Supp. 2d 956, 964 (N.D. Cal. 2006).[9]

Second, any claim of trademark or trade dress rights in the Ultimate Warrior "character" or "likeness" – no matter how identified or defined – fails because Plaintiff

---

[8] Evidence that WWE retains some rights in the Ultimate Warrior character – whatever such rights are – also undermines any claim that the public identifies a single source for Ultimate Warrior-related products.  SOF ¶ 68. *See, e.g.*, *Universal City*, 578 F. Supp. at 924-25 (concluding no valid trademark in King Kong character where numerous entities owned copyrights).

[9] Additionally, "[t]rademark or trade dress protection extends only to product features that are nonfunctional."  *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).  Plaintiff cannot satisfy its burden of proving its asserted trade dress is nonfunctional.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF

1   has not used such character or likeness to identify the source of its goods or services.  A

2   "trademark" protected under section 43(a) is "any word, name, symbol, or device, or any

3   combination thereof . . . used by a person . . . to identify and distinguish his or her goods

4   . . . from those manufactured or sold by others and to indicate the source of the goods."

5   15 U.S.C. § 1127.  The purpose of trademarks has always been "[i]dentification of the

6   manufacturer or sponsor of a good or the provider of a service."  *New Kids*, 971 F.2d at

7   305.  "[T]o create trademark or trade dress rights, a designation must be proven to

8   perform the job of identification: to identify one source and distinguish it from other

9   sources.  If it does not do this, then it is not protectable as a trademark, service mark,

10  trade dress or any similar exclusive right."  1 *McCarthy*, *supra*, at § 3:3, p. 3-6.  Because

11  the Ultimate Warrior character (whatever its contours may be) does not function to

12  distinguish anything other than the image or character itself, the Lanham Act provides no

13  protection.  *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 870-71 (S.D.N.Y. 1998)

14  (granting summary judgment on section 43(a) claim for alleged infringement of "Skully

15  character" and "Skully design" because neither used to distinguish goods in commerce or

16  denote source).

17              (b)      THQ Has Made No Use Of The Alleged "Character" Or
                         "Likeness"
18

19          Plaintiff's allegation that the fact that "one playing the game can create the

20  Ultimate Warrior character" somehow constitutes infringement of its rights by THQ

21  necessarily fails as a matter of law.  SOF ¶ 53.  It is <u>undisputed</u> that the Ultimate Warrior

22  "character" or "likeness" is not included in any of THQ's games – either in any game's

23  roster of WWE Superstars or among "unlockable" bonus characters.  SOF ¶ 49.  Instead,

24  the <u>only</u> way a character who resembles the Ultimate Warrior can appear in THQ's games

25  (if, indeed, such character ever even appears in the game) is if the <u>purchaser himself</u>

26  utilizes the Create-A-Wrestler Feature to build from scratch a wrestler the purchaser

27  believes resembles the Ultimate Warrior.  SOF ¶ 65.

28

1    THQ provides the purchaser with nothing more than generic tools with which he

2    can experiment to create a wrestler who resembles <u>any</u> fantasy character or real-life

3    person.  By "experiment[ing] with hundreds of variables to shape the face, head, torso,

4    arms, and legs" and "spend[ing] significant time designing clothing, skin, hair, and

5    accessories," the possibilities are "infinite."  SOF ¶¶ 55-56 (Vrabeck Decl. & rpt. at 6).

6    The game player can use the Create-A-Wrestler Feature to fashion a character the player

7    believes resembles the Ultimate Warrior or – by using these exact same tools – his

8    favorite football star, his math teacher, the prom queen, a comic book hero, a wrestler

9    entirely of the player's own imagination, or the player himself.  SOF ¶¶ 58, 66.  Because

10   THQ in no way instructs or prompts purchasers in what to create, the Create-A-Wrestler

11   Feature is, in essence, nothing more than a high-tech box of crayons.

12       Thus, without a valid trademark to protect or any evidence of infringing conduct

13   on the part of THQ, Plaintiff's section 43(a) claim necessarily fails as a matter of law.[10]

