**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ultimate Creations, Inc., an Arizona corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>THQ Inc., a corporation,<br><br>        Defendant. | No. CV-05-1134-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendant THQ Inc.'s (Defendant or THQ) Motion for Summary Judgment. (Dkt. 56). The motion is fully briefed and ripe for determination.

## BACKGROUND

**The Players**

This case involves a dispute over Defendant's alleged infringing use of Plaintiff's intellectual property rights associated with the Warrior wrestling persona in Defendant's video games.

Warrior[1] is the President of Plaintiff Ultimate Creations, Inc. ("Plaintiff"), an Arizona corporation, which he uses to handle the licensing of Warrior-related marks. (*Id.*). Plaintiff owns specific trademarks and service marks associated with his [wrestling] names "Ultimate Warrior," "Generation Warrior," and "Warrior." (*Id.* at 2). Plaintiff also owns a registered design mark (the logo), which was used as part of Warrior's wrestling costume. (*Id.*).

---

[1] Warrior is Plaintiff's legal name.

1  Defendant THQ, Inc. ("Defendant") is a leading worldwide developer and publisher of video
2  games, including approximately twelve wrestling games. (*Id.* at 4; Dkt. 59).

3  In 1986, Warrior began professional wresting for the World Wrestling Entertainment,
4  Inc. ("WWE"). Warrior's last televised wrestling match was in 1998. Warrior claims that
5  his wrestling character was distinctive because he had long, flowing hair, wore arm pads and
6  knee pads with fringe, displayed on his costume and face a logo roughly in the shape of an
7  upside-down "W"-the logo, originated from "Parts Unknown," had an exceptionally
8  muscular build, and used "signature" moves in his wrestling performances. (Dkt. 77).

9  In 2003, the parties entered into negotiations to license intellectual property associated
10 with Warrior. The draft license agreement included the use of Warrior's "name, voice,
11 facsimile signature, nickname, likeness, signature moves, entrance music, endorsement, right
12 of publicity, and biographical sketch as it may appear in photographs, film, video clips, etc."
13 (Dkt. 74, ¶ 17). However, the negotiations eventually terminated without entering into a
14 contract. (*Id.* ¶¶ 17, 19).

15 **The Game**

16 As a developer and publisher of wrestling video games, Defendant provides players
17 an opportunity in some of its video games to choose from real-life wrestlers or to create their
18 own characters to play.[2] The Create-A-Wrestler ("CAW") feature allows players to start
19 with a generic human body form that they can alter in several ways. (Dkt. 56, p. 4). After
20 players finalize their wrestler's appearance, they can choose a name for it, select the
21 wrestler's hometown, assign it wrestling moves that it will use in entering the ring or in
22 fighting an opponent, give it strength attributes, pick entrance music, and give it a "call
23 name" that the game's announcing voice will call out when that wrestler walks into the arena,
24 by choosing from a pre-determined list of names. (*Id.* at 4–5).

---

27 [2]Plaintiff contends that his likeness is used in the Create-A-Wrestler feature.

- 2 -

Plaintiff alleges that Defendant began to use the likeness, moves, trade dress, marks, and other intellectual property associated with Warrior in its video games as early as October of 2003. (Dkt. 74). Specifically, players may use the CAW feature on the games to create a character that has a similar build, face paint, and logo symbol as Warrior, that uses the entrance and finishing moves found under the label "OUW" that are similar to Warrior's, that has the call name "The Warrior" or "Warrior," and is from "Parts Unknown." (Dkt. 77, p. 7). Plaintiff contends that this feature causes confusion as to whether Plaintiff sponsored or is associated with the game. (*Id.* at 10). Thus, Plaintiff claims that Defendant has unfairly profited from including the ability to create a wrestler who strongly resembles Warrior in its games without compensating Plaintiff. (*Id.* at 7)

Defendant concedes that there are moves labeled "OUW," that players can create a wrestler who they believe is similar to Warrior, and that players exchange information on the internet regarding how to make the Warrior character. *See* Dkt. 56, p. 5; Dkt. 78. It also acknowledges that a preliminary marketing document stating that Warrior would be in Defendant's "Day of Reckoning" video game was released on April 1, 2005, but was then retracted. *See id.* at p.9 n. 7. Defendant disputes that this document invokes the protection of the Lanham Act because it was not used to market or advertise the WWE games. *Id.* at 8, 9 n. 7. Defendant also rejects the notion that there is a likelihood of consumer confusion. (Dkt. 78, p. 2). Overall, Defendant argues its use was fair, and denies taking the affirmative action necessary to be liable to Plaintiff for any infringement of his intellectual property rights. (*See* Dkt. 56, p.8; 78, p. 6).

