IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ULTIMATE CREATIONS, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>THQ INC., a corporation,<br><br>Defendant. | No.  CV-05-1134-PHX-SMM<br><br>**EXHIBIT INDEX** |

| Exhibit | Description |
|---|---|
| 1 | THQ's Proposed Form of Pretrial Order |
| 2 | UCI's Thursday, April 24 9:36 a.m. comments to then-current draft of joint Proposed Pretrial Order |
| 3 | The Parties' Agreed Proposed Preliminary Jury Instructions |
| 4 | THQ's Proposed Supplemental Preliminary Jury Instructions |
| 5 | UCI's Tuesday, April 22 3:26 p.m. comments to THQ's draft joint Preliminary Jury Instructions served on Friday, April 18 p.m. |
| 6 | UCI's Wednesday, April 23 2:44 p.m. additional comments to draft Preliminary Jury Instructions |
| 7 | Proposed Final Jury Instructions |
| 8 | THQ's Proposed Supplemental Final Jury Instructions |
| 9 | UCI's Tuesday, April 22 4:21 p.m. comments to THQ's draft joint Final Jury Instructions served on Friday, April 18 p.m. |
| 10 | UCI's Thursday, April 24 3:44 p.m. additional revisions to THQ's draft joint Final Jury Instructions served on |
| 11 | THQ's Proposed Description of the Case |
| 12 | UCI's Monday, April 21 2:03 p.m. comments to THQ's draft joint Proposed Description of the Case served on Friday, April 18 p.m. |
| 13 | The Parties' Agreed Proposed Voir Dire |
| 14 | THQ's Proposed Form of Verdict |

# EXHIBIT 1

# EXHIBIT 1

Daniel D. Maynard, No. 009211
Jennifer A. Sparks. No. 017502
**MAYNARD CRONIN ERICKSON**
**CURRAN & SPARKS, P.L.C.**
3200 N. Central Avenue, Suite 1800
Phoenix, AZ  85012-2502
Telephone: (602) 279-8500

Attorneys for Plaintiff Ultimate Creations, Inc.

Steven A. Marenberg (Pro Hac Vice)
Kara D. McDonald (Pro Hac Vice)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199
Email:  smarenberg@irell.com
        kmcdonald@irell.com

Patricia Lee Refo (Bar No. 017032)
Andrew F. Halaby (Bar No. 017251)
**SNELL & WILMER** **L.L.P.**
One Arizona Center
400 E. Van Buren
Phoenix, Arizona 85004-2202
Telephone:  (602) 382-6000
Facsimile:  (602) 382-6070
Email:  prefo@swlaw.com
        ahalaby@swlaw.com

Attorneys for Defendant THQ Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ultimate Creations, Inc., an Arizona corporation, | ) ) ) | Case No. CV-05-1134-PHX-SMM |
| Plaintiff, | ) ) | **THQ, INC.'S PROPOSED FORM OF PRETRIAL ORDER** |
| v. | ) ) | |
| THQ Inc., a corporation, | ) ) | |
| Defendant. | ) ) | |

**A.    COUNSEL FOR THE PARTIES.**

Plaintiff(s):   Daniel D. Maynard, Jennifer A. Sparks, MAYNARD CRONIN

ERICKSON CURRAN & SPARKS, P.L.C., 3200 N. Central Avenue, Suite 1800,

1   Phoenix, AZ  85012-2502, Telephone: (602) 279-8500.

2        Defendant(s):   Steven A. Marenberg, Kara D. McDonald, IRELL & MANELLA

3   LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276,

4   Telephone: (310) 277-1010, Facsimile: (310) 203-7199; Patricia Lee Refo, Andrew F.

5   Halaby, SNELL & WILMER L.L.P., One Arizona Center, Phoenix, Arizona 85004-2202,

6   Telephone: (602) 382-6000, Facsimile: (602) 382-6070.

7       **B.**    **STATEMENT OF JURISDICTION.**

8        Jurisdiction in this case is based on Title 28 U.S.C. §§1331, 1338(a) and (b), 1367

9   and 1391.

10       Jurisdiction is not disputed.

11      **C.**    **NATURE OF ACTION.**

12       This is an action involving three counts: (1) Infringement of a Federally Registered

13  Trademark; (2) False Designation of Origin Under Section 43(A) of the Lanham Act; and

14  (3) Infringement of Common Law Trademark.  Plaintiff is seeking monetary damages.

15      **D.**    **CONTENTIONS OF THE PARTIES.**

16         **1.**    **Plaintiff's Contentions**

17      <u>Count One - Infringement of a Federally Registered Trademark.</u>

18       Plaintiff, UCI has federal registrations on the Warrior move and the Warrior logo.

19  UCI contends that THQ is liable for infringement for using the name "Warrior" in its video

20  games and that an ordinary customer could find its federally registered design logo ("bat-

21  like" symbol) confusingly similar to the symbol available in THQ's video games.  The

22  Lanham Act section 32, 15 U.S.C. § 1114, provides protection for infringement of a

23  registered trademark where the marks are so similar as to cause confusion or to cause

24  mistake or to deceive.  *Surfvivor Media, Inc.*, 406 F.3d at 630 (quoting *KP Permanent*

25  *Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).  Descriptive marks

26  include names or words that define a particular characteristic of the product.  *Quiksilver,*

27  *Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).  Such marks receive trademark

28  protection only upon acquiring a secondary meaning.  *Id.*; *Surfvivor Media, Inc.*, 406 F.3d

at 632.  Secondary meaning is the consumer's association of the mark with a particular source or sponsor.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).  Secondary meaning is "acquired when in the minds of the public, the primary significance of a product feature is to identify the source of the product rather than the product itself."  *Qualitex Co. v. Jacobson Products co., Inc.*, 514 U.S. 159, 163 (1995); *see also Quiksilver, Inc.*, 466 F.3d at 760.  Whether a mark has acquired a secondary meaning is typically a question of fact for the jury.  *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 991 (9th Cir. 2006).  However, there is a conclusive presumption that a registered mark has acquired secondary meaning, which extends to the most salient feature of the mark.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005); *see Quiksilver, Inc.*, 466 F.3d at 755 ("Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark in commerce." (internal quotations omitted)).  Infringement of a mark may occur even if the mark is only partially imitated.  *KP Permanent Make-Up, Inc.*, 408 F.3d at 606.

Once it has been determined that the mark is protectable, the Court will look at the core element of trademark infringement, which is likelihood of confusion.  *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).  "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of different product identified by a similar mark."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d at 608.  Determining whether there is a likelihood of confusion involves a fact-intensive inquiry.  *Id*.  As a result, summary judgment is not proper when a reasonable jury could conclude that there is a likelihood of confusion.  *Id.*

### a.   Use of Warrior Call Name

Defendant argues that because the word "Warrior" is descriptive, the mark is not entitled to protection when Defendant uses it in a non-trademark manner, such as using it in its ordinary, descriptive sense.  (Dkt. 56, p. 9-10).  Additionally, Defendant claims that

there is no likelihood of confusion from its use.  Although "Warrior" may be a descriptive term, the fact that it acquired protection as a registered trademark or service mark creates the presumption that the word has acquired as secondary meaning.

Next, because Defendant uses the exact word as Plaintiff's registered mark, there is a greater likelihood of confusion.  *See KP Permanent Make-Up, Inc.*, 408 F.3d at 606.  Defendant also used the word *as a name* for a player's wrestling character, which is the same type of use for which it is trademarked.

### b.      Use of Warrior-like Symbol

The UCI logo is a registered design mark.  Analyzing similarities in appearance between symbols or logos in really "nothing more than a subjective eyeball test."  McCarthy on Trademarks § 23:25 (1973).  "[M]arks must be considered in their entirety and as they appear in the market-place."  *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).

Although the Warrior logo is not identical to Defendant's symbol, an ordinary consumer could find its general appearance to be confusingly similar to the symbol available in Defendant's video games.  Actual players' have used Defendant's bat-like symbol in creating the "Warrior" CAW, which illustrates its similarity to Warrior's registered logo.  The fact that Defendant is using the symbol in a market geared towards wrestling fans increases the likelihood of confusion among consumers.  *Official Airline Guides, Inc.*, at 1392.  Thus, Defendant is liable for infringement for using the bat-like symbol in its video games.

THQ's willful and deliberate violation of UCI marks and intellectual property is with intent to trade upon the goodwill and reputation of Warrior and the Ultimate Warrior.  Defendant has the burden of demonstrating that "Warrior" and the design logo was used descriptively, not as a mark, fairly and in good faith.  Plaintiff contends that Defendant's use of the mark and the logo was not in good faith, based on the prior unsuccessful negotiations between the parties, and that Defendant intentionally by using a combination of the registered marks, the signature moves, and the Warrior trade dress which includes

face paint, the logo, match colored arm bands and matching fringe on the Warrior boots and knee pads provided the tools for consumers to create a wrestler in the likeness of Warrior without regard to his intellectual property rights in an improper attempt to capitalize on the popularity of Warrior.

Count Two - False Designation of Origin under Section 43(A) of the Lanham Act.

The Warrior character is distinctive and Plaintiff has registered trademarks and service marks and common law marks in the ring entrance, which includes running into the ring, running around the outside of the ring apron, standing in the ring corners and reaching to the sky with both arms and vigorously shaking the ropes and in his signature ending move where the Warrior character reaches to the sky with both arms, bounces off the ropes three times and then pressed the opponent over his head before dropping him on the mat and pinning him.  Plaintiff has common law marks in the Warrior characters trade dress that includes the character having the Warrior logo painted on his face and arm bands with tassels in matching color and tassels from his boots in matching color.  UCI has licensed intellectual property rights for the use of the Warrior character for over eight years.  (Dkt. 77, p. 6).

Section 43(a) of the Lanham Act provides in pertinent part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The original of goods as used in the statute refers to "the producer of the tangible product sold in the marketplace."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003).  The scope of protection for unregistered marks under section 43 is slightly broader than under section 32, 15 U.S.C. § 1114, for registered marks.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  To succeed on a claim for infringement of an unregistered mark, "the plaintiff must provide (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's."  *Yuman Design, Inc. v. PJA, Inc.*, 262 F.3d 101, 115 (2nd Cir. 2001)(citing *Wal-Mart, Inc. v. Samara Bros.,* 529 U.S. 205, 210 (2000)).

The purpose of the section 43(a) is to protect persons against unfair competition through misleading and deceptive uses of an unregistered trademark or trade dress.  *Two Pesos, Inc.* 505 U.S. at 768, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002).  "[T]rade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics."  *Entrepreneur Media, Inc.*, 279 F.3d at 1144.  Costumers may be entitled to protection of they contain distinctive, nonfunctional elements.  *See In re Red Robin Enterprises, Inc.*, 222 U.S.P.Q. 911, 912-13 (TTAB 1984) (allowing registration of a bird costume used for entertainment purposes as a service mark); *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 201 U.S.P.Q. 740 S.D.N.Y. 1979), *aff'd* 604 F.2d 200 (2nd Cir. 1979) (finding that specific elements of the Dallas cheerleading outfit were distinctive and arbitrary enough to make the uniform eligible to be a valid trademark and services mark.  In order to bring a claim for a trade dress or mark that is not sufficiently distinctive, the plaintiff must show that it has acquired a secondary meaning.  *Two Pesos, Inc.*, 505 U.S. at 7676 (citing the analysis in *Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir. 1981) with approval).

In the present case, Warrior's trade dress involves the costume, symbol, face paint, and color combinations that make up the overall image of his wrestling character.

