**EXHIBIT C**

1  Daniel D. Maynard, No. 009211
   Jennifer A. Sparks. No. 017502
2  **MAYNARD CRONIN ERICKSON**
   **CURRAN & SPARKS, P.L.C.**
3  3200 N. Central Avenue, Suite 1800
   Phoenix, AZ  85012-2502
4  Telephone: (602) 279-8500

5  Attorneys for Plaintiff Ultimate Creations, Inc.

6  Steven A. Marenberg (Pro Hac Vice)
   Kara D. McDonald (Pro Hac Vice)
7  **IRELL & MANELLA LLP**
   1800 Avenue of the Stars, Suite 900
8  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
9  Facsimile: (310) 203-7199

10 Patricia Lee Refo (Arizona Bar No. 017032)
   Andrew F. Halaby (Arizona Bar No. 017251)
11 **SNELL & WILMER LLP**
   One Arizona Center
12 Phoenix, Arizona 85004-2202
   Telephone: (602) 382-6000
13 Facsimile: (602) 382-6070

14 Attorneys for Defendant THQ Inc.

15                 IN THE UNITED STATES DISTRICT COURT

16                    FOR THE DISTRICT OF ARIZONA

17
   Ultimate Creations, Inc., an Arizona      )   Case No. CV 2005-1134-PHX-SMM
18 corporation,                              )
                                             )   **JOINT PROPOSED CASE**
19                      Plaintiff,           )   **MANAGEMENT PLAN**
        v.                                   )
20                                           )
   THQ Inc., a corporation,                  )
21                                           )
                       Defendant.            )
22 _____

23      **A.    COUNSEL FOR THE PARTIES**

24      Plaintiff(s):  Daniel D. Maynard, Jennifer A. Sparks, MAYNARD CRONIN ERICKSON

25 CURRAN & SPARKS, P.L.C., 3200 N. Central Avenue, Suite 1800, Phoenix, AZ  85012-2502,

26 Telephone: (602) 279-8500

27

28

1    Defendant(s):  Steven A. Marenberg, Kara D. McDonald, IRELL & MANELLA LLP,

2    1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276, Telephone: (310) 277-

3    1010, Facsimile: (310) 203-7199; Patricia Lee Refo, Andrew F. Halaby, SNELL & WILMER

4    LLP, One Arizona Center, Phoenix, Arizona 85004-2202, Telephone: (602) 382-6000, Facsimile:

5    (602) 382-6070.

6    **B.    STATEMENT OF JURISDICTION.**

7    Jurisdiction in this case is based on Title 28 U.S.C. §§1331, 1338(a) and (b), 1367 and

8    1391.

9    Jurisdiction is not disputed.

10    **C.    NATURE OF ACTION.**

11    This is an action involving three counts: (1) Infringement of a Federally Registered

12    Trademark; (2) False Designation of Origin Under Section 43(A) of the Lanham Act; and (3)

13    Infringement of Common Law Trademark.  Plaintiff is seeking monetary damages.

14    **D.    CONTENTIONS OF THE PARTIES.**

15    **1.    Plaintiff's Contentions**

16    Count One - Infringement of a Federally Registered Trademark.

17    Plaintiff, UCI has federal registrations on the Warrior move and the Warrior logo.  UCI

18    contends that THQ is liable for infringement for using the name "Warrior" in its video games and

19    that an ordinary customer could find its federally registered design logo ("bat-like" symbol)

20    confusingly similar to the symbol available in THQ's video games.  The Lanham Act section 32,

21    15 U.S.C. § 1114, provides protection for infringement of a registered trademark where the marks

22    are so similar as to cause confusion or to cause mistake or to deceive.  *Surfvivor Media, Inc.*, 406

23    F.3d at 630 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111

24    (2004).  Descriptive marks include names or words that define a particular characteristic of the

25    product. *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).  Such marks receive

26    trademark protection only upon acquiring a secondary meaning.  *Id.*; *Surfvivor Media, Inc.*, 406

27    F.3d at 632.  Secondary meaning is the consumer's association of the mark with a particular

28    source or sponsor. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992).

1851570.

1  Secondary meaning is "acquired when in the minds of the public, the primary significance of a

2  product feature is to identify the source of the product rather than the product itself." *Qualitex Co.*

3  *v. Jacobson Products co., Inc.*, 514 U.S. 159, 163 (1995); *see also Quiksilver, Inc.*, 466 F.3d at

4  760. Whether a mark has acquired a secondary meaning is typically a question of fact for the jury.

5  *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 991 (9th Cir. 2006). However, there is a

6  conclusive presumption that a registered mark has acquired secondary meaning, which extends to

7  the most salient feature of the mark. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,

8  408 F.3d 596, 606 (9th Cir. 2005); *see Quiksilver, Inc.*, 466 F.3d at 755 ("Federal registration of a

9  trademark constitutes prima facie evidence of the validity of the registered mark and of the

10 registrant's exclusive right to use the mark in commerce." (internal quotations omitted)).

11 Infringement of a mark may occur even if the mark is only partially imitated. *KP Permanent*

12 *Make-Up, Inc.*, 408 F.3d at 606.

13      Once it has been determined that the mark is protectable, the Court will look at the core

14 element of trademark infringement, which is likelihood of confusion. *Abercrombie & Fitch Co. v.*

15 *Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). "Likelihood of confusion exists when

16 consumers viewing the mark would probably assume that the goods it represents are associated

17 with the source of different product identified by a similar mark." *KP Permanent Make-Up, Inc.*

18 *v. Lasting Impression I, Inc.*, 408 F.3d at 608. Determining whether there is a likelihood of

19 confusion involves a fact-intensive inquiry. *Id.* As a result, summary judgment is not proper

20 when a reasonable jury could conclude that there is a likelihood of confusion. *Id.*

21                    a.      **Use of Warrior Call Name**

22      Defendant argues that because the word "Warrior" is descriptive, the mark is not entitled to

23 protection when Defendant uses it in a non-trademark manner, such as using it in its ordinary,

24 descriptive sense. (Dkt. 56, p. 9-10). Additionally, Defendant claims that there is no likelihood of

25 confusion from its use. Although "Warrior" may be a descriptive term, the fact that it acquired

26 protection as a registered trademark or service mark creates the presumption that the word has

27 acquired as secondary meaning.

28

1851570.

1    Next, because Defendant uses the exact word as Plaintiff's registered mark, there is a

2    greater likelihood of confusion. *See KP Permanent Make-Up, Inc.*, 408 F.3d at 606. Defendant

3    also used the word *as a name* for a player's wrestling character, which is the same type of use for

4    which it is trademarked.

5          **b.**    **Use of Warrior-like Symbol**

6    The UCI logo is a registered design mark. Analyzing similarities in appearance between

7    symbols or logos in really "nothing more than a subjective eyeball test." McCarthy on

8    Trademarks § 23:25 (1973). "[M]arks must be considered in their entirety and as they appear in

9    the market-place." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).

10   Although the Warrior logo is not identical to Defendant's symbol, an ordinary consumer

11   could find its general appearance to be confusingly similar to the symbol available in Defendant's

12   video games. Actual players' have used Defendant's bat-like symbol in creating the "Warrior"

13   CAW, which illustrates its similarity to Warrior's registered logo. The fact that Defendant is

14   using the symbol in a market geared towards wrestling fans increases the likelihood of confusion

15   among consumers. *Official Airline Guides, Inc.*, at 1392. Thus, Defendant is liable for

16   infringement for using the bat-like symbol in its video games.

17   THQ's willful and deliberate violation of UCI marks and intellectual property is with

18   intent to trade upon the goodwill and reputation of Warrior and the Ultimate Warrior. Defendant

19   has the burden of demonstrating that "Warrior" and the design logo was used descriptively, not as

20   a mark, fairly and in good faith. Plaintiff contends that Defendant's use of the mark and the logo

21   was not in good faith, based on the prior unsuccessful negotiations between the parties, and that

22   Defendant intentionally by using a combination of the registered marks, the signature moves, and

23   the Warrior trade dress which includes face paint, the logo, match colored arm bands and

24   matching fringe on the Warrior boots and knee pads provided the tools for consumers to create a

25   wrestler in the likeness of Warrior without regard to his intellectual property rights in an improper

26   attempt to capitalize on the popularity of Warrior.

27   Count Two - False Designation of Origin under Section 43(A) of the Lanham Act.

28

1851570.

1    The Warrior character is distinctive and Plaintiff has registered trademarks and service

2 marks and common law marks in the ring entrance, which includes running into the ring, running

3 around the outside of the ring apron, standing in the ring corners and reaching to the sky with both

4 arms and vigorously shaking the ropes and in his signature ending move where the Warrior

5 character reaches to the sky with both arms, bounces off the ropes three times and then pressed the

6 opponent over his head before dropping him on the mat and pinning him.  Plaintiff has common

7 law marks in the Warrior characters trade dress that includes the character having the Warrior logo

8 painted on his face and arm bands with tassels in matching color and tassels from his boots in

9 matching color.  UCI has licensed intellectual property rights for the use of the Warrior character

10 for over eight years.  (Dkt. 77, p. 6).

11    Section 43(a) of the Lanham Act provides in pertinent part:

12        (a) Civil action

13            (1) Any person who, on or in connection with any
                goods or services, or any container for goods, uses in
14            commerce any word, term, name, symbol, or device,
                or any combination thereof, or any false designation
15            of origin, false or misleading description of fact, or
                false or misleading representation of fact, which –

16
17                (A) is likely to cause confusion, or to
                    cause mistake, or to deceive as to the
18                affiliation, connection, or association
                    of such person with another person, or
18                as to the origin, sponsorship, or
                    approval of his or her goods, services,
19                or commercial activities by another
                    person . . .

20
21            shall be liable in a civil action by any person who
                believes that he or she is or is likely to be damaged
22            by such act.

23    15 U.S.C. § 1125(a)(1).  The original of goods as used in the statute refers to "the producer

24 of the tangible product sold in the marketplace."  *Dastar Corp. v. Twentieth Century Fox Film*

25 *Corp.*, 539 U.S. 23, 31 (2003).  The scope of protection for unregistered marks under section 43 is

26 slightly broader than under section 32, 15 U.S.C. § 1114, for registered marks.  *Two Pesos, Inc. v.*

27 *Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  To succeed on a claim for infringement of an

28 unregistered mark, "the plaintiff must provide (1) that the mark is distinctive as to the source of

1851570.

1  the good, and (2) that there is a likelihood of confusion between its good and the defendant's."

2  *Yuman Design, Inc. v. PJA, Inc.*, 262 F.3d 101, 115 (2nd Cir. 2001)(citing *Wal-Mart, Inc. v.*

3  *Samara Bros.*, 529 U.S. 205, 210 (2000)).