14       **2.     Plaintiff's Claim Based On THQ's Alleged Use Of The Ultimate**
         **Warrior's "Signature" Moves Fails As A Matter Of Law**
15

16       Plaintiff claims that "signature move sets" exist in THQ's games that are evocative

17   of wrestling moves once performed by the Ultimate Warrior.  SOF ¶¶ 50, 69.  THQ

18   assumes *arguendo*, solely for the purpose of this summary judgment motion, that its

19   games contain wrestling moves similar to (or even the same as) wrestling moves once

20   used by the Ultimate Warrior and that such moves are even now (almost 10 years after

21   his retirement) identifiable with the Ultimate Warrior.[11]  Yet, even accepting such

22

23   [10] Additionally, after a game player works for over an hour (following a set of
     internet-posted directions) or even longer (if working from scratch) to create a character
24   who resembles the Ultimate Warrior – because that character does not exist in the game –
     no confusion is possible.
25
     [11] Plaintiff cannot even identify the allegedly infringing "signature move sets."
26   During his deposition, Warrior claimed a ring entrance and finishing move to be his
     signature, while claiming that elements of such sequences were also "signature."  Warrior
27   Depo. at 17:14-19:4, 21:14-23:12, 24:13-26:16.  Plaintiff's claim fails with respect to any
28   alleged "signature" moves.

1  allegations as true, Plaintiff cannot prevail on its section 43(a) claim with respect to these

2  moves because none is a valid, protectable trademark and THQ has never used these

3  moves as a trademark in connection with the sale of goods or services.

4          (a)      Plaintiff's "Signature" Moves Are Not Valid Trademarks.

5         The Ultimate Warrior's wrestling moves – no matter how "trademark" they might

6  be in a colloquial sense – are not trademarks in a legal sense because Plaintiff has never

7  used them as a symbol "to identify and distinguish [its] goods . . . from those

8  manufactured or sold by others and to indicate the source of the goods."  15 U.S.C.

9  § 1127; *see also New Kids*, 971 F.2d at 305.  Wrestling maneuvers used by the Ultimate

10  Warrior to fight opponents and entertain the crowd were simply an aspect of his wrestling

11  performances.  Plaintiff has never used these moves in any other context.  SOF ¶¶ 72-73.

12  Because these moves have not been and are not used "to distinguish goods in commerce

13  or to denote their source" and do not "function[] to distinguish anything other than the

14  [moves themselves]," Plaintiff's claim cannot survive summary judgment.  *Scholastic*, 28

15  F. Supp. 2d at 870-71.

16         Plaintiff cannot overcome this fatal defect by arguing that wrestling fans know that

17  it was the Ultimate Warrior who developed these moves or who commonly performed

18  them in the ring.  *See* Warrior Depo. at 115:23-116:18 (claiming "people" seeing such

19  moves would say "[t]hat's an Ultimate Warrior thing").  That people may associate the

20  Ultimate Warrior with these moves as their inventor, developer, or original performer

21  does <u>not</u> give Plaintiff any trademark rights.  *Dastar Corp. v. Twentieth Century Fox*

22  *Film Corp.*, 539 U.S. 23, 37 (2003) (section 43(a) protects "the producer of the tangible

23  goods that are offered for sale, and not . . . the author of any idea, concept, or

24  communication embodied in those goods").**[12]**

25

26  _____

27      **[12]** In *Dastar*, the Supreme Court also expressed concern regarding extending trademark law to cover matters already within the proper scope of copyright – the very

28  extension plaintiff urges here.  539 U.S. at 37.

1    Indeed, in *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56 (2d Cir. 2001), the Second

2  Circuit rejected an almost identical argument made by a Plaintiff who asserted trademark

3  rights in the recording of her "signature song."  Plaintiff alleged that the public had come

4  to identify her with this recording – "her signature piece and the centerpiece of all her

5  concert appearances" – and thus claimed that this "signature performance" had become a

6  mark designating Plaintiff as the singer.  *Id.* at 61.  The court, however, found no support

7  for "the notion that a performing artist acquires a trademark or service mark signifying

8  herself in a recording of her own famous performance" and affirmed dismissal of the

9  section 43(a) claim.  *Id.* at 62.  Although musical compositions, such as tunes and jingles

10  played in commercials, could serve as marks for goods and services, a "signature

11  performance" that had never served such purpose did not warrant trademark protection.