Plaintiff filed a Complaint against Defendant alleging infringement of a registered trademark, false designation of origin of an unregistered trademark or trade dress, and infringement of common law trademark. (Dkt. 14). Subsequently, Defendant filed a motion for summary judgment or, in the alternative, partial summary judgment seeking dismissal of Plaintiff's claims. (Dkt. 56).

- 3 -

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure Rule 56(c) provides for motions for summary judgment when the moving party is entitled to judgment as a matter of law. The court will not make credibility determinations or weigh the evidence, and will draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Jada Toys, Inc. v. Mattel, Inc*., 496 F.3d 974, 978 (9th Cir. 2007); *see also Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002).

**DISCUSSION**

**A.    INFRINGEMENT OF PLAINTIFF'S FEDERALLY REGISTERED MARKS**

Defendant argues that Plaintiff cannot succeed on its claims for use of Plaintiff's registered marks for the Warrior name or the Warrior logo. "A trademark is a word, phrase or symbol that is used to identify a manufacturer or sponsor of a good or the provider of a service." *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 900 (9th Cir. 2002). The Lanham Act section 32, 15 U.S.C. § 1114, provides protection for infringement of a registered trademark where the marks are so similar as to likely cause confusion, or to cause mistake or to deceive. *Surfvivor Media, Inc.*, 406 F.3d at 630 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111 (2004)). To receive protection, the use must be made in connection with the sale, distribution, or advertising of goods and services. *Lockheed Martin Corp. v. Network Solutions, Inc*., 985 F. Supp. 949, 957 (C.D. Cal. 1997), *aff'd* 194 F.3d 980 (9th Cir. 1999)**.**

**1.    Descriptive Marks, Secondary Meaning, & Likelihood of Confusion**

Descriptive marks include names or words that define a particular characteristic of the product. *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Such marks

- 4 -

receive trademark protection only upon acquiring a secondary meaning. *Id.*; *Surfvivor Media, Inc.*, 406 F.3d at 632. Secondary meaning is the consumer's association of the mark with a particular source or sponsor. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir.1992). Secondary meaning is "acquired when in the minds of the public, the primary significance of a product feature is to identify the source of the product rather than the product itself." *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 163 (1995); *see also Quiksilver, Inc*, 466 F.3d at 760. Whether a mark has acquired a secondary meaning is typically a question of fact for the jury. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 991 (9th Cir. 2006). However, there is a conclusive presumption that a registered mark has acquired secondary meaning, which extends to the most salient feature of the mark. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005); *see Quiksilver, Inc*, 466 F.3d at 755 ("Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark in commerce." (internal quotations omitted)). Infringement of a mark may occur even if the mark is only partially imitated. *KP Permanent Make-Up, Inc.*, 408 F.3d at 606.

Once it has been determined that the mark is protectable, the Court will look at the core element of trademark infringement, which is likelihood of confusion. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc.*, 408 F.3d at 608. Determining whether there is a likelihood of confusion involves a fact-intensive inquiry. *Id.* As a result, summary judgment is not proper when a reasonable jury could conclude that there is a likelihood of confusion. *Id.*

### a. **Use of Warrior Call Name**

Defendant argues that because the word "Warrior" is descriptive, the mark is not entitled to protection when Defendant uses it in a non-trademark manner, such as using it in

- 5 -

its ordinary, descriptive sense. (Dkt. 56, p.9–10). Additionally, Defendant claims that there is no likelihood of confusion from its use. Although "Warrior" may be a descriptive term, the fact that it acquired protection as a registered trademark or service mark creates the presumption that the word has acquired a secondary meaning.