1  Through the video games, Defendant has made these elements available to its consumers.

2  The websites where players exchange information regarding how to create the Warrior

3  wrestling character suggest that Warrior has a distinctive trade dress, which supports a

4  finding of secondary meaning in Warrior's overall appearance, and denotes possible

5  confusion as to whether the video games are affiliated with Warrior himself. *See* Dkt. 74

6  ¶ 42.   The elements of the trade dress also appear to be non-functional, and the

7  combination of the elements is sufficient to create a distinctive trade dress that is capable

8  of protection. *See Yurman Design, Inc.*, 262 F.3d at 118.   Thus, taken as a whole, a

9  reasonable person could find that Defendant has committed   a violation of Plaintiff's

10 unregistered trademarks or trade dress under section 43(a) by confusing consumers as to

11 Plaintiff's affiliation, connection, or association with Defendant's games.

12         Count Three - Infringement of Common Law Trademark.

13         The general concern under the common law for unfair competition is the protection

14 of consumers from confusion as to the source of goods. *Bonito Boats, Inc. v. Thunder*

15 *Craft Boats, Inc.*, 489 U.S. 141, 157 (1989).   Unfair competition is determined with

16 reference to the character and circumstances of the business. *INS v. Associated Press*, 249

17 U.S. 215, 236 (1918).   However, courts are given wide discretion in deciding whether the

18 conduct is unfair due to the flexible nature of the tort. *Golden Nugget, Inc. v. American*

19 *Stock Exchange, Inc.*, 828 F.2d 586, 591 (9th Cir. 1987).   Therefore, the tort of unfair

20 competition may involve several equitable considerations.   For example, a defendant may

21 not misappropriate something from the plaintiff the purpose of using it for defendant's

22 own profit and to the disadvantage of the plaintiff. *INS*, 248 U.S. 240.

23         Here, Plaintiff will demonstrate the existence of customer confusion as described in

24 Plaintiff's previous claims arising out of the Lanham Act. *See KP Permanent Make-Up,*

25 *Inc.*, 408 at 608.   Further, the evidence will demonstrate that Defendant acted in bad faith

26 by attempting to misappropriate Plaintiff's intellectual property, which includes the

27 federally registered and common law trademarks and service marks described in the

28

1   preceding section and the Plaintiff's trade dress that is previously disclosed, then equity

2   concerns would also suggest that Plaintiff may be entitled to relief under common law.

3   **2.     Defendant's Contentions**

4       THQ contends that UCI has abandoned its alleged trademarks and alleged trade

5   dress.  In order to prove that UCI abandoned a trademark or trade dress, THQ must prove

6   that UCI (1) discontinued its use in the ordinary course of trade, intending not to resume

7   using it; (2) acted or failed to act so that the trademark's or trade dress's primary

8   significance to the prospective purchasers has become the product or service itself and not

9   the source of the product or service; or (3) failed to exercise adequate quality control over

10  the products or services sold under the trademark or trade dress by a licensee.  15 U.S.C.

11  § 1127; *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir.

12  2002).

13      THQ contends that UCI committed fraud on the United States Patent and

14  Trademark Office in obtaining or maintaining some of UCI's certificates of registration

15  and therefore those registrations are invalid.  In order to prove that UCI committed fraud in

16  the registration or maintenance of its marks THQ must prove that: (1) UCI made a false

17  statement in connection with the application for or maintenance of a trademark

18  registration; (2) the statement was material to the application or the maintenance of the

19  registration; and (3) UCI knew or should have known the statement was false.  15 U.S.C.

20  § 1064(c); *Treat, Inc. v. Dessert Beauty, Inc.*, No. 05-923, 2006 WL 282770 at *3, (D. Or.

21  May 5, 2006); *Torres v. Contines Torresella S.c.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986).

22      THQ contends that its use of UCI's alleged trademarks and trade dress, if any, is

23  protected by the First Amendment to the United States Constitution.  In order to prove that

24  its use is protected by the First Amendment, THQ must prove that the use (1) bears some

25  artistic relevance to THQ's videogames; and (2) does not explicitly mislead consumers as

26  to the source or content of the videogames.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d

27  894, 902 (9th Cir. 2002); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp.

28  2d 1012, 1048 (C.D. Cal. 2006).

THQ contends that, even assuming that UCI has a valid trademark in the term "Warrior," THQ's use of "Warrior" in is videogames constitutes classic fair use.  In order to prove that its use of "Warrior" constitutes classic fair use, THQ must prove by clear and convincing evidence that (1) THQ used the term in its primary, descriptive sense rather than to indicate the source of THQ's goods and services; (2) THQ used the term fairly and in good faith; and (3) THQ used the term only to describe its goods or services, or an element of those goods and services. 15 U.S.C. § 1115(b); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002).

**E.      STIPULATIONS AND UNCONTESTED FACTS.**

(1)      The following facts are admitted by the parties and require no proof:

(a)      THQ is a leading worldwide developer and publisher of interactive entertainment software ("video games").

(b)      THQ develops and publishes wrestling-related video games (the "WWE games"), including:

(i)      SmackDown vs. Raw for PlayStation 2

(ii)      SmackDown vs. Raw 2006 for PlayStation 2 and PSP

(iii)      SmackDown! Here Comes the Pain for PlayStation 2

(iv)      Day of Reckoning for Nintendo GameCube

(v)      WrestleMania XIX for Nintendo Game Cube

(vi)      WWF Raw for Microsoft X-Box

(vii)      WWF Raw 2 for Microsoft X-Box

(c)      Prior to July 2003, representatives of THQ and Ultimate Creations, Inc. entered into negotiations for a non-exclusive license agreement for the use of intellectual property rights, if any, in the "Ultimate Warrior" character's name, voice, facsimile signature, nickname, likeness, signature moves, entrance music, endorsement, right of

publicity, and biographical sketch in connection with certain WWE games to be produced by THQ.

(d)     The negotiations between the representatives of THQ and UCI contemplated that the "Ultimate Warrior" character would be included in the WWE games as an "unlockable playable character," i.e. a character that is inaccessible to players until certain goals within the game are reached.

(e)     The "Ultimate Warrior" character does not appear on the roster of characters in any WWE game.

(f)     The "Ultimate Warrior" character does not appear as an "unlockable" character in any WWE game.

(2)     The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

(a)     On August 5, 2003, UCI entered into an agreement with Acclaim Entertainment, Inc., under which Acclaim licensed the name, nickname, likeness, caricature, distinctive characterization, voice (or simulation thereof), biography, photograph, signature, and other distinctive characteristics of the "Ultimate Warrior" character.

(b)     Plaintiff is the owner of Federal Registered Trademarks Nos. 1,625,919 Ultimate Warrior; 1,818,813 Ultimate Warrior; 1,838,771 Ultimate Warrior; 1,708,155 Warrior; 2,299,387 Warrior; and 2,345,959 (design logo).

(c)     THQ develops and publishes the WWE games under a license from World Wrestling Federation, Inc.

**F.     CONTESTED ISSUES OF FACT AND LAW.**

(1)     The following are the issues of fact to be tried and decided:

**Issue No. 1:** An affiliate of THQ, JAAKS Pacific, Inc., that manufactures action figures has entered into several licensing agreements with UCI to produce a

1  Warrior action figure, and use the federally registered trademarks, Ultimate
2  Warrior, Warrior and design logo;

3  **Plaintiff Contends:**

4  UCI contends that its licensing agreements with JAAKS Pacific Inc. is relevant to
5  show the recognition in the industry of UCI's intellectual property.

6  **Defendant Contends:**

7  THQ submits that UCI's contention is vague and misleading.  In this action, UCI
8  has produced <u>one</u> license agreement—not several agreements—between it and JAKKS
9  Pacific, Inc. ("JAKKS").

10  THQ denies that JAKKS is an "affiliate" of THQ.  Although THQ and JAKKS
11  participate in the joint venture that manufactures the WWE games, the companies are
12  distinct entities and, under Arizona law, they must be treated as such.  The companies,
13  which are both publicly held, are generally engaged in different businesses: THQ is a
14  leading independent developer and publisher of interactive entertainment software
15  worldwide, while JAKKS is a multi-brand company that designs and markets a broad
16  range of toys and consumer products.  The companies do not have any common managers
17  or directors.  THQ has no knowledge of or control over JAKKS's activities in connection
18  with action figures, including JAKK's licensing practices.  In fact, until UCI produced a
19  copy of the JAKKS Agreement in this litigation, THQ was not aware that the agreement
20  even existed.  Likewise, JAKKS does not actively participate in the video game joint
21  venture, and it has no role or input on THQ's licensing decisions regarding the content of
22  the WWE games.  There is simply no basis to conclude that what JAKKS's agreement
23  with UCI has any bearing on THQ's conduct or obligations.

24  THQ further contends that UCI's licensing agreements with JAKKS, under which
25  JAKKS manufactures and distributes action figures of the Ultimate Warrior character, are
26  not relevant to this action.  Even assuming that a single license with one company was
27  evidence of "industry" recognition of UCI's unspecified "intellectual property" (and it is

28

1  not), there is no evidence that there is overlap between the action figure industry and the

2  videogame industry.

3          **Issue No. 2:**  UCI received information from different individuals who play the

4                  THQ wrestling games, including one from England, that the Warrior character

5                  was in several of the THQ wrestling games;

6  **Plaintiff Contends:**

7          UCI learned of the use of Warrior's image and intellectual property from several

8  different individuals who played the THQ games.  UCI then investigated and confirmed

9  the allegation before the current lawsuit was filed.

10 **Defendant Contends:**

11         THQ contends that the Ultimate Warrior character is not in any of the WWE games.

12 UCI has failed to produce any admissible evidence as to the existence or content of

13 communications it allegedly received from third parties.

14         **Issue No. 3:**  Whether THQ has infringed UCI trademarks, service marks and

15                 intellectual property by using similar marks, trade dress and sequential signature

16                 move sets of the Ultimate Warrior and Warrior in its video games;

17         **Plaintiff Contends:**

18         UCI contends that THQ has created the ability for players of its games to use

19 Warrior or the UCI federally registered trademarks and service marks which includes the

20 ring entrance, including running into the ring, running around the outside of the ring apron,

21 standing in the ring corners and reaching to the sky with both arms and vigorously shaking

22 the ropes and in his signature ending move where the Warrior character reaches to the sky

23 with both arms, bounces off the ropes three times and then pressed the opponent over his

24 head before dropping him on the mat and pinning him.  Plaintiff has common law marks in

25 the Warrior characters trade dress that includes the character having the Warrior logo

26 painted on his face and arm bands with tassels in matching color and tassels from his boots

27 in matching color, on its characters and gives individuals the ability to create the Warrior

28

1   character and it allows the Warrior character to enter the ring in his unique manner and to

2   perform his signature moves.  Also, certain games use the name Warrior.

3   **Defendant Contends:**

4        THQ submits that this "issue" is inaccurate, vague, overbroad, compound, and begs

5   the question. UCI has no federally registered trademarks or service marks consisting of its

6   alleged "signature moves."  THQ contends that UCI does not have any protectable interest

7   in the identified wrestling moves. Similarly, UCI has failed to identify the components of

8   the alleged "Warrior character," much less establish that it has any protectable interest in

9   that character.  Finally, the fact that the word "warrior" appears deep within some WWE

10  games as one of fifty or so generic call name options for player-created characters does not

11  infringe UCI's rights.

12       THQ further contends that the "Create-a-Wrestler" feature in its WWE games

13  permits players to create an almost infinite number of characters, including characters that

14  the players may believe resemble actual people or characters, i.e. Britney Spears, Kobe

15  Bryant, the Superman character, the Ultimate Warrior character, etc.  Just as an artist who

16  draws Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant

17  sponsored the crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe

18  Bryant wrestler is not likely to be confused about whether Kobe Bryant sponsored the

19  WWE games.  UCI has failed to adduce any admissible evidence that players' ability to

20  create wrestlers that resemble actual people or characters is likely to confuse an

21  appreciable number of reasonably prudent consumers as to whether the people or

22  characters that the player create are affiliated with the WWE games.

23       **Issue No. 4:**  Whether THQ has profited from its use of the Warrior character and

24            in games by giving the players the capability of creating the Warrior character,

25            putting the face paint on the character in the design logo, having the character

26            dress like Warrior, enter the ring like Warrior, do Warrior's signature moves, be

27            announced as Warrior, and be from "parts unknown," just as Warrior;

28

**<u>Plaintiff Contends:</u>**

UCI submits that THQ negotiated to license UCI's intellectual property concerning Warrior because it would enhance its games and make them more desirable and thus, it would profit from increased sales and when the negotiations stopped, THQ just took UCI's intellectual property to increase its sale and profits.