4      The purpose of the section 43(a) is to protect persons against unfair competition through

5  misleading and deceptive uses of an unregistered trademark or trade dress. *Two Pesos, Inc.* 505

6  U.S. at 768, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). "[T]rade

7  dress involves the total image of a product and may include features such as size, shape, color,

8  color combinations, texture, or graphics." *Entrepreneur Media, Inc.*, 279 F.3d at 1144.

9  Costumers may be entitled to protection of they contain distinctive, nonfunctional elements. *See*

10 *In re Red Robin Enterprises, Inc.*, 222 U.S.P.Q. 911, 912-13 (TTAB 1984) (allowing registration

11 of a bird costume used for entertainment purposes as a service mark); *Dallas Cowboy*

12 *Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 201 U.S.P.Q. 740 S.D.N.Y. 1979), *aff'd* 604 F.2d

13 200 (2nd Cir. 1979) (finding that specific elements of the Dallas cheerleading outfit were

14 distinctive and arbitrary enough to make the uniform eligible to be a valid trademark and services

15 mark. In order to bring a claim for a trade dress or mark that is not sufficiently distinctive, the

16 plaintiff must show that it has acquired a secondary meaning. *Two Pesos, Inc.*, 505 U.S. at 7676

17 (citing the analysis in *Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th

18 Cir. 1981) with approval).

19      In the present case, Warrior's trade dress involves the costume, symbol, face paint, and

20 color combinations that make up the overall image of his wrestling character. Through the video

21 games, Defendant has made these elements available to its consumers. The websites where

22 players exchange information regarding how to create the Warrior wrestling character suggest that

23 Warrior has a distinctive trade dress, which supports a finding of secondary meaning in Warrior's

24 overall appearance, and denotes possible confusion as to whether the video games are affiliated

25 with Warrior himself. *See* Dkt. 74 ¶ 42. The elements of the trade dress also appear to be non-

26 functional, and the combination of the elements is sufficient to create a distinctive trade dress that

27 is capable of protection. *See Yurman Design, Inc.*, 262 F.3d at 118. Thus, taken as a whole, a

28 reasonable person could find that Defendant has committed a violation of Plaintiff's unregistered

1851570.

- 6 -

1  trademarks or trade dress under section 43(a) by confusing consumers as to Plaintiff's affiliation,
2  connection, or association with Defendant's games.

3           Count Three - Infringement of Common Law Trademark.

4           The general concern under the common law for unfair competition is the protection of
5  consumers from confusion as to the source of goods. *Bonito Boats, Inc. v. Thunder Craft Boats,*
6  *Inc.*, 489 U.S. 141, 157 (1989). Unfair competition is determined with reference to the character
7  and circumstances of the business. *INS v. Associated Press*, 249 U.S. 215, 236 (1918). However,
8  courts are given wide discretion in deciding whether the conduct is unfair due to the flexible
9  nature of the tort. *Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 591 (9th
10 Cir. 1987). Therefore, the tort of unfair competition may involve several equitable considerations.
11 For example, a defendant may not misappropriate something from the plaintiff the purpose of
12 using it for defendant's own profit and to the disadvantage of the plaintiff. *INS*, 248 U.S. 240.

13          Here, Plaintiff will demonstrate the existence of customer confusion as described in
14 Plaintiff's previous claims arising out of the Lanham Act. *See KP Permanent Make-Up, Inc.*, 408
15 at 608. Further, the evidence will demonstrate that Defendant acted in bad faith by attempting to
16 misappropriate Plaintiff's intellectual property, which includes the federally registered and
17 common law trademarks and service marks described in the preceding section and the Plaintiff's
18 trade dress that is previously disclosed, then equity concerns would also suggest that Plaintiff may
19 be entitled to relief under common law.

20          **2.    Defendant's Contentions:**

21          THQ contends that UCI has abandoned its alleged trademarks and alleged trade dress. In
22 order to prove that UCI abandoned a trademark or trade dress, THQ must prove that UCI (1)
23 discontinued its use in the ordinary course of trade, intending not to resume using it; (2) acted or
24 failed to act so that the trademark's or trade dress's primary significance to the prospective
25 purchasers has become the product or service itself and not the source of the product or service; or
26 (3) failed to exercise adequate quality control over the products or services sold under the
27 trademark or trade dress by a licensee. 15 U.S.C. § 1127; *Barcamerica Int'l USA Trust v. Tyfield*
28 *Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002).

1    THQ contends that UCI committed fraud on the United States Patent and Trademark

2  Office in obtaining or maintaining some of the plaintiff's certificates of registration and therefore

3  those registrations are invalid.  In order to prove that UCI committed fraud in the registration or

4  maintenance of its marks THQ must prove that: (1) UCI made a false statement in connection with

5  the application for or maintenance of a trademark registration; (2) the statement was material to

6  the application or the maintenance of the registration; and (3) UCI knew or should have known the

7  statement was false.  15 U.S.C. § 1064(c); *Treat, Inc. v. Dessert Beauty, Inc.*, No. 05-923, 2006

8  WL 282770 at *3, (D. Or. May 5, 2006); *Torres v. Contines Torresella S.c.l.*, 808 F.2d 46, 48

9  (Fed. Cir. 1986).

10    THQ contends that its use of the plaintiff's alleged trademarks and trade dress, if any, is

11  protected by the First Amendment to the United States Constitution.  In order to prove that its use

12  is protected by the First Amendment, THQ must prove that the use (1) bears some artistic

13  relevance to THQ's videogames; and (2) does not explicitly mislead consumers as to the source or

14  content of the videogames. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002);

15  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1048 (C.D. Cal. 2006).

16    THQ contends that, even assuming that UCI has a valid trademark in the term "Warrior,"

17  THQ's use of "Warrior" in is videogames constitutes classic fair use.  In order to prove that its use

18  of "Warrior" constitutes classic fair use, THQ must prove by clear and convincing evidence that

19  (1) THQ used the term in its primary, descriptive sense rather than to indicate the source of THQ's

20  goods and services; (2) THQ used the term fairly and in good faith; and (3) THQ used the term

21  only to describe its goods or services, or an element of those goods and services. 15 U.S.C. §

22  1115(b); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004);

23  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002).

24    **E.    STIPULATIONS AND UNCONTESTED FACTS**

25        (1)    The following facts are admitted by the parties and require no proof:

26            (a)    THQ is a leading worldwide developer and publisher of interactive

27                entertainment software ("video games").

28            (b)    THQ develops and publishes wrestling-related.

1851570.

- 8 -

(c)   The WWE games manufactured by THQ include:

    (i)    SmackDown vs. Raw for PlayStation 2

    (ii)    SmackDown vs. Raw 2006 for PlayStation 2 and PSP

    (iii)    SmackDown! Here Comes the Pain for PlayStation 2

    (iv)    Day of Reckoning for Nintendo GameCube

    (v)    WrestleMania XIX for Nintendo Game Cube

    (vi)    WWF Raw for Microsoft X-Box

    (vii)    WWF Raw 2 for Microsoft X-Box

(d)   Prior to July 2003, representatives of THQ and Ultimate Creations, Inc. entered into negotiations for a non-exclusive license agreement for the use of intellectual property rights, if any, in the "Ultimate Warrior" character's name, voice, facsimile signature, nickname, likeness, signature moves, entrance music, endorsement, right of publicity, and biographical sketch in connection with certain WWE games to be produced by THQ.

(e)   The negotiations between the representatives of THQ and UCI contemplated that the "Ultimate Warrior" character would be included in the WWE games as an "unlockable playable character," i.e. a character that is inaccessible to players until certain goals within the game are reached.

(f)   The "Ultimate Warrior" character does not appear on the roster of characters in any WWE game.

(g)   The "Ultimate Warrior" character does not appear as an "unlockable" character in any WWE game.

(2)   The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

(a)   On August 5, 2003, UCI entered into an agreement with Acclaim Entertainment, Inc., under which Acclaim licensed the name, nickname, likeness, caricature, distinctive characterization, voice (or simulation

1   thereof), biography, photograph, signature, and other distinctive

2   characteristics of the "Ultimate Warrior" character.

3   (b)   Plaintiff is the owner of Federal Registered Trademarks Nos. 1,625,919

4   Ultimate Warrior; 1,818,813 Ultimate Warrior; 1,838,771 Ultimate Warrior;

5   1,708,155 Warrior; 2,299,387 Warrior; and 2,345,959 (design logo).

6   **F.     CONTESTED ISSUES OF FACT AND LAW**

7   (1)   The following are the issues of fact to be tried and decided:

8   **Issue No. 1:**   An affiliate of THQ, JAAKS Pacific, Inc., that manufactures action figures

9   has entered into several licensing agreements with UCI to produce a Warrior action

10   figure, and use the federally registered trademarks, Ultimate Warrior, Warrior and

11   design logo.

12   **Plaintiff Contends:**

13   UCI contends that its licensing agreements with JAAKS Pacific Inc. is relevant to show the

14   recognition in the industry of UCI's intellectual property.

15   **Defendant Contends:**

16   THQ contends that UCI's licensing agreements with JAKKS Pacific Inc. ("JAKKS"),

17   under which JAKKS manufactures and distributes action figures of the Ultimate Warrior

18   character, are not relevant to this action.   THQ denies that JAKKS is an "affiliate" of THQ.

19   Although THQ and JAKKS participate in the joint venture that manufactures the WWE games, the

20   companies are not subject to common ownership or control.

21   **Issue No. 2:**   UCI received information from different individuals who play the THQ

22   wrestling games, including one from England, that the Warrior character was in several

23   of the THQ wrestling games.

24   **Plaintiff Contends:**

25   UCI learned of the use of Warrior's image and intellectual property from several different

26   individuals who played the THQ games.   UCI then investigated and confirmed the allegation

27   before the current lawsuit was filed.

28   **Defendant Contends:**

1851570.

- 10 -

1     THQ contends that the Ultimate Warrior character is not in any of the WWE videogames.

2   UCI has failed to produce any admissible evidence as to the existence or content of

3   communications it allegedly received from third parties.

4     **Issue No. 3:**   Whether THQ has infringed UCI trademarks, service marks and intellectual

5          property by using similar marks, trade dress and sequential signature move sets of the

6          Ultimate Warrior and Warrior in its video games;

7     **Plaintiff Contends:**

8     UCI contends that THQ has created the ability for players of its games to use Warrior or

9   the UCI federally registered trademarks and service marks which includes the ring entrance,

10   including running into the ring, running around the outside of the ring apron, standing in the ring

11   corners and reaching to the sky with both arms and vigorously shaking the ropes and in his

12   signature ending move where the Warrior character reaches to the sky with both arms, bounces off

13   the ropes three times and then pressed the opponent over his head before dropping him on the mat

14   and pinning him.  Plaintiff has common law marks in the Warrior characters trade dress that

15   includes the character having the Warrior logo painted on his face and arm bands with tassels in

16   matching color and tassels from his boots in matching color, on its characters and gives

17   individuals the ability to create the Warrior character and it allows the Warrior character to enter

18   the ring in his unique manner and to perform his signature moves.  Also, certain games use the

19   name Warrior.