12  *Id.*; *see also EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d

13  56, 63 (2d Cir. 2000) (refusing to recognize musical composition as a mark for itself

14  "[b]ecause this would be tantamount to saying that a product itself – in this case, the song

15  – can serve as its own trademark").

16    Similarly, in *Hughes v. Design Look Inc.*, 693 F. Supp. 1500, 1507 (S.D.N.Y.

17  1988), the court held that Warhol images which had never served a source-identifying

18  function were not entitled to trademark protection, despite the fact that the images

19  represented "the unique style of Andy Warhol."  The fact that people who saw these

20  images would know they were created by Warhol was not enough.  *Id.*; *see also Galerie*

21  *Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1289 (S.D.N.Y. 1988) (rejecting argument

22  that trademark exists because "art purchasing public identifies drawings exhibiting those

23  distinguishing images as works created by Dali").[13]

24

25

---

26    [13] Even if plaintiff ever had valid trademark rights in the moves he performed in
the WWE, such rights have long been abandoned.  15 U.S.C. § 1127.  Warrior has not
27  used these wrestling moves since he retired from wrestling in 1998 – almost 10 years ago.
28  SOF ¶¶ 3, 72-73.

(b)     THQ Has Made No Infringing Use Of The "Signature" Moves

Even if these "signature" moves were a valid trademark, Plaintiff cannot succeed on its claim because THQ does not use them as a source-identifying trademark.

Plaintiff has not established (and indeed cannot) that the alleged "signature" moves have ever been used by THQ to identify the source of its games.  SOF ¶ 74.  There is no evidence that these moves ever even appeared in any game packaging, advertising, or marketing materials.  Indeed, the appearance of "signature" moves of retired wrestlers in such materials would be entirely inconsistent with THQ's marketing of the games based on current WWE Superstars and storylines.  Thus, a consumer considering whether to purchase these games has no idea whether they contain moves similar to those once used by the Ultimate Warrior (or any other wrestler).

Indeed, even after purchasing the games, there is still no guarantee that a consumer will ever even see or select the alleged "signature" moves out of the hundreds of available moves.  Indeed, some of the moves Plaintiff identifies exist only as "unlockable" features of these games.  SOF ¶ 75.  Although there are many moves in the games that are identified with the name of a real wrestler, and others that are identified by number or code, there are no moves named "Ultimate Warrior."  SOF ¶¶ 76-77.  THQ publishes no instructions regarding what moves were once used by which wrestlers (if any are even so identifiable).  SOF ¶ 78.  A game purchaser thus has no way of knowing that he can play with moves arguably evocative of the Ultimate Warrior, if any moves even are, unless he tests out each and every move set and then decides on his own which are evocative of the Ultimate Warrior.[14]

---

[14] Thus, even the move set labeled "Move Set 71 OUW" in *SmackDown! Here Comes the Pain* – which Plaintiff claims contains "signature" moves – would not lead a consumer to think that Plaintiff has any involvement or association with these games.  Because there are pages of move sets referenced by the name of a real-life wrestler, a reasonable consumer would no doubt conclude that where there is an association between moves and a real wrestler, that wrestler's name identifies the move set.

**D.**     **Plaintiff's Claim For Infringement Of A Common Law Trademark Fails For The Same Reasons As Plaintiff's Lanham Act Claims**

Because Plaintiff must prove the same elements for its common law infringement claim, Plaintiff's claim pursuant to Arizona common law fails for the same reasons as its Lanham Act claims. *See, e.g., United American Indus., Inc. v. Cumberland Packing Corp.*, 2007 WL 38279, *2 (D. Ariz. Jan. 5, 2007) (applying identical analysis to Lanham Act claim and common law infringement claim in context of motion to dismiss); 4 *McCarthy*, *supra*, at § 23:1.50, pp. 23:10-23:13 (recognizing single confusion analysis generally applicable to state and federal law claims).