Next, because Defendant uses the exact word as Plaintiff's registered mark, there is a greater likelihood of confusion. *See KP Permanent Make-Up, Inc.*, 408 F.3d at 606. Defendant also used the word *as a name* for a player's wrestling character, which is the same type of use for which it is trademarked. Although the Defendant did not use the name "Ultimate Warrior" or "Generation Warrior," "Warrior" is clearly the most salient part of the mark. Therefore, Defendant may be liable for infringement for using the name "Warrior" in its video games.

### b. Use of Warrior-like Symbol

Defendant argues that the "bat-like" symbol available in several of its video games is generic, not exactly the same as Warrior's logo, and therefore is not confusingly similar to Warrior's symbol. (Dkt. 56, p. 12). Analyzing similarities in appearance between symbols or logos is really "nothing more than a subjective eyeball test." McCarthy on Trademarks § 23:25 (1973). "[M]arks must be considered in their entirety and as they appear in the market-place." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir.1993).

Here, the Warrior logo is a registered design mark. Although it is not identical to Defendant's symbol, an ordinary consumer could find its general appearance to be confusingly similar to the symbol available in Defendant's video games. Indeed, from Plaintiff's Statement of Facts it appears that actual players' have used Defendant's bat-like symbol in creating the "Warrior" CAW, which illustrates its similarity to Warrior's registered logo. (Dkt. 74 ¶ 42, 49). The fact that Defendant is using the symbol in a market geared towards wrestling fans increases the likelihood of confusion among consumers. *Official Airline Guides, Inc.*, at 1392. Thus, Defendant may be liable for infringement for using the bat-like symbol in its video games.

### 2. Fair Use Doctrine

Despite a showing of likelihood of confusion, the defendant may escape liability by demonstrating that its use of the marks was fair. *KP Permanent Make-Up, Inc.*, 408 F.3d at 608. Courts have recognized a nominative fair use defense where the use of the trademark "does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 810 (9th Cir. 2003) (quoting *New Kids on the Block v. News Am. Publishing, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992)).

In order to establish this affirmative defense of fair use, the defendant has the burden of demonstrating that the term at issue was used "descriptively, not as a mark, fairly, and in good faith." *KP Permanent Make-Up, Inc.*, 543 U.S. at 124 (citing 15 U.S.C. § 1115(b)(4)). The Ninth Circuit has also articulated three factors to consider in determining whether a defendant is entitled to the nominative fair use defense: "(1) the product must not be readily identifiable without use of the mark; (2) only so much of the mark may be used as is reasonably necessary to identify the product; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1041 (9th Cir. 2007); *see also Walking Mountain Productions*, 353 F.3d at 810. Further, the use must not "create an improper association between a mark and a new product." *Horphag Research Ltd.*, 475 F.3d at 1037.

As discussed, Defendant argues that it used the name "Warrior" descriptively and not as a mark, and thus its use was fair. (Dkt. 78). Despite this assertion, the Court finds that a jury could find that neither the mark nor the similar symbol was used in good faith based on the prior, unsuccessful negotiations between the parties. (Dkt. 74 ¶¶ 17, 19). What is clear is that the use of the name Warrior was not necessary to create or market the video games. *See Horphag Research Ltd.*, 475 F.3d at 1041. Also, the combination of the signature moves, the face paint, the similar symbol, and "Warrior" call name suggests that Defendant intentionally provided the tools for consumers to create a wrestler in the likeness

of Warrior without regard to his intellectual property rights. *See* Dkt. 77, p. 10. Thus, a jury could conclude that Defendant's use was an improper attempt to capitalize on the popularity of the Warrior wrestling character. *See Horphag Research Ltd.*, 475 F.3d at 1038. As such, summary judgment on Plaintiff's claim of infringement of registered trademarks and service marks is not proper.

**B.  FALSE DESIGNATION OF ORIGIN INFRINGEMENT UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125**

Defendant alleges that Plaintiff has failed to show a protectable trademark or trade dress in the unregistered elements of the Warrior character to entitle it to protection under section 43 of the Lanham Act. (Dkt. 56). Conversely, Plaintiff argues that the Warrior character is distinctive, and offers as proof the fact that he has licensed intellectual property rights for the use of the Warrior character for the past eight years. (Dkt. 77, p.6).