**<u>Defendant Contends:</u>**

THQ submits that this "issue" is vague, overbroad, compound, and begs the question.  UCI does not identify the alleged "signature moves" or ring entrance, much less establish that it has any protectable interest in such wrestling moves and ring entrances. Similarly, UCI has failed to identify the components of the alleged "Warrior character," much less establish that it has any protectable interest in that character.  In any event, THQ did not use UCI's purported "intellectual property" and, therefore, there is no connection between UCI's purported "intellectual property" and THQ's sales and profits.

THQ further contends that the "Create-a-Wrestler" feature in its WWE games permits players to create an almost infinite number of characters, including characters that the players believe resemble actual people or characters, i.e. Britney Spears, Kobe Bryant, the Superman character, the Ultimate Warrior character, etc.  Just as an artist who draws Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant sponsored the crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe Bryant wrestler is not likely to be confused about whether Kobe Bryant sponsored the WWE games.  UCI has failed to adduce any admissible evidence that players' ability to create wrestlers that resemble actual people or characters is likely to confuse an appreciable number of reasonably prudent consumers as to whether the people or characters that the player create are affiliated with the WWE games.

**<u>Issue No. 5:</u>**  Whether UCI is entitled to damages as a result of THQ's video games, or future use of any items associated with the Ultimate Warrior or Warrior character;

**Plaintiff Contends:**

Plaintiff contends that THQ has made a profit infringing UCI's federally registered marks, and intentionally put Warrior in its videos after it was unable to license his character.  There is a likelihood of confusion in the marketplace (geared toward wrestling fans) as to whether the character that can be created in THQ's wrestling video games is affiliated or connected with Warrior.  THQ's use of Plaintiff's marks was an improper attempt to capitalize on the popularity of the Warrior wrestling character.  Plaintiff is entitled to compensation for THQ's unlicensed use.

**Defendant Contends:**

THQ submits that this "issue" is vague, overbroad, compound, and begs the question. UCI has failed to identify the components of the alleged "Warrior character," much less establish that it has any protectable interest in that character. THQ contends that the "Ultimate Warrior" character is not in any WWE videogame and that no consumer could be confused as to whether UCI is affiliated or connected with those games.  THQ denies that it infringed UCI's federally registered marks or attempted to capitalize on UCI's rights, if UCI has any such rights.  THQ further contends that the "Create-a-Wrestler" feature in its WWE games permits players to create an almost infinite number of characters, including characters that the players believe resemble actual people or characters, *i.e.* Britney Spears, Kobe Bryant, the Superman character, the Ultimate Warrior character, etc.  Just as an artist who draws Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant sponsored the crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe Bryant wrestler is not likely to be confused about whether Kobe Bryant sponsored the WWE games.  UCI has failed to adduce any admissible evidence that players' ability to create wrestlers that resemble actual people or characters is likely to confuse an appreciable number of reasonably prudent consumers as to whether the people or characters that the player create are affiliated with the WWE games.

1      **Issue No. 6:**  Whether UCI owns the intellectual property at issue;

2 **Plaintiff Contends:**

3      Plaintiff contends that it obtained federal registrations on some of its intellectual

4 property associated with the Warrior character and on others, it has common law rights.

5 **Defendant Contends:**

6      THQ submits that this "issue" is vague, overbroad, compound, and begs the

7 question.  THQ contends that UCI's federal registrations are invalid, either because UCI

8 has abandoned its trademarks and/or has maintained its registrations through fraud.  UCI

9 does not identify the alleged "intellectual property" in which it claims to have obtained

10 common law rights and THQ disputes that UCI has acquired any such rights.

11      **Issue No. 7:**  Whether the intellectual property at issue constitutes valid, protectable

12        trademarks;

13 **Plaintiff Contends:**

14      UCI contends that it obtained federal registrations on some of its intellectual

15 property associated with the Warrior character and on others, it has common law rights.

16 UCI believes that its trade dress is distinctive and by THQ's use of it in its wrestling video

17 games, confuses customers or potential customers concerning Warrior's affiliation or

18 association with the games.  THQ did not use UCI's marks descriptively.  THQ used the

19 marks after it failed to enter into a license of the marks prior to release of the video games.

20 **Defendant Contends:**

21      THQ submits that this "issue" is vague, overbroad, compound, and begs the

22 question.  THQ contends that UCI's federal registrations are invalid, either because UCI

23 has abandoned its trademarks and/or has maintained its registrations through fraud.  UCI

24 has failed to identify the alleged "intellectual property" or "trade dress" in which it claims

25 to have obtained common law rights and THQ disputes that UCI has acquired any such

26 rights.   THQ denies that it has used UCI's purported "trade dress" in any WWE

27 videogame.

28

**Issue No. 8:** Whether UCI has abandoned its rights, if any, in the intellectual property at issue;

**Plaintiff Contends:**

Plaintiff contends that it has not abandoned any of its rights to the intellectual property at issue. It entered into a license agreement with a competitor of THQ to license the Ultimate Warrior and Warrior character, likeness, moves, entrance, design logo, and persona; and entered into a license agreement with an affiliate of THQ, JAAKS Pacific, Inc., that manufactures action figures to produce a Warrior action figure. In addition, during the past nine years, Warrior has licensed his image and his service marks and trademarks to various companies for t-shirts, comic books, Warrior Gym, action figures and video games. In recent years, Warrior has done a great deal of public speaking based upon his success as a personality and still utilizes Warrior images in the form of posters and pictures at various speaking engagements. Additionally, Warrior operates a website (www.ultimatewarrior.com) on which he discusses life philosophies and public issues.

**Defendant Contends:**

See THQ's contentions for Issues 10 and 11.

**Issue No. 9:** Whether certain of UCI's trademark registrations are invalid due to fraud committed by UCI, or its predecessors in interest, in connection with the application for or maintenance of the registrations;

**Plaintiff Contends:**

UCI contends that THQ has not timely raised or disclosed this defense and that even if timely disclosed, UCI has not made false statements to the PTO.

**Defendant Contends:**

THQ timely raised this defense. Fraud on the Patent and Trademark Office ("PTO") constitutes unclean hands and inequitable conduct, which THQ pled in its answer. (Dkt. #19). THQ could not disclose this defense prior to the close of discovery because it did not discover the facts concerning UCI's inequitable conduct until the deposition of Warrior, which was conducted after the close of discovery in order to accommodate the

1   scheduling conflicts of UCI's counsel.   (Dkt. #32).   Warrior's testimony at deposition

2   concerning UCI's use of its federally registered trademarks contradicted his sworn

3   statements to the PTO.

4       THQ contends that Registration Nos. 2,345,959 and 1,838,771 are void because

5   UCI made false statements to the Patent and Trademark Office in connection with the

6   maintenance of the registrations.

7       With respect to Registration No. 2,345,959, THQ contends that UCI made

8   statements in its "Combined Declaration of Use and Incontestability under Sections 8 &

9   15," which was filed on April 24, 2006, that UCI knew or should have known were false.

10  Specifically, UCI stated in its declaration that its registered mark was used in commerce on

11  or in connection with all goods and/or services listed in the existing registration," i.e., in

12  connection with entertainment services, namely television programming in the nature of

13  live and animated adventures for children.   THQ contends that UCI was not, in fact, using

14  the mark in connection with entertainment services, namely television programming in the

15  nature of live and animated adventures for children.   UCI further stated in its declaration

16  that "there is no proceeding involving [UCI's rights under the registration] rights pending

17  and not disposed of either in the Patent and Trademark Office or in the courts."   However,

18  at the time that UCI filed its declaration, the instant lawsuit had been pending for more

19  than one year.

20      With respect to Registration No. 1,838,771, THQ contends that UCI made

21  statements in its "Combined Declaration of Use in Commerce/Application for Renewal of

22  Mark Under §§ 8 & 9," which was filed on May 31, 2004, that UCI knew or should have

23  known were false.   Specifically, UCI stated in its declaration that UCI was using its

24  registered mark "in commerce on or in connection with the following goods and services

25  listed in the existing registration: toys and sporting goods; namely plaster molding sets,

26  kites, baseball gloves, flying disks, wrestling gear kits consisting of wrestling belts,

27  wrestling masks and costumes, jigsaw puzzles, board games, marbles, headshaped water

28  squirt toys, teddy bears, dolls, electronic computer games, handheld games; namely

1   handheld pinball and electronic videogames and electronic sports games and action

2   figures." THQ contends that UCI was not, in fact, using the mark in connection with all of

3   the goods and services listed in the declaration. Further, UCI did not inform the Patent and

4   Trademark Office of the pendency of the instant lawsuit, as required by the statute.

5          **Issue No. 10:** Whether UCI abandoned its alleged trademarks and alleged trade

6                 dress by failing to exercise adequate quality control over the products or services

7                 sold under the trademarks or trade dress by UCI's licensees;

8   **Plaintiff Contends:**

9       UCI contends it entered into a licensing agreement with Acclaim Entertainment,

10   Inc. that provided for adequate control of its intellectual property and that it did exercise

11   control over the product put out ("Acclaim") by Acclaim.

12   **Defendant Contends:**

13       THQ contends that UCI has abandoned its alleged trademarks and trade dress

14   because UCI failed to exercise any quality control over the products sold by its licensee

15   Acclaim Entertainment, Inc. ("Acclaim"). UCI states that it licensed its alleged

16   trademarks and alleged trade dress to Acclaim for use by Acclaim in connection with

17   wrestling themed videogames. However, the license agreement between Acclaim and UCI

18   was a "naked license," that is, the license agreement did not permit UCI to exercise any

19   control of the quality of the goods produced under the license. By engaging in naked

20   licensing, UCI abandoned all rights to its alleged trademarks and alleged trade dress.

21          **Issue No. 11:** Whether certain of UCI's trademark registrations are invalid due to

22                 UCI's failure to use the registered marks in commerce on or in connection with

23                 the goods and services specified in the registrations;

24   **Plaintiff Contends:**

25       UCI continues to use its trademarks on the goods, products, and services for which

26   they are registered.

27

28

**Defendant Contends:**

THQ contends that certain of UCI's trademark registrations are invalid because UCI has failed to use the registered marks in commerce in connection with the goods and services specified in the registrations.  The owner of a trademark abandons the right to exclusive use of the trademark in connection with a good or service where the owner discontinues using the mark in connection with the good or service with an intent not to resume such use.

THQ contends that UCI has abandoned registration 1,708,155 for "Warrior" because UCI failed to use the mark in commerce on or in connection with the goods specified in the registration, namely posters.

THQ contends that UCI has abandoned registration 1,818,813 for "Ultimate Warrior" because UCI has failed to use the mark in commerce on or in connection with the goods or services specified in the certificate of registration, namely videocassettes, video/audio cassettes and cinematographic films featuring professional wrestling; audio cassettes, compact discs, laser discs, and phonograph records featuring musical performances.

THQ contends that UCI has abandoned registration 2,299,387 for "Warrior" because UCI has failed to use the mark in commerce on or in connection with the goods or services specified in the certificate of registration, namely sports entertainment services in the nature of professional wrestling contests.

THQ contends that UCI has abandoned registration 2,345,959 for the Design because UCI has failed to use the mark in commerce on or in connection with the goods or services specified in the certificate of registration, namely television programming in the nature of live and animated adventures for children.

**Issue No. 12:** Whether UCI has a valid unregistered trademark in "Warrior" for wrestling entertainment services and products;

**Plaintiff Contends:**

UCI contends that it has common law rights in the mark Warrior for wrestling entertainment services and products including video games, dolls, action figures, and posters.

**Defendant Contends:**

THQ contends that UCI does not have a valid unregistered trademark for "Warrior" in connection with wrestling entertainment services (whatever those are), video games, dolls, action figures, or posters because (1) UCI cannot show sufficient use of the alleged mark in commerce on or in connection with the identified goods and services, and (2) UCI cannot show that the alleged mark is inherently distinctive or that it is descriptive but has acquired secondary meaning.