20   **Defendant Contends:**

21     THQ submits that this "issue" is vague, overbroad, compound, and begs the question. UCI

22   does not identify the alleged "distinctive wrestling moves and ring entrances," much less establish

23   that it has any protectable interest in such wrestling moves and ring entrances.  Similarly, UCI has

24   failed to identify the components of the alleged "Warrior character," much less establish that it has

25   any protectable interest in that character.   THQ further contends that the "Create-a-Wrestler"

26   feature in its WWE videogames permits players to create an almost infinite number of characters,

27   including characters that the players may believe resemble actual people or characters, i.e. Britney

28   Spears, Kobe Bryant, the Superman character, the Ultimate Warrior character, etc.  Just as an artist

1  who draws Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant
2  sponsored the crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe Bryant
3  wrestler is not likely to be confused about whether Kobe Bryant sponsored the WWE videogames.
4  UCI has failed to adduce any admissible evidence that players' ability to create wrestlers that
5  resemble actual people or characters is likely to confuse an appreciable number of reasonably
6  prudent consumers as to whether the people or characters that the player create are affiliated with
7  the WWE games.

8       **Issue No. 4:**   Whether THQ has profited from its use of the Warrior character and in
9                 games by giving the players the capability of creating the Warrior character, putting the
10                face paint on the character in the design logo, having the character dress like Warrior,
11                enter the ring like Warrior, do Warrior's signature moves, be announced as Warrior,
12                and be from "parts unknown," just as Warrior.

13 **Plaintiff Contends:**

14      UCI submits that THQ negotiated to license UCI's intellectual property concerning
15 Warrior because it would enhance its games and make them more desirable and thus, it would
16 profit from increased sales and when the negotiations stopped, THQ just took UCI's intellectual
17 property to increase its sale and profits.

18 **Defendant Contends:**

19      THQ submits that this "issue" is vague, overbroad, compound, and begs the question. UCI
20 does not identify the alleged "signature moves" or ring entrance, much less establish that it has
21 any protectable interest in such wrestling moves and ring entrances. Similarly, UCI has failed to
22 identify the components of the alleged "Warrior character," much less establish that it has any
23 protectable interest in that character. THQ further contends that the "Create-a-Wrestler" feature in
24 its WWE videogames permits players to create an almost infinite number of characters, including
25 characters that the players believe resemble actual people or characters, i.e. Britney Spears, Kobe
26 Bryant, the Superman character, the Ultimate Warrior character, etc. Just as an artist who draws
27 Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant sponsored the
28 crayons, a player who uses the "Create-a-Wrestler" feature to create a Kobe Bryant wrestler is not

1  likely to be confused about whether Kobe Bryant sponsored the WWE videogames.  UCI has

2  failed to adduce any admissible evidence that players' ability to create wrestlers that resemble

3  actual people or characters is likely to confuse an appreciable number of reasonably prudent

4  consumers as to whether the people or characters that the player create are affiliated with the

5  WWE games.

6      **Issue No. 5:**   Whether UCI is entitled to damages as a result of THQ's video games, or

7  future use of any items associated with the Ultimate Warrior or Warrior character.

8  **Plaintiff Contends:**

9      Plaintiff contends that THQ has made a profit infringing UCI's federally registered marks,

10  and intentionally put Warrior in its videos after it was unable to license his character.  There is a

11  likelihood of confusion in the marketplace (geared toward wrestling fans) as to whether the

12  character that can be created in THQ's wrestling video games is affiliated or connected with

13  Warrior.  THQ's use of Plaintiff's marks was an improper attempt to capitalize on the popularity

14  of the Warrior wrestling character.  Plaintiff is entitled to compensation for THQ's unlicensed use.

15  **Defendant Contends:**

16      THQ submits that this "issue" is vague, overbroad, compound, and begs the question. UCI

17  has failed to identify the components of the alleged "Warrior character," much less establish that it

18  has any protectable interest in that character. THQ contends that the "Ultimate Warrior" character

19  is not in any WWE videogame and that no consumer could be confused as to whether UCI is

20  affiliated or connected with those games.  THQ denies that it infringed UCI's federally registered

21  marks or attempted to capitalize on UCI's rights, if UCI has any such rights.   THQ further

22  contends that the "Create-a-Wrestler" feature in its WWE videogames permits players to create an

23  almost infinite number of characters, including characters that the players believe resemble actual

24  people or characters, *i.e.* Britney Spears, Kobe Bryant, the Superman character, the Ultimate

25  Warrior character, etc.  Just as an artist who draws Kobe Bryant with crayons is not likely to be

26  confused about whether Kobe Bryant sponsored the crayons, a player who uses the "Create-a-

27  Wrestler" feature to create a Kobe Bryant wrestler is not likely to be confused about whether Kobe

28  Bryant sponsored the WWE games.  UCI has failed to adduce any admissible evidence that

1851570.                                    - 13 -

1   players' ability to create wrestlers that resemble actual people or characters is likely to confuse an

2   appreciable number of reasonably prudent consumers as to whether the people or characters that

3   the player create are affiliated with the WWE games.

4       **Issue No. 6:**   Whether UCI owns the intellectual property at issue;

5   **Plaintiff Contends:**

6       Plaintiff contends that it obtained federal registrations on some of its intellectual property

7   associated with the Warrior character and on others, it has common law rights.

8   **Defendant Contends:**

9       THQ submits that this "issue" is vague, overbroad, compound, and begs the question.

10  THQ contends that UCI's federal registrations are invalid, either because UCI has abandoned its

11  trademarks and/or has maintained its registrations through fraud.  UCI has failed to identify the

12  alleged "intellectual property" in which it claims to have obtained common law rights and THQ

13  disputes that UCI has acquired any such rights.

14      **Issue No. 7:**   Whether the intellectual property at issue constitutes valid, protectable

15          trademarks.

16  **Plaintiff Contends:**

17      UCI contends that it obtained federal registrations on some of its intellectual property

18  associated with the Warrior character and on others, it has common law rights.  UCI believes that

19  its trade dress is distinctive and by THQ's use of it in its wrestling video games, confuses

20  customers or potential customers concerning Warrior's affiliation or association with the games.

21  THQ did not use UCI's marks descriptively.  THQ used the marks after it failed to enter into a

22  license of the marks prior to release of the video games.

23  **Defendant Contends:**

24      THQ submits that this "issue" is vague, overbroad, compound, and begs the question.

25  THQ contends that UCI's federal registrations are invalid, either because UCI has abandoned its

26  trademarks and/or has maintained its registrations through fraud.  UCI has failed to identify the

27  alleged "intellectual property" or "trade dress" in which it claims to have obtained common law

28

1    rights and THQ disputes that UCI has acquired any such rights.  THQ denies that it has used

2    UCI's purported "trade dress" in any WWE videogame.

3         **Issue No. 8:**    Whether UCI has abandoned its rights, if any, in the intellectual property at

4              issue;

5    **Plaintiff Contends:**

6         Plaintiff contends that it has not abandoned any of its rights to the intellectual property at

7    issue.  It entered into a license agreement with a competitor of THQ to license the Ultimate

8    Warrior and Warrior character, likeness, moves, entrance, design logo, and persona; and entered

9    into a license agreement with an affiliate of THQ, JAAKS Pacific, Inc., that manufactures action

10   figures to produce a Warrior action figure.  In addition, during the past nine years, Warrior has

11   licensed his image and his service marks and trademarks to various companies for t-shirts, comic

12   books, Warrior Gym, action figures and video games.  In recent years, Warrior has done a great

13   deal of public speaking based upon his success as a personality and still utilizes Warrior images in

14   the form of posters and pictures at various speaking engagements.  Additionally, Warrior operates

15   a website (www.ultimatewarrior.com) on which he discusses life philosophies and public issues.

16   **Defendant Contends:**

17        See THQ's contentions for Issues 10 and 11.

18        **Issue No. 9:**    Whether certain of UCI's trademark registrations are invalid due to fraud

19              committed by UCI, or its predecessors in interest, in connection with the application

20              for or maintenance of the registrations.

21   **Plaintiff Contends:**

22        UCI contends that THQ has not timely raised or disclosed this defense and that even if

23   timely disclosed, UCI has not made false statements to the PTO.

24   **Defendant Contends:**

25        THQ contends that Registration Nos. 2,345,959 and 1,838,771 are void because UCI made

26   false statements to the Patent and Trademark Office in connection with the maintenance of the

27   registrations.

28

1851570.

1    With respect to Registration No. 2,345,959, THQ contends that UCI made statements in its
2  "Combined Declaration of Use and Incontestability under Sections 8 & 15," which was filed on
3  April 24, 2006, that UCI knew or should have known were false. Specifically, UCI stated in its
4  declaration that its registered mark was used in commerce on or in connection with all goods
5  and/or services listed in the existing registration," i.e., in connection with entertainment services,
6  namely television programming in the nature of live and animated adventures for children. THQ
7  contends that UCI was not, in fact, using the mark in connection with entertainment services,
8  namely television programming in the nature of live and animated adventures for children. UCI
9  further stated in its declaration that "there is no proceeding involving [UCI's rights under the
10  registration] rights pending and not disposed of either in the Patent and Trademark Office or in the
11  courts." However, at the time that UCI filed its declaration, the instant lawsuit had been pending
12  for more than one year.

13    With respect to Registration No. 1,838,771, THQ contends that UCI made statements in its
14  "Combined Declaration of Use in Commerce/Application for Renewal of Mark Under §§ 8 & 9,"
15  which was filed on May 31, 2004, that UCI knew or should have known were false. Specifically,
16  UCI stated in its declaration that UCI was using its registered mark "in commerce on or in
17  connection with the following goods and services listed in the existing registration: toys and
18  sporting goods; namely plaster molding sets, kites, baseball gloves, flying disks, wrestling gear
19  kits consisting of wrestling belts, wrestling masks and costumes, jigsaw puzzles, board games,
20  marbles, headshaped water squirt toys, teddy bears, dolls, electronic computer games, handheld
21  games; namely handheld pinball and electronic videogames and electronic sports games and action
22  figures." THQ contends that UCI was not, in fact, using the mark in connection with all of the
23  goods and services listed in the declaration. Further, UCI did not inform the Patent and
24  Trademark Office of the pendency of the instant lawsuit, as required by the statute.

25    **Issue No. 10:** Whether UCI abandoned its alleged trademarks and alleged trade dress by
26    failing to exercise adequate quality control over the products or services sold under the
27    trademarks or trade dress by UCI's licensees.

28  **Plaintiff Contends:**

1    UCI contends it entered into a licensing agreement with Acclaim Entertainment, Inc. that

2    provided for adequate control of its intellectual property and that it did exercise control over the

3    product put out ("Acclaim") by Acclaim.