**IV.     CONCLUSION**

There are thus no triable issues of material fact with respect to any of Plaintiff's claims, and THQ respectfully requests that the Court grant its motion for summary judgment and bring this action to an end.

Dated:     March 23, 2007              **IRELL & MANELLA LLP**
                                       **SNELL & WILMER L.L.P.**


                                       By: _____s/___*Steven A. Marenberg*_____
                                          Steven A. Marenberg
                                          Attorneys for Defendant
                                          THQ Inc.

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on March 26, 2007, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

                       <u>Attorneys for Plaintiff</u>:

6

                       Daniel D. Maynard

7

                       Jennifer A. Sparks
                       Maynard Cronin Erickson Curran & Sparks, P.L.C.

8

                       1800 Great American Tower
                       3200 North Central Avenue

9

                       Phoenix, Arizona  85012

10

11

                                  s/ *Katharine J. Galston*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
Page

3 MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

4 I.    INTRODUCTION ................................................................................. 1

5 II.   BACKGROUND .................................................................................. 2

6       A.    The Ultimate Warrior ................................................................. 2

7       B.    THQ's WWE Video Games ........................................................ 2

8             1.    WWE Superstars In THQ's Games .................................. 3

9             2.    Create-A-Wrestler Feature .............................................. 4

10            3.    Wrestling Moves Available For Game Play ..................... 6

11 III.  ARGUMENT ...................................................................................... 6

12      A.    Legal Standard For Summary Judgment .................................... 6

13      B.    Plaintiff's Claim For Infringement Of Federally Registered
              Trademarks Fails As A Matter Of Law ....................................... 7
14
15            1.    THQ Does Not Use "ULTIMATE WARRIOR" Or
                    "GENERATION WARRIOR" Marks .............................. 8

16            2.    "Warrior" Call-Name Does Not Infringe "WARRIOR"
                    Mark .............................................................................. 9
17
18                  (a)    Plaintiff Cannot Prevent THQ's Use Of The
                           Word "Warrior" ................................................ 10

19                  (b)    THQ's Use Is Protected By The First
                           Amendment ....................................................... 11
20
21            3.    THQ Does Not Use The Design Mark Or Any
                    Confusingly Similar Mark ............................................. 12

22      C.    Plaintiff's False Designation Of Origin Claim Also Fails ......... 14

23            1.    Plaintiff's Claim Based On THQ's Alleged Use Of The
                    Ultimate Warrior "Character" Or "Likeness" Fails As
24                  A Matter Of Law ........................................................... 14

25                  (a)    Plaintiff Does Not Own A Valid, Protectable
                           Trademark Or Trade Dress Right In The
26                         Ultimate Warrior "Character" Or "Likeness" ..... 14

27                  (b)    THQ Has Made No Use Of The Alleged
                           "Character" Or "Likeness" ................................ 16
28

1

Page

2

3        2.     Plaintiff's Claim Based On THQ's Alleged Use Of The
Ultimate Warrior's "Signature" Moves Fails As A
4           Matter Of Law....................................................................................17

5            (a)    Plaintiff's "Signature" Moves Are Not Valid
Trademarks............................................................................18
6

7            (b)    THQ Has Made No Infringing Use Of The
"Signature" Moves ...............................................................20

8    D.    Plaintiff's Claim For Infringement Of A Common Law
Trademark Fails For The Same Reasons As Plaintiff's
9        Lanham Act Claims....................................................................................21

10 IV.    CONCLUSION ................................................................................21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) .................................................................. 7

5

*Anderson v. Liberty Lobby, Inc.,*
6     477 U.S. 242 (1986) ......................................................................... 6, 7

7

*Big Island Candies, Inc. v. Cookie Corner,*
    269 F. Supp. 2d 1236 (D. Haw. 2003) ................................................ 15

8

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
9     174 F.3d 1036 (9th Cir. 1999) .............................................................. 7