Section 43(a) of the Lanham Act provides in pertinent part:

(a) Civil action

>  (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>  (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
>  shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The origin of goods as used in the statute refers to "the producer of the tangible product sold in the marketplace." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003). The scope of protection for unregistered marks under section 43 is slightly broader than under section 32, 15 U.S.C. § 1114, for registered marks. *Two*

*Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). To succeed on a claim for infringement of an unregistered mark, "the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) (citing *Wal-Mart, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000)).

The purpose of section 43(a) is to protect persons against unfair competition through misleading and deceptive uses of an unregistered trademark or trade dress. *Two Pesos, Inc.*, 505 U.S. at 768; *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). "[T]rade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics." *Entrepreneur Media, Inc.*, 279 F.3d at 1144. Costumes may be entitled to protection if they contain distinctive, nonfunctional elements. *See In re Red Robin Enterprises, Inc.*, 222 U.S.P.Q. 911, 912–13 (TTAB 1984) (allowing registration of a bird costume used for entertainment purposes as a service mark); *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 201 U.S.P.Q. 740 (S.D.N.Y. 1979), *aff'd* 604 F.2d 200 (2d Cir. 1979)(finding that specific elements of the Dallas cheerleading outfit were distinctive and arbitrary enough to make the uniform eligible to be a valid trademark and service mark).[3] In order to bring a claim for a trade dress or mark that is not sufficiently distinctive, the plaintiff must show that it has acquired a secondary meaning. *Two Pesos, Inc.*, 505 U.S. at 767 (citing the analysis in *Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir. 1981) with approval).

In the present case, Warrior's trade dress involves the costume, symbol, face paint, and color combinations that make up the overall image of his wrestling character. Through

---

[3] Despite not coming out of the Ninth Circuit, these cases provide the Court with persuasive guidance as to whether costumes, make-up, and other unregistered trademark or trade dress may be entitled to protection.

the video games, Defendant has made these elements available to its consumers. The websites where players exchange information regarding how to create the Warrior wrestling character suggest that Warrior has a distinctive trade dress, which supports a finding of secondary meaning in Warrior's overall appearance, and denotes possible confusion as to whether the video games are affiliated with Warrior himself. *See* Dkt. 74 ¶ 42. The elements of the trade dress also appear to be non-functional, and the combination of the elements may be sufficient to create a distinctive trade dress that is capable of protection. *See Yurman Design, Inc.*, 262 F.3d at 118. Thus, taken as a whole, a reasonable person could find that Defendant has committed a violation of Plaintiff's unregistered trademarks or trade dress under section 43(a) by confusing consumers as to Plaintiff's affiliation, connection, or association with Defendant's games.

## C.   COMMON LAW TRADEMARK INFRINGEMENT CLAIM

Defendant alleges that the absence of confusion similarly bars Plaintiff's common law claim. (Dkt. 78, p. 9). The general concern under the common law for unfair competition is the protection of consumers from confusion as to the source of goods. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989). Unfair competition is determined with reference to the character and circumstances of the business. *INS v. Associated Press*, 248 U.S. 215, 236 (1918). However, courts are given wide discretion in deciding whether the conduct is unfair due to the flexible nature of the tort. *Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 591 (9th Cir. 1987). Therefore, the tort of unfair competition may involve several equitable considerations. For example, a defendant may not misappropriate something from the plaintiff for the purpose of using it for defendant's own profit and to the disadvantage of the plaintiff. *INS*, 248 U.S. at 240.

Here, Plaintiff must demonstrate the existence of customer confusion as described in Plaintiff's previous claims arising out of the Lanham Act. *See KP Permanent Make-Up, Inc.*,

408 at 608. For the reasons discussed above, Plaintiff has provided sufficient evidence to overcome a motion for summary judgment on this issue. Further, if evidence demonstrates that Defendant acted in bad faith by attempting to misappropriate Plaintiff's intellectual property, then equity concerns would also suggest that Plaintiff may be entitled to relief under common law infringement.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendant THQ's Motion for Summary Judgment or in the Alternative Partial Summary Judgment (Dkt. 56).

DATED this 24th day of January, 2008.

Stephen M. McNamee
United States District Judge