**Issue No. 13:** Whether UCI has a valid unregistered trademark in "Ultimate Warrior" for wrestling entertainment services and products;

**Plaintiff Contends:**

UCI contends that it has common law rights in the mark Warrior for wrestling entertainment services and products including video games, dolls, action figures, and posters.

**Defendant Contends:**

THQ contends that UCI does not have a valid unregistered trademark for "Ultimate Warrior" in connection with wrestling entertainment services (whatever those are), video games, dolls, action figures, or posters because (1) UCI cannot show sufficient use of the alleged mark in commerce on or in connection with the identified goods and services, and (2) UCI cannot show that the alleged mark is inherently distinctive or that it is descriptive but has acquired secondary meaning.

**Issue No. 14:** Whether UCI has a valid unregistered trademark in the "Design" for [plaintiff to identify goods/services];

**Plaintiff Contends:**

I'm not sure what this is?????

**Defendant Contends:**

To THQ's knowledge, UCI has only claimed trademark rights in one design, or "logo," in this case: the "bat-like" symbol that appears on Registration No. 2,345,959. To the extent UCI claims unregistered trademark rights in that Design, THQ contends that UCI does not have such rights because (1) UCI cannot show sufficient use of the alleged mark in commerce on or in connection with any particular goods or services, and (2) UCI cannot show that the alleged mark is inherently distinctive or that it is descriptive but has acquired secondary meaning.

**Issue No. 15:** Whether UCI has a valid unregistered trade dress in certain elements of the Warrior character for his costume, symbol, face paint and color combinations that make up the overall image of the wrestling character;

**Plaintiff Contends:**

UCI contends that it has valid unregistered trade dress in various elements of the Warrior wrestling character for his costume, symbol, face, paint and coordinated color combinations that make up the overall image of his wrestling character that is very distinct for products and services related to wrestling entertainment that includes live wrestling matches, video games, action figures, dolls, and posters.

**Defendant Contends:**

THQ contends UCI does not have a valid unregistered trade dress in certain elements of the Ultimate Warrior character in connection with wrestling entertainment services, video games, dolls, action figures, or posters because (1) UCI has failed to identify the elements of its alleged trade dress with the requisite specificity, (2) UCI cannot show sufficient use of the alleged trade dress in commerce on or in connection with the identified goods and services, and (3) UCI cannot show that the alleged trade dress has acquired secondary meaning.

**Issue No. 16:** Whether the ability of player to use the "Create a Wrestler" feature in the WWE games to create a character they believe resembles the "Ultimate Warrior" character is likely to confuse an appreciable number of reasonably

1    prudent consumers in the marketplace as to the source or sponsorship of the

2    WWE games;

3  **Plaintiff Contends:**

4    UCI contends that some of THQ's games provide certain of the UCI's intellectual

5  property in groups that can be accessed easily by clicking on the OUW and that other

6  intellectual property owned by UCI can be accessed in the THQ games easily and it is

7  intended by THQ that it be accessed easily.

8  **Defendant Contends:**

9    THQ submits that UCI's contention is vague, overbroad, and compound, consisting

10  of nothing but UCI's conclusory assertion that its unidentified "intellectual property" can

11  be "accessed easily" in the WWE games.

12    THQ contends that the fact that purchasers can use the "Create-a-Wrestler" feature

13  in WWE games to create a character they believe resembles the "Ultimate Warrior"

14  character is not likely to confuse an appreciable number or ordinary consumers in the

15  marketplace as to the source or sponsorship of THQ's wrestling related videogames.  The

16  Ultimate Warrior character does not appear in any of the WWE games.  Some highly

17  motivated players, without any instruction or encouragement from THQ, may use the

18  "Create-a-Wrestler" feature in the WWE games to create wrestlers they believe resemble

19  actual people or characters, i.e. Britney Spears, Kobe Bryant, the Superman character, the

20  Ultimate Warrior character, etc.  THQ contends that, just as an artist who draws Kobe

21  Bryant with crayons is not likely to be confused about whether Kobe Bryant sponsored the

22  crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe Bryant

23  wrestler is not likely to be confused about whether Kobe Bryant sponsored the WWE

24  games.  UCI has failed to adduce any admissible evidence that players' ability to create

25  wrestlers that resemble actual people or characters is likely to confuse an appreciable

26  number of reasonably prudent consumers as to whether the people or characters that the

27  players create are affiliated with the WWE games.  THQ further contends that a player's

28  use of the "Create-a-Wrestler" feature to create wrestler characters does not constitute use

1  of the elements of the wrestler characters in commerce, nor does the players' use constitute

2  use by THQ.

3      **Issue No. 17:** Whether the "Create-a-Wrestler" feature in the WWE games is

4          protected by the First Amendment;

5  **Plaintiff Contends:**

6      UCI contends the First Amendment does not protect THQ from violating UCI's

7  trademarks and trade dress or from actions that violate the Lanham Act..

8  **Defendant Contends:**

9      THQ contends that the "Create-a-Wrestler" feature in WWE games is protected by

10 the First Amendment.  The WWE games are expressive works which are entitled to First

11 Amendment protection.  The Create-a-Wrestler feature is relevant to the contents of the

12 WWE games because it allows players to create his or her own original and unique

13 wrestler and then play the game using that wrestler.  Further, the Create-a-Wrestler feature

14 does not mislead consumers as to the source or content of THQ's games.  THQ does not

15 instruct players on how to create wrestlers that may resemble actual people or characters,

16 or does THQ use player-created characters in its advertising or packaging materials.  Only

17 after purchasing the game can players can create an almost infinite numbers of wrestlers.

18     **Issue No. 18:** Whether UCI was damaged by the fact that players can use the

19         "Create-a-Wrestler" feature in WWE games to create a character they believe

20         resembles the "Ultimate Warrior;"

21 **Plaintiff Contends:**

22     UCI suffers damages because it is not being compensated for the use of its

23 intellectual property and it is being used without its permission.

24 **Defendant Contends:**

25     THQ denies that it used UCI's "intellectual property" and denies that UCI has

26 suffered any damages.

27     **Issue No. 19:** Whether THQ's use in SmackDown! vs. Raw and WrestleMania 21 of

28         "Warrior" or "The Warrior" on a list of call names from which players can

- 24 -

1    select in naming the wrestlers they have created is likely to confuse an
2    appreciable number of reasonably prudent consumers in the marketplace as to
3    the source or sponsorship of WWE games;

4  **Plaintiff Contends:**

5    UCI owns the name Warrior for a wrestling character and the public associates the
6  source of that name with the Plaintiff.

7  **Defendant Contends:**

8    THQ disputes that UCI owns the name "Warrior" for a wrestling character and that
9  the public associates the source of that name with UCI.  THQ further contends that its use
10  of "Warrior" or "The Warrior" on a list of call names from which players can select in
11  naming the wrestlers they have created is not likely to confuse an appreciable number of
12  reasonably prudent consumers in the marketplace as to the source or sponsorship of THQ's
13  wrestling related videogames.  THQ does not use "warrior" to identify its goods or
14  services.  There is no character in any THQ WWE videogame called "Warrior," and THQ
15  does not use "Warrior" in any of its advertising, marketing, or packaging materials.
16  Rather, the word "warrior" only appears deep within the game, on a list of approximately
17  50 generic names from which players can select in naming the wrestlers they create
18  through the Create-a-Wrestler feature.  UCI has failed to adduce any admissible evidence
19  that THQ's limited use of "warrior" is likely to confuse an appreciable number of
20  reasonably prudent consumers about the source or sponsorship of the WWE games.

21    **Issue No. 20:** Whether THQ's inclusion in SmackDown! vs. Raw and WrestleMania
22    21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names
23    from which players can select for the wrestlers they have created constitutes fair
24    use of the term "warrior;"

25  **Plaintiff Contends:**

26    UCI owns the name Warrior for a wrestling character and the public associates the
27  source of that name with the Plaintiff.

28

**Defendant Contends:**

THQ disputes that UCI owns the name "Warrior" for a wrestling character and that the public associates the source of that name with UCI.  THQ contends that its use of "Warrior" or "The Warrior" as one of many of the possible call names that players can select for the wrestlers they have created constitutes classic fair use.  Even assuming that UCI has a valid trademark in "Warrior," UCI cannot prevent others from using the word in its ordinary, descriptive sense.  The ordinary, English-language meaning of "warrior" is a person "engaged or experienced in warfare . . . [or] a person of demonstrated courage, fortitude, zeal, or pugnacity."  Webster's New International Dictionary 2578 (3d ed. 1986).  In allowing game players to name the wrestlers they create "Warrior," THQ does nothing more than permit them to use the word in its descriptive sense, i.e. to describe their wrestlers as engaged or experienced in warfare, or as possessing courage, fortitude, zeal or pugnacity—all of which are desirable characteristics for wrestlers.  THQ's limited use of "warrior" in its generic sense is fair and was made in good faith.

**Issue No. 21:** Whether THQ's inclusion in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names from which players can select for the wrestlers they have created is protected by the First Amendment;

**Plaintiff Contends:**

UCI contends the First Amendment does not protect THQ from violating UCI's trademarks and trade dress or from actions that violate the Lanham Act.

**Defendant Contends:**

THQ contends that its inclusion in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names from which players can select for the wrestlers they have created is protected by the First Amendment. The WWE videogames are expressive works which are entitled to First Amendment protection.  THQ's use of the word "warrior" is relevant to the contents of the WWE games—it allows players to assign identifying attributes to any wrestler that they create,

1  namely the attributes of courage, fortitude, zeal, pugnacity, or experience in warfare.  Just

2  as the other generic terms are fitting to announce a fighter or wrestler, so too is the word

3  "warrior."   Further, the fact that THQ enables players to call their created wrestlers

4  "Warrior" or "The Warrior" does not explicitly mislead consumers as to the source or

5  content of THQ's games where "warrior" does not appear on any of THQ's game

6  packaging or in any of its advertisements.  Consumers see the word "warrior" after they

7  have purchased the game, if they see it at all, and then only in conjunction with fifty or so

8  other possible names.

9       **Issue No. 22:** Whether UCI was damaged by THQ's inclusion in SmackDown! vs.

10           Raw and WrestleMania 21 of "The Warrior" on a list of almost fifty possible

11           call names from which players can select for the wrestlers they have created;

12  **Plaintiff Contends:**

13       UCI contends that THQ violated UCI's registered mark and UCI must take steps to

14  protect its marks or is subject to losing them.

15  **Defendant Contends:**

16       THQ denies that it used UCI's registered mark and denies that UCI has suffered any

17  damages.

18       **Issue No. 23:** Whether THQ's use of "symbol 25" in *SmackDown! Here Comes the*

19           *Pain* is likely to confuse an appreciable number of reasonably prudent

20           consumers in the marketplace as to the source or sponsorship of the WWE

21           games;

22  **Plaintiff Contends:**

23       UCI contends that THQ's symbol 25 is so confusingly similar to UCI's logo that it

24  is likely to cause confusion in the market place.

25  **Defendant Contends:**

26       THQ contends that its use of "symbol 25" is unlikely to confuse an appreciable

27  number of reasonably prudent consumers in the marketplace as to the source or

28  sponsorship of the WWE games.  THQ did not use symbol 25 to advertise or market the

WWE games.  Instead, symbol 25 is included in the Create-a-Wrestler feature as one of 150 or more generic symbols from which players can choose to customize and decorate the wrestlers they create.  The overall impression created by symbol 25 is not similar to the overall impression created by UCI's alleged trademark the Design.  UCI has failed to adduce any admissible evidence that THQ's use of symbol 25 is likely to confuse an appreciable number of reasonably prudent consumers about the source or sponsorship of the WWE games.

**Issue No. 24:** Whether THQ's use of "symbol number 25" in *SmackDown! Here Comes the Pain* is protected by the First Amendment;

**Plaintiff Contends:**

UCI contends the First Amendment does not protect THQ from violating UCI's trademarks and trade dress or from actions that violate the Lanham Act.

**Defendant Contends:**

THQ contends that its use of "symbol 25 is protected by the First Amendment.  The WWE games are expressive works which are entitled to First Amendment protection. Players can use symbol 25 to decorate and customize the wrestlers they create using the Create-a-Wrestler feature.  Further, the fact that THQ enables players to use symbol 25 does not mislead consumers as to the source or content of THQ's games where symbol 25 does not appear on any of THQ's game packaging or in any of its advertisements. Consumers see symbol 25 only after they have purchased the game, if they see it at all, and then only in conjunction with 150 or more other possible symbols.

**Issue No. 25:** Whether UCI was damaged by THQ's use of "symbol number 25" in *SmackDown! Here Comes the Pain*;

**Plaintiff Contends:**

UCI contends that it is damaged when its logo has been misappropriated.

**Defendant Contends:**

THQ denies that it used UCI's "logo" and denies that UCI has suffered any damages.

## G.   LIST OF WITNESSES.

1.   <u>Warrior (Plaintiff/fact and expert witness)</u>.   Warrior may be contacted through Maynard Cronin Erickson Curran & Sparks, PLC, 3200 N. Central Avenue, Suite 1800; Phoenix, AZ 85012; 602-279-8500.   Warrior has knowledge concerning all statements in the Amended Complaint and is expected to testify about the allegations therein.   Warrior is the sole shareholder of UCI.  He will testify concerning his unsuccessful negotiations on behalf of UCI with THQ for a Non-Exclusive License Agreement; and his use of his marks.  He will testify about his negotiations with other entities concerning the licensing of the marks owned by UCI including JAAKS Pacific Inc. and Acclaim Entertainment, Inc.   He will testify about the contest and promotion that THQ ran in connection with his character being in its wrestling game.  Also, Warrior will testify about the damages that UCI has suffered based upon his opinion of what a proper licensing fee should be for the marks, trade dress and his character in a wrestling video game.   Warrior's opinion on damages is based upon his knowledge of licensing fees for the use of a wrestling character and his experience in negotiating licensing fees for the use of his character.  He will testify that in his opinion the use of his character by THQ is intentional infringement and that THQ is not an innocent user of the trademarks and character based upon THQ's earlier, unsuccessful request for permission to use "Warrior" and "Ultimate Warrior" marks, design logo, and movesets associated with the Warrior and Ultimate Warrior character.  Also, since the infringement is willful, Warrior will testify that in his opinion a damage award should be based upon an accounting of THQ's profits.  He will testify as to how and when he learned of the infringement that resulted in this filing of this lawsuit.  Warrior will be called at trial.

2. <u>Chris Byerly (Plaintiff/fact witness and expert witness)</u>.  Mr. Byerly may be contacted at 300 East Main street East Palestine, OH 44413 ; 330-429-6600 (cell).  Mr. Byerly will testify that he is familiar with Warrior's look as a character, which included not only his name, Ultimate Warrior and Warrior, but the look of his body and his costumes, including his Warrior design logo, which could be found in his trunk, knee pads or boots, and his distinctive face paint, and with his signature moves.  He has played the THQ wrestling video games and in some games sold by THQ, all of the Warrior's components were available, in some, only portions were available. He will testify and show to the Court how he was able to create Warrior and his signature moves including ring entrance in eight THQ games, which include: (1) Play Station 2: "SmackDown vs. Raw 2006;" (2) "SmackDown vs. Raw;" (3) "SmackDown! Here Comes the Pain;" and on Game Cube: (4) "Day of Reckoning;" (5) "Wrestlemania XIX;" on PSP: (6) "SmackDown vs. Raw 2006;" and on Xbox: (7) "WWF Raw;" and (8) "WWF Raw 2;" and that in (9) "SmackDown! Here Comes the Pain," the character can be announced as Warrior.  Mr. Byerly will be called at trial.

3. <u>Chris Page (Plaintiff/fact witness)</u>.  Mr. Page can be contacted at Chrispaulpage@blueyonder.co.uk).  Mr. Page has knowledge concerning websites, video games infringing on UCI's trademarks and copyrights.  It is likely that Mr. Page may be called at trial.

4. <u>Daniel Siegel (Plaintiff/fact witness)</u>.  Vice-President - New Business Development & Legal Counsel CMG Worldwide, Inc.  Mr. Siegel can be contacted at CMG Worldwide, 8560 Sunset Boulevard, 10th Floor Penthouse West Hollywood, CA 90069; 310-651-2000, 317-570-5500/fax.  Mr. Siegel has knowledge as to the value of the Ultimate Warrior.  Mr. Siegel worked with Warrior in his negotiations with THQ.  He may testify as to the

1      unsuccessful negotiations and correspondence between the parties regarding

2      same.  He may be called at trial.

3      5.    Cory Ledesma (Defendant/Fact Witness).  Mr. Ledesma may be contacted

4            through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los

5            Angeles, California 90067.   Mr. Ledesma will testify concerning the

6            development of THQ's wrestling-related video games and the features of

7            THQ's wrestling-related video games, including the feature (and the

8            programming and generic tools to implement this feature) that allows a game

9            user to create virtually any character in game play that the user chooses.  Mr.

10           Ledesma may be called at trial.

11     6.    Nick Wlodyka (Defendant/Fact Witness).  Mr. Wlodyka may be contacted

12           through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los

13           Angeles, California 90067.   Mr. Wlodyka will testify concerning the

14           development of THQ's wrestling-related video games and the features of

15           THQ's wrestling-related video games, including the feature (and the

16           programming and generic tools to implement this feature) that allows a game

17           user to create virtually any character in game play that the user chooses.  Mr.

18           Wlodyka may be called at trial.

19     7.    Kathy Vrabeck (Defendant/Expert Witness).  Ms. Vrabeck may be contacted

20           through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los

21           Angeles, California 90067.   Ms. Vrabeck has been engaged by THQ to

22           provide an expert opinion regarding the marketing, licensing, and game

23           content of THQ's WWE wrestling videogame franchise.   THQ has

24           previously disclosed Ms. Vrabeck's written report.  Ms. Vrabeck may be

25           called at trial.

26     8.    Brad Carraway (Defendant/Expert and Fact Witness).  Mr. Carraway may be

27           contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900,

28           Los Angeles, California 90067.  If Plaintiff offers evidence of THQ's sales

1  or profits before trial or at trial, Mr. Carraway will testify about THQ's costs

2  and expenses that must be deducted from THQ's revenues.  Mr. Carraway

3  will also testify about what factors drive THQ's profits on its WWE

4  wrestling videogame franchise.   THQ has previously disclosed Mr.

5  Carraway's written report.  Mr. Carraway may be called at trial.

6    9.   <u>Tracy Muniz Williams (Defendant/Fact Witness)</u>. Ms. Williams may be

7  contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900,

8  Los Angeles, California 90067.   Ms. Williams will testify concerning

9  worldwide marketing, advertising and promotional activities for the

10  wrestling-related video games that THQ releases pursuant to its license with

11  World Wrestling Entertainment, Inc. or WWE (the "WWE games").   Ms.

12  Muniz Williams may be called at trial.

13    **H.    LIST OF EXHIBITS.**

14    1.    The following exhibits are admissible in evidence and may be marked

15  in evidence by the Clerk:

16    a.    Plaintiffs Exhibits:

17  1. Trademark/Service Mark Registrations

18    a.  Registration No. 1,625,919 - Ultimate Warrior (UCI 000001)

19    b.  Registration No. 1,708,155 - Warrior (UCI 000002)

20    c.  Registration No. 1,818,813 - Ultimate Warrior (UCI 000003)

21    d.  Registration No. 1,838,771 - Ultimate Warrior (UCI 000004)

22    e.  Registration No. 2,299,387 - Warrior (UCI 000005)

23    f.  Registration No. 2,345,959 - Logo (UCI 000006)

24    g.  Registration No. 2,348,985 - Generation Warrior (UCI 000007)

25  2. Assignment of Trademarks/Service Marks (UCI 000230-240).

26  3. Draft THQ Inc. Non-Exclusive License Agreement dated 5/6/03 (UCI 000216-218).

27  4. Draft THQ Inc. Non-Exclusive License Agreement dated 7/21/03 (unsigned) (UCI

28  000008-11).

5. Draft THQ Inc. Non-Exclusive License Agreement dated 8/8/03 (unsigned) (UCI 000012-15).

6. Summary Sheet Product Overview and Features of Day of Reckoning 2 (THQ 000001).

7. Product Overview and Features of Day of Reckoning 2 (THQ 000003).

8. Product Overview and Features of Day of Reckoning 2 (THQ 000034).

9. Letter re press conference 04/01 in LA prior to WrestleMania 21 announcing Day of Reckoning 2 for Game Cube (THQ 000002).

10. Agreement between Acclaim Entertainment and UCI dated August 15, 2003 (UCI 000291-299).

11. News Releases from http://phx.corporate-ir.net (THQ website) (UCI 000027-57).

12. THQ video games (1) Play Station 2: "SmackDown vs. Raw 2006;" (2) "SmackDown vs. Raw;" (3) "SmackDown! Here Comes the Pain;" and on Game Cube: (4) "Day of Reckoning;" (5) "Wrestlemania XIX;" on PSP: (6) "SmackDown vs. Raw 2006;" and on Xbox: (7) "WWF Raw;" and (8) "WWF Raw 2;" and that in (9) "SmackDown! Here Comes the Pain

      b.     Defendant's Exhibits:

1. Video game and exterior packaging of Survivor Series (THQ 000007);

2. Video game and exterior packaging of Wrestlemania XIX (THQ 000008);

3. Video game and exterior packaging of Crush Hour (Nintendo GameCube) (THQ 000009);

4. Video game and exterior packaging of Day of Reckoning (THQ 000010);

5. Video game and exterior packaging of Day of Reckoning 2 (THQ 000011);

6. Video game and exterior packaging of Smackdown: Here Comes the Pain (THQ 000012);

7. Video game and exterior packaging of Crush Hour (PlayStation 2) (THQ 000013);

8. Video game and exterior packaging of Smackdown vs. Raw (THQ 000014);

9. Video game and exterior packaging of Smackdown vs. Raw 2006 (PlayStation 2) (THQ 000015);

10. Video game and exterior packaging of Smackdown vs. Raw 2006 (PlayStation Portable) (THQ 000016);

11. Video game and exterior packaging of Raw (THQ 000017);

12. Video game and exterior packaging of Raw 2 (THQ 000018);

13. Video game and exterior packaging of Wrestlemania 21 (THQ 000019);

14. Report of Kathy Vrabeck.

15. 11/14/2005 THQ News Release, "THQ Wireless Enables World Wrestling Entertainment(R) Fans to Take It to the Mat With Two Mobile Games" (UCI 000053-000055, UCI 000050-000052);

16. 12/13/2005 THQ News Release, "World Wrestling Entertainment(R) Enters a New Ring With WWE(R) SmackDown(R) vs. Raw(R) 2006 for the PSP(TM) (PlayStation(R)Portable) System" (UCI 000056-000057);

17. 11/10/2005 THQ News Release, "World Wrestling Entertainment(R) Hits the Road With WWE(R) SmackDown(R) vs. Raw(R) 2006, Set to Debut on the PSP(TM) (PlayStation(R)Portable) System This December" (UCI 000048-000049);

18. 08/29/2005 THQ News Release, "The Wrestling Saga Continues With WWE(R) Day of Reckoning 2(TM) for the Nintendo GameCube(TM)" (UCI 000046-000047);

19. 08/25/2005 THQ News Release, "World Wrestling Entertainment(R) Games Win Two New Titles: 'Greatest Hits' and 'Player's Choice'" (UCI 000043-000045);

20. 07/06/2005 THQ News Release, "WWE SmackDown!(TM) Vs. Raw(R) 2006 Sets the Stage for the Fight of Your Life on PlayStation(R)2 Later This Year" (UCI 000041-000042);

21. 04/20/2005 THQ News Release, "WWE(R) WrestleMania(R) 21 Ships Exclusively for Xbox" (UCI 000038-000040);

22. 03/31/2005 THQ News Release, "Third Annual THQ Superstar Challenge Kicks Off WrestleMania(R) 21 Weekend" (UCI 000032-000034; UCI 000035-000037);

23. Undated letter from Kristina Kirk attaching "Day of Reckoning 2" one-sheet (THQ 000002);

24. "Day of Reckoning 2" summary sheet (THQ 000001);

25. "Day of Reckoning 2 one-sheet" (THQ 000034);

26. WWE Character Roster (THQ 000004-000006);

27. "Day of Reckoning" advertisement (THQ 000020);

28. "Day of Reckoning 2" advertisement (THQ 000021);

29. "SmackDown! Here Comes the Pain" advertisement (THQ 000022);

30. "SmackDown! Vs. Raw 2006" advertisement (THQ 000023);

31. SmackDown! Vs. Raw" advertisement (THQ 000024);

32. "WrestleMania 21" advertisement (THQ 000025);

33. "Day of Reckoning 2" roster (THQ 000028-000033);

34. "WrestleMania 21" commercial (THQ 000027);

35. "SmackDown! Vs. Raw" commercial (THQ 000027);

36. "SmackDown! Vs. Raw 2006" commercial (THQ 000027);

37. "Day of Reckoning" commercial      (THQ 000027);

38. "SmackDown! Here Comes the Pain" (THQ 000027);

39. "SmackDown! Just Bring It" commercial (Chris Jericho) (THQ 000026);

40. "SmackDown! 2) commercial (Chris Angle) (THQ 000026);

41. "SmackDown!" commercial (the Rock) (THQ 000026);

42. 08/05/03 agreement between Acclaim Entertainment, Inc. and Ultimate Creations Inc. (UCI 000291-000299);

43. Draft non-exclusive license agreement between Warrior and THQ, Inc. (May 6, 2003) (UCI 000216-000218);

44. Draft non-exclusive license agreement between Warrior and THQ, Inc. (July 21, 2003) ( UCI 000008-000011);

45. Draft non-exclusive license agreement between Warrior and THQ, Inc. (August 8, 2003).  (UCI 000012-15).

   2.     As to the following exhibits, the parties have reached the following stipulations:

   a.     Plaintiffs Exhibits:

   b.     Defendant's Exhibits:

   3.     As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

   a.     Plaintiffs Exhibits:

1. Copyright Records (UCI 000241-248).   ***THQ objects.   This document is not relevant.   It does not make any fact of consequence more or less probable, as there is no copyright infringement claim in this case.***

2. "Smackdown! Here Comes the Pain" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.  ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  Based on its current understanding of the nature of this exhibit, THQ objects that the exhibit is both irrelevant and unduly prejudicial.  THQ understands this exhibit to be a memory card or similar media storage device containing a player-created character created using the "Create-a-Wrestler" feature in the WWE game "Smackdown! Here Comes the Pain" or video footage generated outside of court of such a character.  UCI's essential***

1    *claim is that the fact that players of the WWE games can create a character that*

2    *they believe resembles the "Ultimate Warrior" character causes confusion as to*

3    *the source or sponsorship  of the WWE games.  Any fair adjudication of UCI's*

4    *claim requires that the jury consider the WWE games as those games are*

5    *experienced by consumers, including the entire process by which player-created*

6    *characters are made.  UCI has indicated that it wants to introduce characters*

7    *created outside of the courtroom because creating the characters in real-time*

8    *would "take too long."  That is precisely the point. THQ contends that given the*

9    *amount of time and effort it takes to create a character that may resemble the*

10   *"Ultimate Warrior" character, no reasonable consumer could be confused as to*

11   *whether the "Ultimate Warrior" is in the game.   UCI should not be permitted to*

12   *mislead the jury about the very process it identifies as the source of the alleged*

13   *confusion. Instead, UCI should have to show the jury in real time, in court, the*

14   *entirety of the process it takes to create a wrestler that looks like the "Ultimate*

15   *Warrior" character—from the time game is booted up through the end of the*

16   *process, without any time compression.   Any alternative would be unduly*

17   *prejudicial because it would leave the jury with an unrealistic sense of just how*

18   *long it takes to make a character using the "Create-a-Wrestler" feature.*

19   3.   "PS2 Smackdown vs. RAW" video.  This uses the game and UCI has unlocked it to

20        create the Warrior character and moves. ***THQ objects.  UCI has not shown this***

21        ***exhibit to THQ and first disclosed the nature of this exhibit only two days before***

22        ***the extended deadline for the filing of pretrial materials.  THQ reserves the right***

23        ***to assert additional objections to this exhibit after THQ has had an opportunity to***

24        ***review it.  THQ understands this exhibit to be similar to the exhibit identified***

25        ***above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if***

26        ***fully stated herein.***

27   4.   "PS2 Smackdown Just Bring It" video.  This uses the game and UCI has unlocked it

28        to create the Warrior character and moves. ***THQ objects.  UCI has not shown this***

*exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.*

5. "PS2 Smackdown Shut Your Mouth" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves. ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.***

6. "WWE Day of Reckoning" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves. ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.***

7. "Smackdown vs. RAW 2006" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.  ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified***

*above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.*

8. Wrestlemania XIX video.  This uses the game and UCI has unlocked it to create the Warrior character and moves. ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections after to this exhibit after THQ had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.***

9. WWF Raw video.  This uses the game and UCI has unlocked it to create the Warrior character and moves. ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections after to this exhibit after THQ had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.***

10. WWF Raw2 video.  This uses the game and UCI has unlocked it to create the Warrior character and moves. ***THQ objects.  UCI has not shown this exhibit to THQ and first disclosed the nature of this exhibit only two days before the extended deadline for the filing of pretrial materials.  THQ reserves the right to assert additional objections to this exhibit after THQ has had an opportunity to review it.  THQ understands this exhibit to be similar to the exhibit identified above at (H)( 3(a)(2) and THQ incorporates by its objections to that exhibit as if fully stated herein.***

11. Printout from http://sports.ign.com dated April 1, 2005 "WWE Day of Reckoning 2" (UCI 000219-224).  ***THQ Objects.  The document has not been properly***

1  *authenticated.  The document appears to have been printed out from an Internet*
2  *website, and UCI has not established that the document is a true and correct copy*
3  *of the contents of the website.  UCI also has failed to establish that the declarant's*
4  *statements were based on personal knowledge.  Further, the document consists*
5  *entirely of hearsay, including the declarant's out-of-court statement that THQ*
6  *planned to include the "Ultimate Warrior" character in an as yet unreleased*
7  *videogame, which is presumably offered to prove that THQ planned to include the*
8  *"Ultimate Warrior" character in an as yet unreleased videogame.*

9  12. Printout from http://ps2.ign.com dated August 19, 2003 "Warrior Out of
10  Smackdown" (UCI 000225-228).  *THQ Objects.  The document has not been*
11  *properly authenticated.  The document appears to have been printed out from an*
12  *Internet website, and UCI has not established that the document is a true and*
13  *correct copy of the contents of the website.  UCI also has failed to establish that*
14  *the declarant's statements were based on personal knowledge.  Further, the*
15  *document consists entirely of hearsay, including the declarant's out-of-court*
16  *statement that THQ planned to include the "Ultimate Warrior" character  in an*
17  *as yet unreleased videogame, which is presumably offered to prove that THQ's*
18  *supposed plans to include the "Ultimate Warrior" character  in an as yet*
19  *unreleased videogame had been cancelled.*

20  13. Declaration of Warrior. *THQ objects to this declaration as hearsay since it is an*
21  *out-of-court statement offered to prove the truth of the matters asserted therein.*

22      a. Autographed photo of Warrior (UCI 000334)
23      b. The JAKKS Action Figure (UCI 000335). *THQ objects. The item is*
24  *irrelevant to the issues in this case.  The item is also unfairly prejudicial,*
25  *confusing, and misleading under Fed. R. Evid. 403 because of the danger*
26  *that jurors will conflate THQ with JAKKS Pacific, Inc. and presume that*
27  *THQ is, or ought to be, subject to licensing agreements between UCI and*
28  *JAKKS.*

14. Declaration of Chris Byerly. ***THQ objects to this declaration as hearsay since it is an out-of-court statement offered to prove the truth of the matters asserted therein. THQ's objections to the particular documents attached to Mr. Byerly's declaration are listed below.***

    a. Smackdown Here Comes the Pain Preset Movesets: OUW = Ultimate Warrior (UCI 000308-309). ***THQ objects. The document appears to contain material obtained from the internet. The document has not been properly authenticated and lacks foundation. UCI has failed to establish that the declarant's statements were based on personal knowledge or that the "Preset Movesets" identified exist in any WWE game. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement that the identified "Preset Movesets" exist in a WWE game and that the movesets can be associated with particular wrestling characters. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide explain how or where the movesets appear in a WWE game.***

    b. Smackdown Here Comes the Pain Ultimate Warrior CAW (UCI 000310-312). ***THQ objects. The document appears to contain material obtained from the Internet. The document has not been properly authenticated and lacks foundation. UCI has failed to establish that the declarant's statements were based on personal knowledge, that a character similar to the "Ultimate Warrior" character can be created by performing the listed, or that the image were created using a WWE game. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create a character similar to the "Ultimate Warrior" character, which is presumably offered to prove that a character similar to the "Ultimate Warrior" character can be created in a WWE game by following these steps. The document also should be excluded as***

1   *unfairly prejudicial under Fed. R. Evid. 403 because the document does*

2   *not provide context for how the images were created.*

3   c.   Smackdown Here Comes the Pain Ultimate Warrior CAW #2 (UCI 000313-

4   315).   *THQ objects.   The document appears to contain material obtained*

5   *from the Internet.   The document has not been properly authenticated and*

6   *lacks foundation.   UCI has failed to establish that the declarant's*

7   *statements were based on personal knowledge, that a character similar to*

8   *the "Ultimate Warrior" character can be created by performing the steps*

9   *listed, or that the images were created using a WWE game.   Further, the*

10  *document consists entirely of hearsay, including the declarant's out-of-*

11  *court statement about how to create a character similar to the "Ultimate*

12  *Warrior" character, which is presumably offered to prove that a character*

13  *similar to the "Ultimate Warrior" character can be created in a WWE*

14  *game by following these steps.   The document also should be excluded as*

15  *unfairly prejudicial under Fed. R. Evid. 403 because the document does*

16  *not provide context for how the images were created.*

17  d.   Smackdown vs. RAW Ultimate Warrior Created Moveset (UCI 000316-

18  317).   *THQ objects.   The document appears to contain material obtained*

19  *from the Internet.   The document has not been properly authenticated and*

20  *lacks foundation.   UCI has failed to establish that the declarant's*

21  *statements were based on personal knowledge or that movesets similar to*

22  *movesets allegedly performed by the "Ultimate Warrior" character can be*

23  *created by performing the steps listed.   Further, the document consists*

24  *entirely of hearsay, including the declarant's out-of-court statement about*

25  *how to create movesets similar to movesets allegedly performed by the*

26  *"Ultimate Warrior's" character, which is presumably offered to prove that*

27  *movesets similar to movesets allegedly performed by the "Ultimate*

28  *Warrior" character can be created in a WWE game.   The document also*

1  *should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because*

2  *the document does not provide context for how the identified movesets are*

3  *created.*

4  e.  Smackdown vs. RAW Ultimate Warrior CAW 1 (UCI 000318-323).  ***THQ***

5  ***objects   The document appears to contain material obtained from the***

6  ***Internet.   The document has not been properly authenticated and lacks***

7  ***foundation.   UCI has failed to establish that the declarant's statements***

8  ***were based on personal knowledge that a character similar to the***

9  ***"Ultimate Warrior" character can be created by performing the steps***

10  ***listed, or that the images were created using a WWE game.   Further, the***

11  ***document consists entirely of hearsay, including the declarant's out-of-***

12  ***court statement about how to create a character similar to the "Ultimate***

13  ***Warrior" character, which is presumably offered to prove that a character***

14  ***similar to the "Ultimate Warrior" character can be created  in a WWE***

15  ***game by following these steps.   The document also should be excluded as***

16  ***unfairly prejudicial under Fed. R. Evid. 403 because the document does***

17  ***not provide context for how the images were created.***

18  f.  Smackdown vs. RAW 2006 Preset Movesets & Entrances (Moveset 25

19  Ultimate Warrior) (UCI 000324-325). ***THQ objects.  The document appears***

20  ***to contain material obtained from the Internet.   The document has not***

21  ***been properly authenticated and lacks foundation.  UCI has failed to***

22  ***establish that the declarant's statements were based on personal knowledge***

23  ***or that movesets similar to movesets allegedly performed by the "Ultimate***

24  ***Warrior" character can be created by performing the steps listed.  Further,***

25  ***the document consists entirely of hearsay, including the declarant's out-of-***

26  ***court statement about how to create movesets similar to movesets allegedly***

27  ***performed by the "Ultimate Warrior" character,, which is presumably***

28  ***offered to prove that movesets similar to movesets allegedly performed by***

1    the "Ultimate Warrior" character can be created in a WWE game. The

2    document also should be excluded as unfairly prejudicial under Fed. R.

3    Evid. 403 because the document does not provide context for how the

4    identified movesets are created.

5    g. Smackdown vs. RAW 2006 Ultimate Warrior CAW 1 "Parts Unknown"

6    (UCI 000326-329). *THQ objects. The document appears to contain*

7    *material obtained from the Internet. The document has not been properly*

8    *authenticated and lacks foundation. UCI has failed to establish that the*

9    *declarant's statements were based on personal knowledge, that a character*

10    *similar to "Ultimate Warrior" character can be created by performing the*

11    *steps listed. Further, the document consists entirely of hearsay, including*

12    *the declarant's out-of-court statements about how to create movesets*

13    *similar to movesets allegedly performed by the "Ultimate Warrior"*

14    *character, which is presumably offered to prove that movesets similar to*

15    *movesets allegedly performed by the "Ultimate Warrior" character can be*

16    *created in WWE game. The document also should be excluded as unfairly*

17    *prejudicial under Fed. R. Evid. 403 because the document does not provide*

18    *context for how the identified movesets are created.*

19    h. Smackdown vs. RAW 2006 Ultimate Warrior CAW 3 "Parts Unknown"

20    (UCI 000330-333). *THQ objects. The document appears to contain*

21    *material obtained from the Internet. The document has not been properly*

22    *authenticated and lacks foundation. UCI has failed to establish that the*

23    *declarant's statements were based on personal knowledge, that a character*

24    *similar to the "Ultimate Warrior" character can be created by performing*

25    *the steps listed, or that the images were created using a WWE game.*

26    *Further, the document consists entirely of hearsay, including the*

27    *declarant's out-of-court statement about how to create a character similar*

28    *to the "Ultimate Warrior" character, which is presumably offered to prove*

1      *that a character similar to the "Ultimate Warrior" character can be*
2      *created in a WWE game by following these steps.  The document also*
3      *should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because*
4      *the document does not provide context for how the images were created.*

5  15. Printout from http://sports.ign.com 10/26/05 - WWE Smackdown: Here Come the

6      CAWs (UCI 000016-24).  ***THQ objects.  The document has not been properly***

7      ***authenticated.  The document appears to have been printed out from an Internet***

8      ***website.  UCI has not established that the document is a true and correct copy of***

9      ***the contents of the website. UCI has failed to establish that the declarant's***

10     ***statements were based on personal knowledge that a character similar to the***

11     ***"Ultimate Warrior" character can be created by performing the steps listed, or***

12     ***that the images were created using a WWE game.  Further, the document consists***

13     ***entirely of hearsay, including the declarant's out-of-court statement about how to***

14     ***create a character similar to the "Ultimate Warrior" character, which is***

15     ***presumably offered to prove that a character similar to the "Ultimate Warrior"***

16     ***character can be created by following these steps in a WWE game.  The document***

17     ***also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because***

18     ***the document does not provide context for how the images were created.***

19 16. Printout from http://media.sports.ign.com - 10/26/05 - WWE Smackdown: Here

20     Come the CAWs (UCI 000025-26).  ***THQ objects.  The document has not been***

21     ***properly authenticated.  The document appears to have been printed out from an***

22     ***Internet website.  UCI has not established that the document is a true and correct***

23     ***copy of the contents of the website.  UCI has failed to establish that the***

24     ***declarant's statements were based on personal knowledge or that the images***

25     ***similar to the Ultimate Warrior were created using a WWE game.  Further, the***

26     ***document consists entirely of hearsay, including the declarant's out-of-court***

27     ***statement suggesting that a character similar to the "Ultimate Warrior" character***

28     ***can be created in a WWE game, which is presumably offered to prove that a***

*character similar to the "Ultimate Warrior" character can be created  in a WWE game.  The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image were created.*

17. Portions of THQ 2005 Annual Report (from THQ website) (UCI 000077-106). *THQ objects.   The document has not been properly authenticated and is incomplete.  The document appears to have been printed out from an Internet website.  UCI has not established that the document is a true and correct copy of the contents of the website.  Further, the document lacks relevance as it purports to show financial data for the entire company, which is not relevant to any issue in the litigation at hand.  Further,  any possible probative value (and there is none) is easily outweighed by the risk of potential confusion and waste of time that would arise by presenting the jury with an incomplete document replete with irrelevant information.*

18. Print-out from psx2codes.com website (WWE Smackdown vs. Raw PS2 Cheat Codes) (UCI 000133-136).  *THQ objects.  The document has not been properly authenticated.  The document appears to have been printed out from an Internet website.  UCI has not established that the document is a true and correct copy of the contents of the website. UCI has failed to establish that the declarant's statements were based on personal knowledge or that the game features identified exist in any WWE game.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statement that the identified game features exist in a WWE game, which is presumably offered to prove that the identified game feature exist in a WWE game.  The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because, even assuming that the identified game features exists in any WWE game, the document provides no context as to how the game features actually appear in the game.*

19. Printout from http://cheats.ign.com for WWE Smackdown! Here Comes the Pain (UCI 000155-165).  ***THQ objects.   The document has not been properly authenticated.  The document appears to be a compilation of materials that have been culled from various Internet websites.  UCI has not established that the document is a true and correct copy of the contents of any website.  UCI has failed to establish that the declarant's statements were based on personal knowledge of any of the identified websites, much less personal knowledge of the materials posted on those websites.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the contents of various WWE games—many of which report out-of-court statements made by others—which are presumably offered to prove the contents of the WWE games. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for any of the material, including the context for how the included images were created.***

20. Printout from Wrestling Games Zone dated March 16, 2006 (UCI 000249-253).  ***THQ objects.  The document has not been properly authenticated.  The document appears to have been printed out from an Internet website.  UCI has not established that the document is a true and correct copy of the contents of the website.  UCI has failed to establish that the declarant's statements were based on personal knowledge.   Further, the document consists entirely of hearsay, including the declarant's out-of-court statement that a character similar to the "Ultimate Warrior" character can be created in a WWE game, which is presumably offered to prove that a character similar to the "Ultimate Warrior" character can be created in a WWE game.  The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how a character similar to the "Ultimate Warrior" character can be created.***

21. Printout from IOW Discussion Forums dated March 16, 2006 (UCI 000256-258). ***THQ objects.  The document has not been properly authenticated.  The document appears to have been printed out from an Internet website.  UCI has not established that the document is a true and correct copy of the contents of the website.  UCI has failed to establish that the declarant's statements were based on personal knowledge.   Further, the document consists entirely of hearsay, including declarants' out of court statements about how to create a character similar to the "Ultimate Warrior" characters, which presumably is being offered to prove that a character similar to the "Ultimate Warrior" character can be created in a WWE game.   The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.***

22. E-mails from Chris Page:

    a. E-mail from Chris Page 2/26/05 (UCI 000130-132). ***THQ objects.  The document has not been properly authenticated and lacks foundation.  UCI has failed to establish that the declarant's statements were based on personal knowledge or that the images were created using any of WWE game. Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about Internet rumors about the contents of the WWE game and how the declarant allegedly manipulated the WWE games to create a character similar to the "Ultimate Warrior" character, which are presumably offered to prove that a character similar to the "Ultimate Warrior" character can be created in the WWE games. The document is unfairly prejudicial under the Fed. R. Evid. 403 for those same reasons.***

    b. E-mails from Chris Page re "SmackDown! vs. RAW" 5/1/05-5/6/05 (UCI 000137-142). ***THQ objects.   The document has not been properly authenticated, lacks foundation, and appears to be incomplete.  UCI has failed to establish that the declarant's statements were based on personal***

*knowledge.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the "Ultimate Warrior" character's alleged appearance in the WWE games, the content of the WWE games, and how the declarant allegedly manipulated the WWE games, which are presumably offered to prove the contents of the WWE games and that a character similar to the "Ultimate Warrior" character can be created in the WWE games.  The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

c. E-mail from Chris Page 5/6/05 re "SD! vs. RAW" (UCI 000143-144).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  UCI has failed to establish that the declarant's statements were based on personal knowledge.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements concerning how THQ created the WWE games, THQ's motivations, and the contents of the WWE games, which are presumably offered to prove how THQ created the WWE games, THQ's motivations, and the contents of the WWE games.  The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

d. E-mails from Chris Page re "SmackDown! Here Comes the Pain" dated 5/2/05 - 5/6/05 (UCI 000145-151).  *THQ objects.  The document has not been properly authenticated, lacks foundation, and appears to be incomplete. UCI has failed to establish that the declarant's statements were based on personal knowledge.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the alleged inclusion of the "Ultimate Warrior" character in a WWE game, the contents of the WWE game, and how the declarant allegedly manipulated the WWE game, which are presumably offered to prove the contents of the WWE games, including that a character similar to the "Ultimate Warrior"*

1    *character can be created in the WWE games. The document is unfairly*

2    *prejudicial under Fed. R. Evid. 403 for those same reasons.*

3    e.   E-mail from Chris Page 5/3/05 re: "SmackDown! Here Comes the Pain"

4         (UCI 000152-154).   **THQ objects.   The document has not been properly**

5         **authenticated and lacks foundation.  UCI has failed to establish that the**

6         **declarant's statements were based on personal knowledge or that the**

7         **movesets identified actually exist in any WWE game.   Further, the**

8         **document consists entirely of hearsay, including the declarant's out-of-**

9         **court statements regarding the alleged inclusion of the "Ultimate Warrior"**

10        **character, and movesets or "logos" allegedly associated with that character**

11        **in the WWE games and how the declarant allegedly manipulated WWE**

12        **games, which are presumably offered to prove that a character similar to**

13        **the "Ultimate Warrior" character is included in or can be created in the**

14        **WWE games.  The document is unfairly prejudicial under Fed. R. Evid.**

15        **403 for those same reasons.**

16    f.   E-mail from Chris Page dated 8/15/05 re WWE RAW 2 for X-box with

17        formula for creating characters (UW CAW RAW2 - RockDemon's UW caw)

18        (UCI 000167-172).   **THQ objects.   The document has not been properly**

19        **authenticated and lacks foundation.  UCI has failed to establish that the**

20        **declarant's statements were based on personal knowledge or that a**

21        **character similar to the "Ultimate Warrior" character can be created by**

22        **performing the steps listed.   Further, the document consists entirely of**

23        **hearsay, including the declarant's out-of-court statements regarding**

24        **rumors of the alleged inclusion of the "Ultimate Warrior" character in a**

25        **WWE game and alleged methods to manipulate the game, which are**

26        **presumably offered to prove that a character similar to the "Ultimate**

27        **Warrior" character is included in or can be created in the WWE games.**

28

1          *The document is unfairly prejudicial under Fed. R. Evid. 403 for those*

2          *same reasons.*

3    g. E-mail from Chris Page dated 8/20/05 with photos on "SmackDown! Shut

4          Your Mouth" game (UCI 000173-177). ***THQ objects. The document has***

5          ***not been properly authenticated and lacks foundation. UCI has failed to***

6          ***establish that the declarant's statements were based on personal knowledge***

7          ***or that the images were created using any WWE game. Further, the***

8          ***document consists entirely of hearsay, including the declarant's out-of-***

9          ***court statements regarding the alleged inclusion of the "Ultimate Warrior"***

10         ***character in the WWE games, which are presumably offered to prove that***

11         ***a character similar to the "Ultimate Warrior" is included in the WWE***

12         ***games. The document is unfairly prejudicial under Fed. R. Evid. 403 for***

13         ***those same reasons.***

14    h. E-mail from Chris Page dated 8/22/05 with photos on "SmackDown!  Shut

15         Your Mouth" game (UCI 000178-182).  ***THQ objects.  The document has***

16         ***not been properly authenticated and lacks foundation.  UCI has failed to***

17         ***establish that the declarant's statements were based on personal knowledge***

18         ***or that the images were created using any WWE game. Further, the***

19         ***document consists entirely of hearsay, including the declarant's out-of-***

20         ***court statements regarding the alleged inclusion of the "Ultimate Warrior"***

21         ***character or the character's "logo" in the WWE game and alleged***

22         ***methods to manipulate those games, which are presumably offered to***

23         ***prove that a character similar to the "Ultimate Warrior" character can be***

24         ***created in the WWE games and that the character's "logo" appears in the***

25         ***games. The document is unfairly prejudicial under Fed. R. Evid. 403 for***

26         ***those same reasons.***

27    i. E-mail from Chris Page dated 8/22/05 with "SmackDown! Shut Your

28         Mouth" video footage (UCI 000183). ***THQ objects.  The document has not***

1    *been properly authenticated and lacks foundation.  The document appears*
2    *to be incomplete and UCI has failed to establish that the declarant's*
3    *statements were based on personal knowledge or that the video footage*
4    *was created using any of THQ's videogames.   Further, the document*
5    *consists entirely of hearsay, including the declarant's out-of-court*
6    *statements regarding the contents of the WWE games, which are*
7    *presumably offered to prove that those contents. The document is unfairly*
8    *prejudicial under Fed. R. Evid. 403 for those same reasons.*

9      j.   E-mail from Chris Page dated 8/17/05 on RAW 2 information (UCI 000184).
10           *THQ objects.   The document has not been properly authenticated and*
11           *lacks foundation.  UCI has failed to establish that the declarant's*
12           *statements were based on personal knowledge.   Further, the document*
13           *consists entirely of hearsay, including the declarant's out-of-court*
14           *statements regarding Internet rumors about the contents a WWE game, the*
15           *alleged presence of the "Ultimate Warrior" character in the game, THQ's*
16           *state of mind when designing the game, and how the declarant allegedly*
17           *manipulated the game, which are presumably offered to prove the truth of*
18           *the matters stated.   The document is unfairly prejudicial under Fed. R.*
19           *Evid. 403 for those same reasons.*

20     k.   E-mail from Chris Page dated 9/4/05 with photos from "WWE Day of
21           Reckoning 2" (UCI 000186-190).   *THQ objects.   The document has not*
22           *been properly authenticated and lacks foundation.  UCI has failed to*
23           *establish that the declarant's statements were based on personal knowledge*
24           *or that the images were created using any of WWE game.  Further, the*
25           *document consists entirely of hearsay, including the declarant's out-of-*
26           *court statements about the alleged presence of the "Ultimate Warrior"*
27           *character in a WWE game and how acquaintances of the declarant*
28           *allegedly told the declarant that they had manipulated the game, , which*

1   *are presumably offered to prove that a character similar to the "Ultimate*
2   *Warrior" character can be created in the WWE game. The document is*
3   *unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

4   l.   E-mail from Chris Page dated 9/8/05 with photos and text document with
5        formula to create UW in "WWE Day of Reckoning 2" video (UCI 000191-
6        202).   ***THQ objects.   The document has not been properly authenticated***
7        ***and lacks foundation.   UCI has failed to establish that the declarant's***
8        ***statements were based on personal knowledge, that the images were***
9        ***created using any WWE game, or that the character depicted can be***
10       ***created using the steps listed.   Plaintiff does not state where he found the***
11       ***images, merely that they were created by someone.   Further, the document***
12       ***consists entirely of hearsay, including the declarant's out-of-court***
13       ***statements about the alleged presence of the "Ultimate Warrior" character***
14       ***in a WWE game and alleged methods to manipulate the game, which are***
15       ***presumably offered to prove that a character similar to the "Ultimate***
16       ***Warrior" character can be created in the WWE games. The document is***
17       ***unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.***

18   m.   E-mail from Chris Page dated 9/8/05 with additional photos and formulas for
19        "WWE Day of Reckoning 1" video (UCI 000203-206)   ***THQ objects.   The***
20        ***document has not been properly authenticated and lacks foundation.   UCI***
21        ***has failed to establish that the declarant's statements were based on***
22        ***personal knowledge, that the images were created using any WWE game,***
23        ***or that the character depicted can be created using the steps listed.***
24        ***Plaintiff does not state  where he found the images, merely that they were***
25        ***created by someone.   Further, the document consists entirely of hearsay,***
26        ***including the declarant's out-of-court statements about the alleged***
27        ***presence of the "Ultimate Warrior" character in the game and alleged***
28        ***methods to manipulate the WWE game, which are  presumably offered to***

1    *prove that a character similar to the Ultimate Warrior can be created in the*

2    *WWE games.  The document is unfairly prejudicial under Fed. R. Evid.*

3    *403 for those same reasons.*

4    n.   E-mail from Chris Page dated 11/29/05 with photos and video from

5         "SmackDown! vs. RAW 2006" game (UCI 000207-213).  *THQ objects.*

6         *The document has not been properly authenticated and lacks foundation.*

7         *UCI has failed to establish that the declarant's statements were based on*

8         *personal knowledge or that the images were created using any WWE game.*

9         *Further, the document consists entirely of hearsay, including the*

10        *declarant's out-of-court statements about the alleged presence of the*

11        *"Ultimate Warrior character" in a WWE game, which are  presumably*

12        *offered to prove that a character similar to the "Ultimate Warrior"*

13        *character can be created in a WWE game.  The document is unfairly*

14        *prejudicial under Fed. R. Evid. 403 for those same reasons.*

15   o.   E-mail from Chris Page dated 11/29/05 re new SmackDown! vs. RAW game

16        (UCI 000214).  *THQ objects.  The document has not been properly*

17        *authenticated and lacks foundation.  UCI has failed to establish that the*

18        *declarant's statements were based on personal knowledge.  Further, the*

19        *document consists entirely of hearsay, including the declarant's out-of-*

20        *court statements reporting rumors about the alleged presence of the*

21        *"Ultimate Warrior" character's "logos" in a WWE game, which are*

22        *presumably offered to prove that such logos are in the game.  The*

23        *document is unfairly prejudicial under Fed. R. Evid. 403 for those same*

24        *reasons.*

25   p.   E-mail from Chris Page dated 12/5/05 with video from "SmackDown! vs.

26        RAW 2006" game (UCI 000215).  *THQ objects.  The document has not*

27        *been properly authenticated and lacks foundation.  The document appears*

28        *to be incomplete and the plaintiff has failed to establish that the*

1   *declarant's statements were based on personal knowledge or that the video*

2   *footage   was created using any of THQ's videogames.   Further, the*

3   *document consists entirely of hearsay, including the declarant's out-of-*

4   *court statements about the alleged presence of moves associated with the*

5   *"Ultimate Warrior character" exist in a WWE game, which are*

6   *presumably offered to prove moves associated with the "Ultimate Warrior*

7   *character" exist in a WWE game.   The document is unfairly prejudicial*

8   *under Fed. R. Evid. 403 for those same reasons.*

9   23. E-mail from Jerry Chandler II dated October 16, 2005 with attached article on Dave

10   Batista interview (UCI 000259-267).   ***THQ objects.   The document has not been***

11   ***properly authenticated and lacks foundation.   UCI has failed to establish that the***

12   ***declarant's statements were based on personal knowledge.   Further, the***

13   ***document consists of hearsay, including statements by the declarant and others***

14   ***regarding a move associated with the "Ultimate Warrior character."   These out-***

15   ***of-court statements about the move allegedly associated with the "Ultimate***

16   ***Warrior" character are presumably being offered to prove that the move is***

17   ***associated with that character.   The document is unfairly prejudicial under Fed.***

18   ***R. Evid. 403 for those same reasons.***

19   24. License Agreement between UCI and JAKKS Pacific, Inc. dated February 1, 2006

20   (UCI 000300-307). ***THQ objects.   The document is irrelevant because there is no***

21   ***rational connection between a license to make an action figure of a particular***

22   ***wrestler and video games which feature assembles of popular wrestlers.   The***

23   ***document is unfairly prejudicial, confusing, and misleading under Fed. R. Evid.***

24   ***403 because of the danger that jurors will conflate THQ with JAKKS Pacific, Inc.***

25   ***and presume that THQ is or ought to be subject to licensing agreements with UCI***

26   ***entered into by JAKKS.***

27   25. Report of Brad Carraway.   UCI objects on grounds of lack of foundation, hearsay,

28   and relevancy.

26. Prosecution History for Registration No. 1, 625,919 – Ultimate Warrior; Objection: Foundation, relevancy, and failure to disclose.

27. Prosecution History for Registration No. 1,708,155 – Warrior; Objection: Foundation, relevancy, and failure to disclose.

28. Prosecution History for Registration No. 1,818,813 – Ultimate Warrior; Objection: Foundation, relevancy, and failure to disclose

29. Prosecution History for Registration No. 1,838,771 – Ultimate Warrior; Objection: Foundation, relevancy, and failure to disclose

30. Prosecution History for Registration No. 2,299,387 – Warrior; Objection: Foundation, relevancy, and failure to disclose

31. Prosecution History for Registration No. 2,345,959 – Logo; Objection:  Foundation, relevancy, and failure to disclose

32. Prosecution History for Registration No. 2,348,985 – Generation Warrior; Objection:  Foundation, relevancy, and failure to disclose

      b.    Defendant's Exhibits:

**I.     DEPOSITIONS TO BE OFFERED.**

    1.  Deposition of Warrior, conducted on February 13, 2007.

      a.  THQ designates the following testimony:

        i.  9:9-10:14

        ii.  10:17

        iii.  10:20-11:16

        iv.  11:15-12:1

        v.  26:22-27:11

        vi.  98:2-103:18

**J.     MOTIONS IN LIMINE.**

Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**K.** **LIST OF ANY PENDING MOTIONS.**

None

**L.** **PROBABLE LENGTH OF TRIAL.**

A jury trial is estimated to last four to five days.

**M.** **JURY DEMAND.**

A jury trial has been requested.  The parties stipulate the request was timely and properly made.

**N.** **STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**O.** **CERTIFICATIONS.**  The undersigned counsel in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.  (Certain exhibits have not been disclosed.)[1]

4. THQ has complied in all respects with the mandates of the Court's Rule 16 Order and Order Setting Final Pretrial Conference.

---

[1] On March 20, 2008, THQ disclosed to UCI THQ's intent to use the prosecution histories for UCI's registered trademarks as exhibits at trial.  THQ identified these documents as exhibits in the materials it transmitted to UCI on April 11, 2008.  THQ considers these documents to be part of the complete record which culminated in the issuance of the certificates of registration identified by UCI as UCI Exhibits 1(a)-1(g).  THQ understood that UCI had the prosecution documents for its trademarks in its possession and the documents are in the public domain.  Nonetheless, THQ's counsel sent copies of the documents to UCI's counsel by overnight mail on April 22, 2008.

UCI first disclosed the nature of the items it identified at H(3)(a)(2)-(10) on April 23, 2008.  UCI has not provided copies of these exhibits to THQ.

5. THQ has made all of the disclosures required by the Federal Rules of Civil Procedure.

APPROVED AS TO FORM AND CONTENT:


/s/ Kara D. McDonald
/s/ Andrew F. Halaby
Attorneys for Defendant

Based on the foregoing,

**IT IS ORDERED** that this Proposed Pretrial Order submitted by defendant THQ Inc. is hereby APPROVED and is thereby ADOPTED as the official Pretrial Order of this Court.

DATED this _____ day of _____, 2008.



_____
**Stephen M. McNamee**
**United States District Judge**