4    **Defendant Contends:**

5          THQ contends that UCI has abandoned its alleged trademarks and trade dress because UCI

6    failed to exercise any quality control over the products sold by its licensee Acclaim Entertainment,

7    Inc. ("Acclaim").   UCI states that it licensed its alleged trademarks and alleged trade dress to

8    Acclaim for use by Acclaim in connection with wrestling themed videogames.   However, the

9    license agreement between Acclaim and UCI was a "naked license," that is, the license agreement

10   did not permit UCI to exercise any control of the quality of the goods produced under the license.

11   By engaging in naked licensing, UCI abandoned all rights to its alleged trademarks and alleged

12   trade dress.

13         **Issue No. 11:**  Whether certain of UCI's trademark registrations are invalid due to UCI's

14             failure to use the registered marks on the goods and services specified in the

15             registrations.

16   **Plaintiff Contends:**

17         UCI continues to use its trademarks on the goods, products, and services for which they are

18   registered.

19   **Defendant Contends:**

20

21         THQ contends that certain of UCI's trademark registrations are invalid because UCI has

22   failed to use the registered marks in commerce in connection with the goods and services specified

23   in the registrations.   The owner of a trademark abandons the right to exclusive use of the

24   trademark in connection with a good or service where the owner discontinues using the mark in

25   connection with the good or service with an intent not to resume such use.

26         THQ contends that UCI has abandoned registration 1,708,155 for "Warrior" because UCI

27   failed to use the mark in commerce on or in connection with the goods specified in the

28   registration, namely posters.

1   THQ contends that UCI has abandoned registration 1,818,813 for "Ultimate Warrior"
2   because UCI has failed to use the mark in commerce on or in connection with the goods or
3   services specified in the certificate of registration, namely videocassettes, video/audio cassettes
4   and cinematographic films featuring professional wrestling; audio cassettes, compact discs, laser
5   discs, and phonograph records featuring musical performances.

6   THQ contends that UCI has abandoned registration 2,299,387 for "Warrior" because UCI
7   has failed to use the mark in commerce on or in connection with the goods or services specified in
8   the certificate of registration, namely sports entertainment services in the nature of professional
9   wrestling contests.

10   THQ contends that UCI has abandoned registration 2,345,959 for the Design because UCI
11   has failed to use the mark in commerce on or in connection with the goods or services specified in
12   the certificate of registration, namely television programming in the nature of live and animated
13   adventures for children.

14   **Issue No. 12:**  Whether UCI has a valid unregistered trademark in "Warrior" for wrestling
15         entertainment services and products.

16   **Plaintiff Contends:**

17   UCI contends that it has common law rights in the mark Warrior for wrestling
18   entertainment services and products including video games, dolls, action figures, and posters.

19   **Defendant Contends:**

20   THQ contends that UCI does not have a valid unregistered trademark for "Warrior" in
21   connection with [plaintiff to identify goods/services] because (1) UCI cannot show sufficient use
22   of the alleged mark in commerce on or in connection with the identified goods and services, and
23   (2) UCI cannot show that the alleged mark is inherently distinctive or that it is descriptive but has
24   acquired secondary meaning.

25   **Issue No. 13:**  Whether UCI has a valid unregistered trademark in "Ultimate Warrior" for
26         [plaintiff to identify goods/services].

27   **Plaintiff Contends:**

28

1    UCI contends that it has common law rights in the mark Warrior for wrestling

2  entertainment services and products including video games, dolls, action figures, and posters.

3  **Defendant Contends:**

4    THQ contends that UCI does not have a valid unregistered trademark for "Ultimate

5  Warrior" in connection with [plaintiff to identify goods/services] because (1) UCI cannot show

6  sufficient use of the alleged mark in commerce on or in connection with the identified goods and

7  services, and (2) UCI cannot show that the alleged mark is inherently distinctive or that it is

8  descriptive but has acquired secondary meaning.

9    **Issue No. 14:** Whether UCI has a valid unregistered trademark in the "Design" for

10   [plaintiff to identify goods/services].

11  **Plaintiff Contends:**

12    I'm not sure what this is?????

13  **Defendant Contends:**

14

15    THQ contends that UCI does not have a valid unregistered trademark for "Warrior" in

16  connection with [plaintiff to identify goods/services] because (1) UCI cannot show sufficient use

17  of the alleged mark in commerce on or in connection with the identified goods and services, and

18  (2) UCI cannot show that the alleged mark is inherently distinctive or that it is descriptive but has

19  acquired secondary meaning.

20    **Issue No. 15:** Whether UCI has a valid unregistered trade dress in certain elements of the

21      Warrior character for his costume, symbol, face paint and color combinations that

22      make up the overall image of the wrestling character.

23  **Plaintiff Contends:**

24    UCI contends that it has valid unregistered trade dress in various elements of the Warrior

25  wrestling character for his costume, symbol, face, paint and coordinated color combinations that

26  make up the overall image of his wrestling character that is very distinct for products and services

27  related to wrestling entertainment that includes live wrestling matches, video games, action

28  figures, dolls, and posters.

**Defendant Contends:**

THQ contends UCI does not have a valid unregistered trade dress in certain elements of the Ultimate Warrior character in connection with [plaintiff to identify goods/services] because (1) UCI has failed to identify the elements of its alleged trade dress with specificity, (2) UCI cannot show sufficient use of the alleged trade dress in commerce on or in connection with the identified goods and services, and (3) UCI cannot show that the alleged trade dress has acquired secondary meaning.

**Issue No. 16:** Whether the ability of player to use the "Create a Wrestler" feature in the WWE videogames to create a character they believe resembles the "Ultimate Warrior" character is likely to confuse an appreciable number of reasonably prudent consumers in the marketplace as to the source or sponsorship of the WWE videogames.

**Plaintiff Contends:**

UCI contends that some of THQ's games provide certain of the UCI's intellectual property in groups that can be accessed easily by clicking on the OUW and that other intellectual property owned by UCI can be accessed in the THQ games easily and it is intended by THQ that it be accessed easily.

**Defendant Contends:**

THQ contends that the fact that purchasers can use the "Create-a-Wrestler" feature in WWE videogames to create a character they believe resembles the "Ultimate Warrior" character is not likely to confuse an appreciable number or ordinary consumers in the marketplace as to the source or sponsorship of THQ's wrestling related videogames. The Ultimate Warrior character does not appear in any of the WWE games. Some highly motivated players, without any instruction or encouragement from THQ, may use the "Create-a-Wrestler" feature in the WWE games to create wrestlers they believe resemble actual people or characters, i.e. Britney Spears, Kobe Bryant, the Superman character, the Ultimate Warrior character, etc. THQ contends that, just as an artist who draws Kobe Bryant with crayons is not likely to be confused about whether Kobe Bryant sponsored the crayons, a player who uses the "Create-a-Wrestler" feature to create a

1  Kobe Bryant wrestler is not likely to be confused about whether Kobe Bryant sponsored the WWE

2  videogames.  UCI has failed to adduce any admissible evidence that players' ability to create

3  wrestlers that resemble actual people or characters is likely to confuse an appreciable number of

4  reasonably prudent consumers as to whether the people or characters that the players create are

5  affiliated with the WWE games.  THQ further contends that a player's use of the "Create-a-

6  Wrestler" feature to create wrestler characters does not constitute use of the elements of the

7  wrestler characters in commerce, nor does the players' use constitute use by THQ.

8      **Issue No. 17:**  Whether  the  "Create-a-Wrestler"  feature  in  the  WWE  videogames  is

9          protected by the First Amendment.

10  **Plaintiff Contends:**

11     UCI contends the First Amendment does not protect THQ from violating UCI's

12  trademarks and trade dress or from actions that violate the Lanham Act..

13  **Defendant Contends:**

14     THQ contends that the "Create-a-Wrestler" feature in WWE videogames is protected by

15  the First Amendment.  The WWE videogames are expressive works which are entitled to First

16  Amendment protection.  The Create-a-Wrestler feature is relevant to the contents of the WWE

17  videogames because it allows players to create his or her own original and unique wrestler and

18  then play the game using that wrestler.  Further, the Create-a-Wrestler feature does not mislead

19  consumers as to the source or content of THQ's games.  THQ does not instruct players on how to

20  create wrestlers that may resemble actual people or characters, or does THQ use player-created

21  characters in its advertising or packaging materials.  Only after purchasing the game can players

22  can create an almost infinite numbers of wrestlers.

23     **Issue No. 18:**  Whether UCI was damaged by the fact that players can use the "Create-a-

24          Wrestler" feature in WWE videogames to create a character they believe resembles the

25          "Ultimate Warrior."

26  **Plaintiff Contends:**

27     UCI suffers damages because it is not being compensated for the use of its intellectual

28  property and it is being used without its permission.

**Defendant Contends:**

**Issue No. 19:**  Whether THQ's use in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of call names from which players can select in naming the wrestlers they have created is likely to confuse an appreciable number of reasonably prudent consumers in the marketplace as to the source or sponsorship of WWE videogames.

**Plaintiff Contends:**

UCI owns the name Warrior for a wrestling character and the public associates the source of that name with the Plaintiff.

**Defendant Contends:**

THQ's contends that its use of "Warrior" or "The Warrior" on a list of call names from which players can select in naming the wrestlers they have created is not likely to confuse an appreciable number of reasonably prudent consumers in the marketplace as to the source or sponsorship of THQ's wrestling related videogames.  THQ does not use "warrior" to identify its goods or services.  There is no character in any THQ WWE videogame called "Warrior," and THQ does not use "Warrior" in any of its advertising, marketing, or packaging materials.  Rather, the word "warrior" only appears deep within the game, on a list of approximately 50 generic names from which players can select in naming the wrestlers they create through the Create-a-Wrestler feature.  UCI has failed to adduce any admissible evidence that THQ's limited use of "warrior" is likely to confuse an appreciable number of reasonably prudent consumers about the source or sponsorship of the WWE videogames.

**Issue No. 20:**  Whether THQ's inclusion in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names from which players can select for the wrestlers they have created constitutes fair use of the term "warrior."

**Plaintiff Contends:**

UCI owns the name Warrior for a wrestling character and the public associates the source of that name with the Plaintiff.

**Defendant Contends:**

THQ contends that its use of "Warrior" or "The Warrior" as one of many of the possible call names that players can select for the wrestlers they have created constitutes classic fair use. Even assuming that UCI has a valid trademark in "Warrior," UCI cannot prevent others from using the word in its ordinary, descriptive sense. The ordinary, English-language meaning of "warrior" is a person "engaged or experienced in warfare . . . [or] a person of demonstrated courage, fortitude, zeal, or pugnacity." Webster's New International Dictionary 2578 (3d ed. 1986). In allowing game players to name the wrestlers they create "Warrior," THQ does nothing more than permit them to use the word in its descriptive sense, i.e. to describe their wrestlers as engaged or experienced in warfare, or as possessing courage, fortitude, zeal or pugnacity—all of which are desirable characteristics for wrestlers. THQ's limited use of "warrior" in its generic sense is fair and was made in good faith.

**Issue No. 21:** Whether THQ's inclusion in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names from which players can select for the wrestlers they have created is protected by the First Amendment.

**Plaintiff Contends:**

UCI contends the First Amendment does not protect THQ from violating UCI's trademarks and trade dress or from actions that violate the Lanham Act.

**Defendant Contends:**

THQ contends that its inclusion in SmackDown! vs. Raw and WrestleMania 21 of "Warrior" or "The Warrior" on a list of almost fifty possible call names from which players can select for the wrestlers they have created is protected by the First Amendment. The WWE videogames are expressive works which are entitled to First Amendment protection. THQ's use of the word "warrior" is relevant to the contents of the WWE videogames—it allows players to assign identifying attributes to any wrestler that they create, namely the attributes of courage,

1   fortitude, zeal, pugnacity, or experience in warfare.  Just as the other generic terms are fitting to
2   announce a fighter or wrestler, so too is the word "warrior."  Further, the fact that THQ enables
3   players to call their created wrestlers "Warrior" or "The Warrior" does not explicitly mislead
4   consumers as to the source or content of THQ's games where "warrior" does not appear on any of
5   THQ's game packaging or in any of its advertisements.  Consumers see the word "warrior" after
6   they have purchased the game, if they see it at all, and then only in conjunction with fifty or so
7   other possible names.

8       **Issue No. 22:**  Whether UCI was damaged by THQ's inclusion in SmackDown! vs. Raw
9           and WrestleMania 21 of "The Warrior" on a list of almost fifty possible call names
10           from which players can select for the wrestlers they have created.

11  **Plaintiff Contends:**

12      UCI contends that THQ violated UCI's registered mark and UCI must take steps to protect
13  its marks or is subject to losing them.

14  **Defendant Contends:**
15

16      **Issue No. 23:**  Whether THQ's use of "symbol 25" in _____ is likely to
17          confuse an appreciable number of reasonably prudent consumers in the marketplace as
18          to the source or sponsorship of the WWE games.

19  **Plaintiff Contends:**

20      UCI contends that THQ's symbol 25 is so confusingly similar to UCI's logo that it is likely
21  to cause confusion in the market place.

22  **Defendant Contends:**

23      THQ contends that its use of "symbol 25" is unlikely to confuse an appreciable number of
24  reasonably prudent consumers in the marketplace as to the source or sponsorship of the WWE
25  games.  THQ did not use symbol 25 to advertise or market the WWE games.  Instead, symbol 25
26  is included in the Create-a-Wrestler feature as one of 150 or more generic symbols from which
27  players can choose to customize and decorate the wrestlers they create.  The overall impression
28  created by symbol 25 is not similar to the overall impression created by UCI's alleged trademark

1851570.                                   - 24 -

1    the Design.  UCI has failed to adduce any admissible evidence that THQ's use of symbol 25 is

2    likely to confuse an appreciable number of reasonably prudent consumers about the source or

3    sponsorship of the WWE videogames.

4       **Issue No. 24:** Whether THQ's use of "symbol number 25" in _____ is

5          protected by the First Amendment.

6   **Plaintiff Contends:**

7       UCI contends the First Amendment does not protect THQ from violating UCI's

8    trademarks and trade dress or from actions that violate the Lanham Act.

9   **Defendant Contends:**

10       THQ contends that its use of "symbol 25 is protected by the First Amendment.  The WWE

11    videogames are expressive works which are entitled to First Amendment protection.  Players can

12    use symbol 25 to decorate and customize the wrestlers they create using the Create-a-Wrestler

13    feature.  Further, the fact that THQ enables players to use symbol 25 does not mislead consumers

14    as to the source or content of THQ's games where symbol 25 does not appear on any of THQ's

15    game packaging or in any of its advertisements.  Consumers see the word symbol 25 only after

16    they have purchased the game, if they see it at all, and then only in conjunction with fifty or so

17    other possible names.

18       **Issue No. 25:** Whether UCI was damaged by THQ's use of "symbol number 25" in

19    _____.

20   **Plaintiff Contends:**

21       UCI contends that it is damaged when its logo has been misappropriated.

22   **Defendant Contends:**

23

24       2.      The following are the issues of law to be tried and determined:

25   **G.**      **LIST OF WITNESSES**

26   1.      Warrior (Plaintiff/fact and expert witness).  Warrior may be contacted through

27       Maynard Cronin Erickson Curran & Sparks, PLC, 3200 N. Central Avenue, Suite

28       1800; Phoenix, AZ 85012; 602-279-8500.  Warrior has knowledge concerning all

1    statements in the Amended Complaint and is expected to testify about the

2    allegations therein.   Warrior is the sole shareholder of UCI.   He will testify

3    concerning his unsuccessful negotiations on behalf of UCI with THQ for a Non-

4    Exclusive License Agreement; and his use of his marks.   He will testify about his

5    negotiations with other entities concerning the licensing of the marks owned by

6    UCI including JAAKS Pacific Inc. and Acclaim Entertainment, Inc.   He will testify

7    about the contest and promotion that THQ ran in connection with his character

8    being in its wrestling game.   Also, Warrior will testify about the damages that UCI

9    has suffered based upon his opinion of what a proper licensing fee should be for the

10   marks, trade dress and his character in a wrestling video game. Warrior's opinion

11   on damages is based upon his knowledge of licensing fees for the use of a wrestling

12   character and his experience in negotiating licensing fees for the use of his

13   character.   He will testify that in his opinion the use of his character by THQ is

14   intentional infringement and that THQ is not an innocent user of the trademarks

15   and character based upon THQ's earlier, unsuccessful request for permission to use

16   "Warrior" and "Ultimate Warrior" marks, design logo, and movesets associated

17   with the Warrior and Ultimate Warrior character.   Also, since the infringement is

18   willful, Warrior will testify that in his opinion a damage award should be based

19   upon an accounting of THQ's profits.   He will testify as to how and when he

20   learned of the infringement that resulted in this filing of this lawsuit.   Warrior will

21   be called at trial.

22   2.    Chris Byerly (Plaintiff/fact witness and expert witness).   Mr. Byerly may be

23        contacted at 300 East Main street East Palestine, OH 44413 ; 330-429-6600 (cell).

24        Mr. Byerly will testify that he is familiar with Warrior's look as a character, which

25        included not only his name, Ultimate Warrior and Warrior, but the look of his body

26        and his costumes, including his Warrior design logo, which could be found in his

27        trunk, knee pads or boots, and his distinctive face paint, and with his signature

28        moves.   He has played the THQ wrestling video games and in some games sold by

1    THQ, all of the Warrior's components were available, in some, only portions were

2    available. He will testify and show to the Court how he was able to create Warrior

3    and his signature moves including ring entrance in eight THQ games, which

4    include:   (1) Play Station 2: "SmackDown vs. Raw 2006;" (2) "SmackDown vs.

5    Raw;" (3) "SmackDown! Here Comes the Pain;" and on Game Cube: (4) "Day of

6    Reckoning;" (5) "Wrestlemania XIX;" on PSP: (6) "SmackDown vs. Raw 2006;"

7    and on Xbox: (7) "WWF Raw;" and (8) "WWF Raw 2;" and that in (9)

8    "SmackDown! Here Comes the Pain," the character can be announced as Warrior.

9    Mr. Byerly will be called at trial.

10   3.    Chris Page (Plaintiff/fact witness).    Mr. Page can be contacted at

11   Chrispaulpage@blueyonder.co.uk.  Mr. Page has knowledge concerning websites,

12   video games infringing on UCI's trademarks and copyrights.  It is likely that Mr.

13   Page may be called at trial.

14   4.    Daniel Siegel (Plaintiff/fact witness). Vice-President - New Business Development

15   & Legal Counsel CMG Worldwide, Inc.  Mr. Siegel can be contacted at CMG

16   Worldwide, 8560 Sunset Boulevard, 10th Floor Penthouse West Hollywood, CA

17   90069; 310-651-2000, 317-570-5500/fax.   Mr. Siegel has knowledge as to the

18   value of the Ultimate Warrior.  Mr. Siegel worked with Warrior in his negotiations

19   with THQ.  He may testify as to the unsuccessful negotiations and correspondence

20   between the parties regarding same.  He may be called at trial.

21   5.    Cory Ledesma (Defendant/Fact Witness).  Mr. Ledesma may be contacted through

22   Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California

23   90067.  Mr. Ledesma will testify concerning the development of THQ's wrestling-

24   related video games and the features of THQ's wrestling-related video games,

25   including the feature (and the programming and generic tools to implement this

26   feature) that allows a game user to create virtually any character in game play that

27   the user chooses. Mr. Ledesma may be called at trial.

28

1851570.

6.   <u>Nick Wlodyka (Defendant/Fact Witness)</u>.  Mr. Wlodyka may be contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067.  Mr. Wlodyka will testify concerning the development of THQ's wrestling-related video games and the features of THQ's wrestling-related video games, including the feature (and the programming and generic tools to implement this feature) that allows a game user to create virtually any character in game play that the user chooses.  Mr. Wlodyka may be called at trial.

7.   <u>Kathy Vrabeck (Defendant/Expert Witness; Plaintiff/_____)</u>.  Ms. Vrabeck may be contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067.  Ms. Vrabeck has been engaged by THQ to provide an expert opinion regarding the marketing, licensing, and game content of THQ's WWE wrestling videogame franchise.   THQ has previously disclosed Ms. Vrabeck's written report.  Ms. Vrabeck may be called at trial.

8.   <u>Brad Carraway (Defendant/Expert and Fact Witness)</u>.  Mr. Carraway may be contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067.   If Plaintiff offers evidence of THQ's sales or profits before trial or at trial, Mr. Carraway will testify about THQ's costs and expenses that must be deducted from THQ's revenues.  Mr. Carraway will also testify about what factors drive THQ's profits on its WWE wrestling videogame franchise.  THQ has previously disclosed Mr. Carraway's written report.  Mr. Carraway may be called at trial.

9.   <u>Tracy Muniz Williams (Defendant/Fact Witness)</u>. Ms. Williams may be contacted through Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067.   Ms. Williams will testify concerning worldwide marketing, advertising and promotional activities for the wrestling-related video games that THQ releases pursuant to its license with World Wrestling Entertainment, Inc. or WWE (the "WWE games").  Ms. Muniz Williams will be called at trial.

**H.     LIST OF EXHIBITS.**

1.     The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a.     Plaintiffs Exhibits:

1.   Trademark/Service Mark Registrations

a.   Registration No. 1,625,919 - Ultimate Warrior (UCI 000001)

b.   Registration No. 1,708,155 - Warrior (UCI 000002)

c.   Registration No. 1,818,813 - Ultimate Warrior (UCI 000003)

d.   Registration No. 1,838,771 - Ultimate Warrior (UCI 000004)

e.   Registration No. 2,299,387 - Warrior (UCI 000005)

f.   Registration No. 2,345,959 - Logo (UCI 000006)

g.   Registration No. 2,348,985 - Generation Warrior (UCI 000007)

2.   Assignment of Trademarks/Service Marks (UCI 000230-240).

3.   Draft THQ Inc. Non-Exclusive License Agreement dated 5/6/03 (UCI 000216-218).

4.   Draft THQ Inc. Non-Exclusive License Agreement dated 7/21/03 (unsigned)   (UCI 000008-11).

5.   Draft THQ Inc. Non-Exclusive License Agreement dated 8/8/03 (unsigned)  (UCI 000012-15).

6.   Summary Sheet Product Overview and Features of Day of Reckoning 2 (THQ 000001).

7.   Product Overview and Features of Day of Reckoning 2 (THQ 000003).

8. Product Overview and Features of Day of Reckoning 2 (THQ 000034).

9. Letter re press conference 04/01 in LA prior to WrestleMania 21 announcing Day of Reckoning 2 for Game Cube (THQ 000002).

10. Agreement between Acclaim Entertainment and UCI dated August 15, 2003 (UCI 000291-299).

11. News Releases from http://phx.corporate-ir.net (THQ website) (UCI 000027-57).

12. THQ video games (1) Play Station 2: "SmackDown vs. Raw 2006;" (2) "SmackDown vs. Raw;" (3) "SmackDown! Here Comes the Pain;" and on Game Cube: (4) "Day of Reckoning;" (5) "Wrestlemania XIX;" on PSP: (6) "SmackDown vs. Raw 2006;" and on Xbox: (7) "WWF Raw;" and (8) "WWF Raw 2;" and that in (9) "SmackDown! Here Comes the Pain

      b.     Defendant's Exhibits:

1. Video game and exterior packaging of Survivor Series (THQ 000007);

2. Video game and exterior packaging of Wrestlemania XIX (THQ 000008);

3. Video game and exterior packaging of Crush Hour (Nintendo GameCube) (THQ 000009);

4. Video game and exterior packaging of Day of Reckoning (THQ 000010);

5. Video game and exterior packaging of Day of Reckoning 2 (THQ 000011);

6. Video game and exterior packaging of Smackdown: Here Comes the Pain (THQ 000012);

7. Video game and exterior packaging of Crush Hour (PlayStation 2) (THQ 000013);

8. Video game and exterior packaging of Smackdown vs. Raw (THQ 000014);

9. Video game and exterior packaging of Smackdown vs. Raw 2006 (PlayStation 2) (THQ 000015);

10. Video game and exterior packaging of Smackdown vs. Raw 2006 (PlayStation Portable) (THQ 000016);

11. Video game and exterior packaging of Raw (THQ 000017);

12. Video game and exterior packaging of Raw 2 (THQ 000018);

13. Video game and exterior packaging of Wrestlemania 21 (THQ 000019);

14. Report of Kathy Vrabeck, including any and all exhibits thereto and all documents or authorities relied upon;

15. 11/14/2005 THQ News Release, "THQ Wireless Enables World Wrestling Entertainment(R) Fans to Take It to the Mat With Two Mobile Games" (UCI 000053-000055, UCI 000050-000052);

16. 12/13/2005 THQ News Release, "World Wrestling Entertainment(R) Enters a New Ring With WWE(R) SmackDown(R) vs. Raw(R) 2006 for the PSP(TM) (PlayStation(R)Portable) System" (UCI 000056-000057);

17. 11/10/2005 THQ News Release, "World Wrestling Entertainment(R) Hits the Road With WWE(R) SmackDown(R) vs. Raw(R) 2006, Set to Debut on the PSP(TM) (PlayStation(R)Portable) System This December" (UCI 000048-000049);

18. 08/29/2005 THQ News Release, "The Wrestling Saga Continues With WWE(R) Day of Reckoning 2(TM) for the Nintendo GameCube(TM)" (UCI 000046-000047);

1851570.

19. 08/25/2005 THQ News Release, "World Wrestling Entertainment(R) Games Win Two New Titles: 'Greatest Hits' and 'Player's Choice'" (UCI 000043-000045);

20. 07/06/2005 THQ News Release, "WWE SmackDown!(TM) Vs. Raw(R) 2006 Sets the Stage for the Fight of Your Life on PlayStation(R)2 Later This Year" (UCI 000041-000042);

21. 04/20/2005 THQ News Release, "WWE(R) WrestleMania(R) 21 Ships Exclusively for Xbox" (UCI 000038-000040);

22. 03/31/2005 THQ News Release, "Third Annual THQ Superstar Challenge Kicks Off WrestleMania(R) 21 Weekend" (UCI 000032-000034; UCI 000035-000037);

23. Undated letter from Kristina Kirk attaching "Day of Reckoning 2" one-sheet   (THQ 000002);

24. "Day of Reckoning 2" summary sheet (THQ 000001);

25. "Day of Reckoning 2 one-sheet" (THQ 000034);

26. WWE Character Roster (THQ 000004-000006);

27. "Day of Reckoning" advertisement (THQ 000020);

28. "Day of Reckoning 2" advertisement (THQ 000021);

29. "SmackDown! Here Comes the Pain" advertisement (THQ 000022);

30. "SmackDown! Vs. Raw 2006" advertisement (THQ 000023);

31. SmackDown! Vs. Raw" advertisement (THQ 000024);

32. "WrestleMania 21" advertisement (THQ 000025);

33. "Day of Reckoning 2" roster (THQ 000028-000033);

34. "WrestleMania 21" commercial (THQ 000027);

35. "SmackDown! Vs. Raw" commercial (THQ 000027);

36. "SmackDown! Vs. Raw 2006" commercial (THQ 000027);

37. "Day of Reckoning" commercial (THQ 000027);

38. "SmackDown! Here Comes the Pain" (THQ 000027);

39. "SmackDown! Just Bring It" commercial (Chris Jericho) (THQ 000026);

40. "SmackDown! 2) commercial (Chris Angle) (THQ 000026);

41. "SmackDown!" commercial (the Rock) (THQ 000026);

42. 08/05/03 agreement between Acclaim Entertainment, Inc. and Ultimate Creations Inc. (UCI 000291-000299);

43. Draft non-exclusive license agreement between Warrior and THQ, Inc. (May 6, 2003) (UCI 000216-000218);

44. Draft non-exclusive license agreement between Warrior and THQ, Inc. (July 21, 2003) ( UCI 000008-000011);

45. Draft non-exclusive license agreement between Warrior and THQ, Inc. (August 8, 2003).  (UCI 000012-15).

   2.      As to the following exhibits, the parties have reached the following stipulations:

   a.      Plaintiffs Exhibits:

   b.      Defendant's Exhibits:

3.      As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

     a.      Plaintiffs Exhibits:

1. Copyright Records (UCI 000241-248). ***THQ objects. This document is not relevant. It does not make any fact of consequence more or less probable, as there is no copyright infringement claim in this case.***

2. "Smackdown! Here Comes the Pain" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

3. "PS2 Smackdown vs. RAW" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

4. "PS2 Smackdown Just Bring It" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

5. "PS2 Smackdown Shut Your Mouth" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

6. "WWE Day of Reckoning" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

7. "Smackdown vs. RAW 2006" video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

8. Wrestlemania XIX video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

9. WWF Raw video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

10. WWF Raw2 video.  This uses the game and UCI has unlocked it to create the Warrior character and moves.

11. Printout from http://sports.ign.com dated April 1, 2005 "WWE Day of Reckoning 2" (UCI 000219-224).  *THQ Objects.  The document has not been properly authenticated.  The document appears to have been printed out from an internet website, and the plaintiff has not established that the document is a true and correct copy of the contents of the website.  The plaintiff also has failed to establish that the declarant's statements were based on personal knowledge.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statement that THQ planned to include the Ultimate Warrior in an as yet unreleased videogame, which is presumably offered to prove that THQ planned to include the Ultimate Warrior in an as yet unreleased videogame.*

12. Printout from http://ps2.ign.com dated August 19, 2003 "Warrior Out of Smackdown" (UCI 000225-228).  *THQ Objects.  The document has not been properly authenticated.  The document appears to have been printed out from an internet website, and the plaintiff has not established that the document is a true and correct copy of the contents of the website.  The plaintiff also has failed to establish that the declarant's statements were based on personal knowledge.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statement that THQ planned to include the Ultimate Warrior in an as yet unreleased videogame, which is presumably offered to prove that THQ's supposed plans to include the Ultimate Warrior in an as yet unreleased videogame had been cancelled.*

13. Declaration of Warrior. *THQ objects to this declaration as hearsay since it is an out-of-court statement offered to prove the truth of the matters asserted therein.*

    a.  Autographed photo of Warrior (UCI 000334)

b.  The JAKKS Action Figure (UCI 000335). *THQ objects. The document is unfairly prejudicial, confusing, and misleading under Fed. R. Evid. 403 because of the danger that jurors will conflate THQ with JAKKS Pacific, Inc. and presume that THQ is, or ought to be, subject to licensing agreements with UCI entered into by JAKKS.*

14. Declaration of Chris Byerly. *THQ objects to this declaration as hearsay since it is an out-of-court statement offered to prove the truth of the matters asserted therein. THQ also objects to any testimony offered by Mr. Byerly as offered in violation of Fed. R. Civ. P. 26(a)(1), since he was not disclosed as a fact witness in this case. THQ's objections to the particular documents attached to Mr. Byerly's declaration are listed below.*

a.  Smackdown Here Comes the Pain Preset Movesets: OUW = Ultimate Warrior (UCI 000308-309). *THQ objects. The document has not been properly authenticated and lacks foundation. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that a character similar to the Ultimate Warrior can be created by performing the steps listed. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create a character similar to the Ultimate Warrior, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogame by following these steps. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image is created.*

b.  Smackdown Here Comes the Pain Ultimate Warrior CAW (UCI 000310-312). *THQ objects. The document has not been properly authenticated and lacks foundation. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge, that a character similar to the Ultimate*

1  *Warrior can be created by performing the  listed, or that the image was created*

2  *using a THQ videogame.  Further, the document consists entirely of hearsay,*

3  *including the declarant's out-of-court statement about how to create a character*

4  *similar to the Ultimate Warrior, which is presumably offered to prove that a*

5  *character similar to the Ultimate Warrior can be created in THQ's videogame by*

6  *following these steps.  The document also should be excluded as unfairly*

7  *prejudicial under Fed. R. Evid. 403 because the document does not provide*

8  *context for how the image is created.*

9

10     c.   Smackdown Here Comes the Pain Ultimate Warrior CAW #2 (UCI 000313-315).

11  *THQ objects.  The document has not been properly authenticated and lacks*

12  *foundation.  The plaintiff has failed to establish that the declarant's statements*

13  *were based on personal knowledge, that a character similar to the Ultimate*

14  *Warrior can be created by performing the steps listed, or that the image was*

15  *created using a THQ videogame.  Further, the document consists entirely of*

16  *hearsay, including the declarant's out-of-court statement about how to create a*

17  *character similar to the Ultimate Warrior, which is presumably offered to prove*

18  *that a character similar to the Ultimate Warrior can be created in THQ's*

19  *videogame by following these steps.  The document also should be excluded as*

20  *unfairly prejudicial under Fed. R. Evid. 403 because the document does not*

21  *provide context for how the image is created.*

22     d.   Smackdown vs. RAW Ultimate Warrior Created Moveset (UCI 000316-317).

23  *THQ objects.  The document has not been properly authenticated and lacks*

24  *foundation.  The plaintiff has failed to establish that the declarant's statements*

25  *were based on personal knowledge or that moves similar to those claimed as the*

26  *Ultimate Warrior's can be created by performing the steps listed.  Further, the*

27  *document consists entirely of hearsay, including the declarant's out-of-court*

28  *statement about how to create moves similar to those claimed as Ultimate*

1851570.

Warrior's, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogame by following these steps. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the moves are created.

e. Smackdown vs. RAW Ultimate Warrior CAW 1 (UCI 000318-323). *THQ objects. The document has not been properly authenticated and lacks foundation. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge, that a character similar to the Ultimate Warrior can be created by performing the steps listed, or that the image was created using a THQ videogame. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create a character similar to the Ultimate Warrior, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogame by following these steps. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image is created.*

f. Smackdown vs. RAW 2006 Preset Movesets & Entrances (Moveset 25 Ultimate Warrior) (UCI 000324-325). *THQ objects. The document has not been properly authenticated and lacks foundation. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that moves similar to those claimed as the Ultimate Warrior's can be created by performing the steps listed. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create moves similar to those claimed as Ultimate Warrior's, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogame by following these steps. The document also should be excluded as unfairly*

1851570.

1   prejudicial under Fed. R. Evid. 403 because the document does not provide

2   context for how the moves are created.

3

4   g.   Smackdown vs. RAW 2006 Ultimate Warrior CAW 1 "Parts Unknown" (UCI

5        000326-329).  *THQ objects.  The document has not been properly authenticated*

6        *and lacks foundation.  The plaintiff has failed to establish that the declarant's*

7        *statements were based on personal knowledge, that a character similar to the*

8        *Ultimate Warrior can be created by performing the steps listed, or that the image*

9        *was created using a THQ videogame.  Further, the document consists entirely of*

10       *hearsay, including the declarant's out-of-court statement about how to create a*

11       *character similar to the Ultimate Warrior, which is presumably offered to prove*

12       *that a character similar to the Ultimate Warrior can be created in THQ's*

13       *videogame by following these steps.  The document also should be excluded as*

14       *unfairly prejudicial under Fed. R. Evid. 403 because the document does not*

15       *provide context for how the image is created.*

16   h.   Smackdown vs. RAW 2006 Ultimate Warrior CAW 3 "Parts Unknown" (UCI

17       000330-333).  *THQ objects.  The document has not been properly authenticated*

18       *and lacks foundation.  The plaintiff has failed to establish that the declarant's*

19       *statements were based on personal knowledge, that a character similar to the*

20       *Ultimate Warrior can be created by performing the steps listed, or that the image*

21       *was created using a THQ videogame.  Further, the document consists entirely of*

22       *hearsay, including the declarant's out-of-court statement about how to create a*

23       *character similar to the Ultimate Warrior, which is presumably offered to prove*

24       *that a character similar to the Ultimate Warrior can be created in THQ's*

25       *videogame by following these steps.  The document also should be excluded as*

26       *unfairly prejudicial under Fed. R. Evid. 403 because the document does not*

27       *provide context for how the image is created.*

28

1851570.

15. Printout from http://sports.ign.com 10/26/05 - WWE Smackdown: Here Come the CAWs (UCI 000016-24). *THQ objects. The document has not been properly authenticated. The document appears to have been printed out from an internet website. The plaintiff has not established that the document is a true and correct copy of the contents of the website. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge, that a character similar to the Ultimate Warrior can be created by performing the steps listed, or that the image was created using a THQ videogame. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create a character similar to the Ultimate Warrior, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created by following these steps in THQ's videogame. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image is created.*

16. Printout from http://media.sports.ign.com - 10/26/05 - WWE Smackdown: Here Come the CAWs (UCI 000025-26). *THQ objects. The document has not been properly authenticated. The document appears to have been printed out from an internet website. The plaintiff has not established that the document is a true and correct copy of the contents of the website. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that the images similar to the Ultimate Warrior were created using a THQ videogame. Further, the document consists entirely of hearsay, including the declarant's out-of-court statement suggesting that a character similar to the Ultimate Warrior can be created in THQ's videogame, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogame. The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image is created.*

1851570.

17. Portions of THQ 2005 Annual Report (from THQ website) (UCI 000077-106).  *THQ objects.  The document has not been properly authenticated and is incomplete.  The document appears to have been printed out from an internet website.  The plaintiff has not established that the document is a true and correct copy of the contents of the website.  Further, the document lacks relevance as it purports to show financial data for the entire company, which is not relevant to any issue in the litigation at hand.  Further, any possible probative value (and there is none) is easily outweighed by the risk of potential confusion and waste of time that would arise by presenting the jury with an incomplete document replete with irrelevant information.*

18. Print-out from psx2codes.com website (WWE Smackdown vs. Raw PS2 Cheat Codes) (UCI 000133-136).  *THQ objects.  The document has not been properly authenticated.  The document appears to have been printed out from an internet website.  The plaintiff has not established that the document is a true and correct copy of the contents of the website.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that a character similar to the Ultimate Warrior can be created by performing the steps listed.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statement about how to create a character similar to the Ultimate Warrior, which is presumably offered to prove that a character similar to the Ultimate Warrior can be created in   THQ's videogame by following these steps.  The document also should be excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide context for how the image is created.*

19. Printout from http://cheats.ign.com for WWE Smackdown! Here Comes the Pain  (UCI 000155-165).  *THQ objects.  The document has not been properly authenticated.  The document appears to have been printed out from an internet website.  The plaintiff has not established that the document is a true and correct copy of the contents of the website.  The plaintiff has failed to establish that the declarant's statements were based*

1    *on personal knowledge, that a character similar to the Ultimate Warrior can be created*

2    *by performing the steps listed, or that the image was created using a THQ videogame.*

3    *Further, the document consists entirely of hearsay, including the declarant's out-of-*

4    *court statement about how to create a character similar to the Ultimate Warrior, which*

5    *is presumably offered to prove that a character similar to the Ultimate Warrior can be*

6    *created in THQ's videogame by following these steps. The document also should be*

7    *excluded as unfairly prejudicial under Fed. R. Evid. 403 because the document does not*

8    *provide context for how the image is created.*

9

10    20. Printout from Wrestling Games Zone dated March 16, 2006 (UCI 000249-253). *THQ*

11    *objects. The document has not been properly authenticated. The document appears to*

12    *have been printed out from an internet website. The plaintiff has not established that*

13    *the document is a true and correct copy of the contents of the website. The plaintiff has*

14    *failed to establish that the declarant's statements were based on personal knowledge.*

15    *Further, the document consists entirely of hearsay, including the declarant's out-of-*

16    *court statement that a character similar to the Ultimate Warrior can be created in THQ's*

17    *videogame, which is presumably offered to prove that a character similar to the Ultimate*

18    *Warrior can be created in THQ's videogame. The document also should be excluded as*

19    *unfairly prejudicial under Fed. R. Evid. 403 because the document does not provide*

20    *context for how the image is created.*

21    21. Printout from IOW Discussion Forums dated March 16, 2006 (UCI 000256-258). *THQ*

22    *objects. The document has not been properly authenticated. The document appears to*

23    *have been printed out from an internet website. The plaintiff has not established that*

24    *the document is a true and correct copy of the contents of the website. The plaintiff has*

25    *failed to establish that the declarant's statements were based on personal knowledge.*

26    *Further, the document consists entirely of hearsay, including declarant's out of court*

27    *statement about how to create a character similar to the Ultimate Warrior, which*

28

1    *presumably is being offered to prove that a character similar to the Ultimate Warrior*

2    *can be created in THQ's videogame.*

3    22. E-mails from Chris Page:

4

5        a.   E-mail from Chris Page 2/26/05 (UCI 000130-132).  *THQ objects.  The document*

6             *has not been properly authenticated and lacks foundation.  The plaintiff has*

7             *failed to establish that the declarant's statements were based on personal*

8             *knowledge or that the images were created using any of THQ's videogames.*

9             *Further, the document consists entirely of hearsay, including the declarant's out-*

10            *of-court statements about internet rumors about THQ's games' content and how*

11            *the declarant allegedly manipulated THQ's games, which are presumably offered*

12            *to prove that a character similar to the Ultimate Warrior can be created in THQ's*

13            *videogames.   The document also should be excluded as unfairly prejudicial*

14            *under Fed. R. Evid. 403 because the document does not provide context for how*

15            *the images were created.*

16

17       b.   E-mails from Chris Page re "SmackDown! vs. RAW" 5/1/05-5/6/05 (UCI 000137-

18            142).  *THQ objects.  The document has not been properly authenticated, lacks*

19            *foundation, and appears to be incomplete.  The plaintiff has failed to establish*

20            *that the declarant's statements were based on personal knowledge.  Further, the*

21            *document consists entirely of hearsay, including the declarant's out-of-court*

22            *statements about the Ultimate Warrior's character's alleged appearance in the*

23            *games, the content of the games, and how the declarant allegedly manipulated*

24            *THQ's game, which are presumably offered to prove that a character similar to*

25            *the Ultimate Warrior can be created in THQ's videogames.   The document is*

26            *unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

27       c.   E-mail from Chris Page 5/6/05 re "SD! vs. RAW" (UCI 000143-144).   *THQ*

28            *objects.    The document has not been properly authenticated and lacks*

foundation. *The plaintiff has failed to establish that the declarant's statements were based on personal knowledge. Further, the document consists entirely of hearsay, including the declarant's out-of-court statements concerning how THQ created its games and its motivations, as well as the games' contents. The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

    d.   E-mails from Chris Page re "SmackDown! Here Comes the Pain" dated 5/2/05 - 5/6/05 (UCI 000145-151). *THQ objects. The document has not been properly authenticated, lacks foundation, and appears to be incomplete. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge. Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the alleged inclusion of the Ultimate Warrior in the game, the contents of the game, and how the declarant allegedly manipulated THQ's game, which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames. The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

    e.   E-mail from Chris Page 5/3/05 re: "SmackDown! Here Comes the Pain" (UCI 000152-154). *THQ objects. The document has not been properly authenticated and lacks foundation. The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that a character similar to the Ultimate Warrior can be created by performing the steps listed. Further, the document consists entirely of hearsay, including the declarant's out-of-court statements regarding the alleged inclusion of the Ultimate Warrior in the game and how the declarant allegedly manipulated THQ's game, which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames. The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

1851570.

f.  E-mail from Chris Page dated 8/15/05 re WWE RAW 2 for X-box with formula for creating characters (UW CAW RAW2 - RockDemon's UW caw)  (UCI 000167-172).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that a character similar to the Ultimate Warrior can be created by performing the steps listed.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements regarding rumors of the alleged inclusion of the Ultimate Warrior in the game and alleged methods to manipulate THQ's game, which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames.  The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

g.  E-mail from Chris Page dated 8/20/05 with photos on "SmackDown! Shut Your Mouth" game (UCI 000173-177).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that the images were created using any of THQ's videogames.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements regarding the alleged inclusion of the Ultimate Warrior in THQ's games, which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames.  The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

h.  E-mail from Chris Page dated 8/22/05 with photos on "SmackDown!  Shut Your Mouth" game (UCI 000178-182).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that the images were created using any of THQ's videogames.  Further, the document*

1  *consists entirely of hearsay, including the declarant's out-of-court statements*

2  *regarding the alleged inclusion of the Ultimate Warrior in the game and alleged*

3  *methods to manipulate THQ's game, which are presumably offered to prove that*

4  *a character similar to the Ultimate Warrior can be created in THQ's videogames.*

5  *The document is unfairly prejudicial under Fed. R. Evid. 403 for those same*

6  *reasons.*

7
8  i.  E-mail from Chris Page dated 8/22/05 with "SmackDown! Shut Your Mouth"
   video footage (UCI 000183).  ***THQ objects.  The document has not been properly***

9  ***authenticated and lacks foundation.  The plaintiff has failed to establish that the***

10  ***declarant's statements were based on personal knowledge or that the video***

11  ***footage  was created using any of THQ's videogames.  Further, the document***

12  ***consists entirely of hearsay, including the declarant's out-of-court statements***

13  ***regarding the alleged inclusion of the Ultimate Warrior in the game and alleged***

14  ***methods to manipulate THQ's game, which are presumably offered to prove that***

15  ***a character similar to the Ultimate Warrior can be created in THQ's videogames.***

16  ***The document is unfairly prejudicial under Fed. R. Evid. 403 for those same***

17  ***reasons.***

18
19  j.  E-mail from Chris Page dated 8/17/05 on RAW 2 information (UCI 000184). ***THQ***

20  ***objects.   The document has not been properly authenticated and lacks***

21  ***foundation.  The plaintiff has failed to establish that the declarant's statements***

22  ***were based on personal knowledge.  Further, the document consists entirely of***

23  ***hearsay, including the declarant's out-of-court statements regarding internet***

24  ***rumors about THQ's games' contents, the alleged presence of the Ultimate***

25  ***Warrior in the game, THQ's state of mind when designing the game, and how***

26  ***the declarant allegedly manipulated THQ's game.   The document is unfairly***

27  ***prejudicial under Fed. R. Evid. 403 for those same reasons.***

28

k. E-mail from Chris Page dated 9/4/05 with photos from "WWE Day of Reckoning 2" (UCI 000186-190).   *THQ objects.   The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that the images were created using any of THQ's videogames.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the alleged presence of the Ultimate Warrior in the game and how acquaintances of the declarant allegedly told the declarant that they had manipulated THQ's game, , which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames. The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

l. E-mail from Chris Page dated 9/8/05 with photos and text document with formula to create UW in "WWE Day of Reckoning 2" video (UCI 000191-202).   *THQ objects.   The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge, that the images were created using any of THQ's videogames, or that the images can be created using the steps listed. Plaintiff does not state where he found the pictures, merely that they were created by someone.  Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the alleged presence of the Ultimate Warrior character in the game and alleged methods to manipulate THQ's game, which are presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames. The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

m. E-mail from Chris Page dated 9/8/05 with additional photos and formulas for "WWE Day of Reckoning 1" video (UCI 000203-206)   *THQ objects.   The document has not been properly authenticated and lacks foundation.  The*

*plaintiff has failed to establish that the declarant's statements were based on personal knowledge, that the images were created using any of THQ's videogames, or that the images can be created using the steps listed.  Plaintiff does not state  where he found the pictures, merely that they were created by someone.   Further, the document consists entirely of hearsay, including the declarant's out-of-court statements about the alleged presence of the Ultimate Warrior character in the game and alleged methods to manipulate THQ's game, which are  presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames.    The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

n.  E-mail from Chris Page dated 11/29/05 with photos and video from "SmackDown! vs. RAW 2006" game (UCI 000207-213).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge or that the images were created using any of THQ's videogames.   Further, the document consists entirely of hearsay, including the  declarant's out-of-court statements about the alleged presence of the Ultimate Warrior character in the game and how the declarant manipulated THQ's game, which are  presumably offered to prove that a character similar to the Ultimate Warrior can be created in THQ's videogames.  The document is unfairly prejudicial under Fed. R. Evid. 403 for those same reasons.*

o.  E-mail from Chris Page dated 11/29/05 re new SmackDown! vs. RAW game (UCI 000214).  *THQ objects.  The document has not been properly authenticated and lacks foundation.  The plaintiff has failed to establish that the declarant's statements were based on personal knowledge.  Further, the document consists entirely of hearsay, including the  declarant's out-of-court statements about internet rumors about THQ's games' contents and the alleged presence of the*

1    *Ultimate Warrior character in the game, which are presumably offered to prove*

2    *that a character similar to the Ultimate Warrior can be created in THQ's*

3    *videogames. The document is unfairly prejudicial under Fed. R. Evid. 403 for*

4    *those same reasons.*

5

6        p.   E-mail from Chris Page dated 12/5/05 with video from "SmackDown! vs. RAW

7    2006" game (UCI 000215). ***THQ objects. The document has not been properly***

8    ***authenticated and lacks foundation. The plaintiff has failed to establish that the***

9    ***declarant's statements were based on personal knowledge or that the video***

10   ***footage was created using any of THQ's videogames. Further, the document***

11   ***consists entirely of hearsay, including the declarant's out-of-court statements***

12   ***about the alleged presence of the Ultimate Warrior character in the game, which***

13   ***are presumably offered to prove that a character similar to the Ultimate Warrior***

14   ***can be created in THQ's videogames. The document is unfairly prejudicial***

15   ***under Fed. R. Evid. 403 for those same reasons.***

16   23. E-mail from Jerry Chandler II dated October 16, 2005 with attached article on Dave

17       Batista interview (UCI 000259-267). ***THQ objects. The document has not been properly***

18   ***authenticated and lacks foundation. The plaintiff has failed to establish that the***

19   ***declarant's statements were based on personal knowledge. Further, the document***

20   ***consists of hearsay, including statements by the declarant and others regarding a move***

21   ***associated with the Ultimate Warrior professional wrestling character. These out-of-***

22   ***court statements about the move associated with the Ultimate Warrior professional***

23   ***wrestling character are presumably being offered to prove that the move is associated***

24   ***with the plaintiff. The document is unfairly prejudicial under Fed. R. Evid. 403 for***

25   ***those same reasons.***

26   24. License Agreement between UCI and JAKKS Pacific, Inc. dated February 1, 2006 (UCI

27       000300-307). ***THQ objects. The document is unfairly prejudicial, confusing, and***

28

1    *misleading under Fed. R. Evid. 403 because of the danger that jurors will conflate THQ*

2    *with JAKKS Pacific, Inc. and presume that THQ is or ought to be subject to licensing*

3    *agreements with UCI entered into by JAKKS.*

4

5    25. Report of Brad Carraway, including any and all exhibits thereto and all documents or

6    authorities relied upon. UCI objects on grounds of lack of foundation, hearsay, and

7    relevancy.

8    26. Prosecution History for Registration No. 1, 625,919 – Ultimate Warrior; Objection:

9    Foundation, relevancy, and failure to disclose.

10

11   27. Prosecution History for Registration No. 1,708,155 – Warrior; Objection:  Foundation,

12   relevancy, and failure to disclose.

13   28. Prosecution History for Registration No. 1,818,813 – Ultimate Warrior; Objection:

14   Foundation, relevancy, and failure to disclose

15

16   29. Prosecution History for Registration No. 1,838,771 – Ultimate Warrior; Objection:

17   Foundation, relevancy, and failure to disclose

18   30. Prosecution History for Registration No. 2,299,387 – Warrior; Objection:  Foundation,

19   relevancy, and failure to disclose

20

21   31. Prosecution History for Registration No. 2,345,959 – Logo; Objection:  Foundation,

22   relevancy, and failure to disclose

23   32. Prosecution History for Registration No. 2,348,985 – Generation Warrior; Objection:

24   Foundation, relevancy, and failure to disclose

25        b.    Defendant's Exhibits:

26

27   I.    **DEPOSITIONS TO BE OFFERED.**

28        1.    Deposition of Warrior, conducted on February 13, 2007.

a.  THQ designates the following testimony:

    i.  9:9-10:14

    ii.  10:17

    iii.  10:20-11:16

    iv.  11:15-12:1

    v.  26:20-27:11

    vi.  60:1-62:9

    vii.  98:2-103:18

    viii.  106:17-107:8

**J.  MOTIONS IN LIMINE.**

Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**K.  LIST OF ANY PENDING MOTIONS**

None

**L.  PROBABLE LENGTH OF TRIAL**

A jury trial is estimated to last four to five days.

**M.  JURY DEMAND**

A jury trial has been requested.  The parties stipulate the request was timely and properly made.

**N-2.  STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**O.  CERTIFICATIONS.** The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.  All discovery has been completed.

2.  The identity of each witness has been disclosed to opposing counsel.

3.  Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.  (Certain exhibits have not been disclosed)

4.  The parties have complied in all respects with the mandates of the Court's Rule 16 Order and Order Setting Final Pretrial Conference.

5.  [Unless otherwise previously ordered to the contrary], the parties have made all of the disclosures required by the Federal Rules of Civil Procedure.

APPROVED AS TO FORM AND CONTENT:

_____        _____
Attorney for Plaintiff                      Attorney for Defendant

Based on the foregoing,

**IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties is hereby APPROVED and is thereby ADOPTED as the official Pretrial Order of this Court.

DATED this _____ day of _____, 2008.


                                              _____
                                              **Stephen M. McNamee**
                                              **Chief United States District Judge**

1851570.

- 52 -

# EXHIBIT D

## Statement of the Case

This is a lawsuit by the plaintiff, Ultimate Creations, Inc., against the defendant, THQ Inc.  In general, Ultimate Creations, Inc. contends that it owns certain federally registered trademarks and unregistered trade dress relating to the "Ultimate Warrior" wrestling character, and further alleges that THQ Inc. has infringed those trademarks in the videogames that THQ Inc. manufactures and sells.  In general, THQ Inc. disputes that it infringes any valid trademarks belonging to Ultimate Creations, Inc.

8732363