10

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.,*
    70 F.3d 267 (2d Cir. 1995) ................................................................. 10

11

*Celotex Corp. v. Catrett,*
12     477 U.S. 317 (1986) ............................................................................. 6

13

*Cohn v. Petsmart, Inc.,*
    281 F.3d 837 (9th Cir. 2002) ................................................................ 7

14

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
15     539 U.S. 23 (2003) ............................................................................. 18

16

*Disc Golf Ass'n v. Champion Discs, Inc.,*
    158 F.3d 1002 (9th Cir. 1998) ............................................................ 15

17

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
18     444 F. Supp. 2d 1012 (C.D. Cal. 2006) ......................................... 11, 12

19

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
    228 F.3d 56 (2d Cir. 2000) ................................................................. 19

20

*Galerie Furstenberg v. Coffaro,*
21     697 F. Supp. 1282 (S.D.N.Y. 1988) .................................................... 19

22

*Hughes v. Design Look Inc.,*
    693 F. Supp. 1500 (S.D.N.Y. 1988) .................................................... 19

23

*In re Port Authority of New York,*
24     3 U.S.P.Q.2d 1453 (T.T.A.B. 1987) ..................................................... 9

25

*Interactive Digital Software Ass'n v. St. Louis County,*
    329 F.3d 954 (8th Cir. 2003) .............................................................. 11

26

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,*
27     326 F.3d 687 (6th Cir. 2003) ............................................................ 7, 8

28

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
    543 U.S. 111 (2004) ........................................................................... 10

- iii -

Page(s)

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir.
    1999) ............................................................................................... 7

*Mattel, Inc. v. MCA Records, Inc.,*
    296 F.3d 894 (9th Cir. 2002) .................................................... 11

*New Kids on the Block v. News America Publishing, Inc.,*
    971 F.2d 302 (9th Cir. 1992) ............................................ 8, 10, 16, 18

*Oliveira v. Frito-Lay, Inc.,*
    251 F.3d 56 (2d Cir. 2001) ...................................................... 19

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989) ..................................................... 11

*Scholastic Inc. v. Speirs,*
    28 F. Supp. 2d 862 (S.D.N.Y. 1998) ................................... 16, 18

*Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.,*
    156 F. Supp. 2d 1148 (C.D. Cal. 2001), *vacated pursuant to*
    *settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) ...................................... 15

*Surfvivor Media, Inc. v. Survivor Prods.,*
    406 F.3d 625 (9th Cir. 2005) ....................................................... 7

*United American Indus., Inc. v. Cumberland Packing Corp.,*
    2007 WL 38279 (D. Ariz. Jan. 5, 2007) ............................... 21

*Universal City Studios, Inc. v. Nintendo Co.,*
    578 F. Supp. 911 (S.D.N.Y. 1983), *aff'd*, 746 F.2d 112 (2d Cir.
    1984) ................................................................................................ 15

*Video Software Dealers Ass'n v. Maleng,*
    325 F.Supp.2d 1180 (W.D. Wash. 2004) ............................. 11

*Video Software Dealers Ass'n v. Schwarzenegger,*
    401 F. Supp. 2d 1034 (N.D. Cal. 2005) .............................. 11

*Walker & Zanger, Inc. v. Paragon Indus., Inc.,*
    465 F. Supp. 2d 956 (N.D. Cal. 2006) ................................ 15

*Yurman Design, Inc. v. PAJ, Inc.,*
    262 F.3d 101 (2d Cir. 2001) ...................................................... 15

**Statutes**

15 U.S.C. § 1114(1) .......................................................................... 7

15 U.S.C. § 1115(b)(4) .................................................................... 10

15 U.S.C. § 1125(a) ................................................................. passim

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF

Page(s)

15 U.S.C. § 1127 ............................................................................. 9, 16, 18, 19

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* ............ 7, 16, 21

*Webster's New International Dictionary* 2578 (3d ed. 1986) ........................................... 12

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................... 6

Fed. R. Civ. P. 56(e) ........................................................................... 6

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF